

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

O8CV 539 DMS(POR)

)
IN RE TITLE INSURANCE REAL ESTATE    )
SETTLEMENT PROCEDURES ACT            )   MDL Docket No. 1951
(RESPA) AND ANTITRUST LITIGATION     )
                                     )
_____)

## THE OHIO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR TRANSFER FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. § 1407 and Rule 7.2(c) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("MDL Rules"), Plaintiffs Jordan Katz, Craig Mintz, Sean Nightingale, Carol A. Rhamy, and Micah Watts, MD, the named plaintiffs in Case Numbers 1:08-cv-00677 (N.D.Ohio), 1:08-cv-00678 (N.D.Ohio), 1:08-cv-00741 (N.D. Ohio), 4:08-cv-00750, and 1:08-cv-00803, respectively, (the "Ohio Plaintiffs" or "Respondents"), respond to the Motion of Plaintiffs for Transfer of Actions to the Southern District of New York Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings, filed March 25, 2008 by the plaintiffs in three New York actions ("Movants"), as well as the Joint Response of Undersigned Defendants ("Certain Defendants") to the Motion for Transfer, filed on or about April 2, 2008, suggesting consolidation and transfer to the Southern District of New York.

Movants misrepresent the claims involved in the Ohio actions, and in similar actions filed in other states. These cases challenge – on behalf of state-delimited classes – state-delimited conspiracies in the form of state-specific title insurance rating bureaus, governed by state-specific law and supervised by state-specific administrative agencies. Because the attendant issues are unique to each state, the Ohio Plaintiffs believe that their cases, and each case listed in the motion, should remain within the state in which it was filed.

The Ohio Plaintiffs do not oppose consolidation of the actions filed in two or more federal judicial districts *within the same state* into one of *that state's* federal judicial districts. Hence, the Ohio Plaintiffs do not oppose consolidation of the New York cases into one New York district, or consolidation of the California cases into one California district. But it makes absolutely no sense to consolidate these state-specific actions across state lines.

The five Ohio cases allege an Ohio-specific conspiracy, in the form of an Ohio-specific rating organization (the Ohio Title Insurance Rating Bureau, or "OTIRB") that was insufficiently supervised by the Ohio insurance regulatory authorities and thereby caused an Ohio-limited class of title insurance purchasers to be overcharged for title insurance. These cases belong in the Northern District of Ohio, where the evidence and witnesses are located. The unique facts of each case, in particular the cartel behavior of Defendants, and the regulatory scheme and degree of state regulation (if any) in each state, dictate that consolidation is inappropriate and will not lead to the judicial efficiencies and party conveniences that the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") was created to promote.

Alternatively, if the Panel should conclude that consolidation is warranted, the Ohio Plaintiffs submit that the litigation should not be transferred to the Southern District of New York, but rather to Judge Kathleen McDonald O'Malley in the Northern District of Ohio. The

Northern District of Ohio is the most appropriate and convenient transferee district for a number of reasons, including that Judge O'Malley is experienced and well suited to direct this multidistrict litigation; the district has ample judicial resources and a superior MDL and general docket; and the district's central location is an accessible and convenient forum for parties, witnesses, and counsel. Thus, any transfer of this litigation should be to Judge O'Malley in the Northern District of Ohio.

## I. BACKGROUND

Fifty-two cases alleging, *inter alia*, illegal price fixing in the title insurance industry, are known to have been filed since February 1, 2008. Twelve cases have been filed in the Eastern District of New York; eight in the Southern District of New York; ten in the Eastern District of Pennsylvania; five in the Northern District of Ohio; five in the District of New Jersey; two in the Northern District of California; two in the Western District of Washington; two in the Middle District of Florida; and one each in the Central District of California, the Southern District of California, the District of Massachusetts, the Southern District of West Virginia, the Eastern District of Arkansas, and the Eastern District of Texas (collectively, "the Related Actions").

Although each complaint involves title insurance, a number of the same defendants, and alleges at least a violation of Section I of the Sherman Act, meaningful similarities break down on closer inspection. The basis for Defendants' liability will turn on matters unique to the insurance regulatory authorities of the state in which the litigation was filed. It is therefore evident that, *for each state*, discovery will focus primarily on facts specific to that state, including the method by which the rates for title insurance were determined; whether elements in addition to risk were included in the filed rates, and, if so, what those elements were; whether or not a rating bureau was authorized by that state to file rates for multiple insurers, and, if so, if that rating bureau was involved with the rate filings and how it was involved; what statutes,

regulations, practices, and/or procedures govern the state's regulation of title insurance; and, critically, whether the state adhered to those regulatory requirements and actively supervised the title insurance companies' rate filings in that state. These facts, specific to each state, will be unique and relevant only to the lawsuits filed within that state.

In recognition of the critical state by state distinction, virtually every case filed to date seeks certification of a class of title insurance consumers solely within such state. Transferring these cases, which are factually unique and dependent on the regulatory structure within each state, will force a single court to organize and oversee individual discovery programs in the actions brought by the title insurance purchasers of a given state, which will have little overlap with the litigation brought by purchasers from another state. It will further require a single court to become expert in the insurance laws and regulations of each of these multiple states. This is an outcome diametrically opposed to the rationale underlying the MDL process.

## II. ARGUMENTS AND AUTHORITIES

**A.     Consolidation under 28 U.S.C. § 1407 Is Not Warranted Under the Facts of the Cases Presently Before the Panel.**

Federal statute 28 U.S.C. § 1407 permits transfer and consolidation of related civil actions when three express conditions are met: First, the related civil actions must involve "one or more common questions of fact." Second, transferring and consolidating the actions must facilitate "the convenience of the parties and witnesses," and third, it must "promote the just and efficient conduct of such actions." *Id.* These conditions have not been established.

**1.     Movants Have Not Met the Burden of Establishing Common Questions of Fact.**

Under 28 U.S.C. § 1407(a), a judicial panel on multidistrict litigation may transfer actions "involving one or more common questions of fact." The burden is on the party seeking the transfer. *In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813 (J.P.M.L 1980).

4

The law and the regulation of insurance, and, in particular, title insurance, are unquestionably developed on a state-by-state basis and unique to each state. Some states, such as Ohio, New York, New Jersey, and Pennsylvania, have state authorized rating bureaus through which the title insurers overtly agree to set and maintain the rates they charge for title insurance within that state. Other states, such as Washington and California, do not have rating bureaus, but the title insurers must file their rates with the state and are bound to charge only the filed rates. While the various complaints each allege a price fixing conspiracy that eliminated price competition in their respective states, the viability of these claims, in particular in the context of pre-trial Rule 12 and Rule 56 motions, will depend largely, not on the applicable federal antitrust law, but rather on the type and degree of title insurance regulation within each state in which an action has been filed. This disparity of the central critical facts for pre-trial purposes make these cases particularly unsuited for consolidation under the J.P.M.L. rules and precedent.

Such factual disparities caused this Panel to deny transfer in *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp.2d 696 (J.P.M.L. 1995) ("*Lysine*"). There, certain plaintiffs moved to centralize "all lysine, corn syrup, and citric acid antitrust actions in one multidistrict litigation before a single judge." *Id.* at 700-01. Even though "the three price fixing conspiracies alleged in these actions are closely related and factually intertwined, in light of the facts that all three products are derived from corn and common defendant ADM is an important figure in the production and sales of each of the three corn products," the Panel denied transfer. *Id.* at 701. The Panel denied transfer because, *inter alia*, there were "different alleged classes of purchasers," and each complaint alleged an antitrust conspiracy involving just one of the three products. *Id.* Therefore, sufficient factual commonality was lacking and convenience of the parties and witnesses would not be served. *Id.* So while the cases involving lysine were

themselves separately transferred to one transferee district, those involving corn syrup went to another, and those involving citric acid went to still another, the three product-delimited cases were not lumped in together, even though the Panel recognized that "[i]n light of the interrelatedness of the three products and the presence of defendants ADM and Cargill in more than one litigation, discovery and other pretrial proceedings are likely to overlap in the three dockets at various points." *Id.*[1]

*Lysine* is instructive here. Although the cases that are the subject of this motion are not product-delimited (they all involve title insurance), they are state-delimited. The definition of the class bringing each such action is limited to a single state. The allegedly-illegal conspiracy in each such action is limited to the rating bureau of a single state.[2] The regulatory oversight of the rate filings of the title insurers in each such action was performed by the insurance department of a single state. Thus, the allegations made and discovery obtained specific to the Ohio claims will be inapplicable to the actions in other states, and vice versa. As in *Lysine*, despite "obvious points of intersection," the "differences among the [several] categories of actions appear to outweigh the similarities." *Id.* at 701. Lumping them together achieves no economies and no efficiencies.

---

[1] *See also In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp.2d 1362, 1363 (J.P.M.L. 2007) (denying transfer where cases involved different defendant insurance companies and different contracts between those insurers and a PPO); *In re Movie Artwork Copyright Litig.*, 473 F. Supp.2d 1381, 1382 (J.P.M.L. 2007) (denying transfer where actions alleged defendants' infringement of different copyrights and trademarks owned by different entities and covering different movie and cartoon characters); *In re The Boeing Company Employment Practices Litig. (No. II)*; 293 F. Supp.2d 1382, 1383 (J.P.M.L. 2003) (denying transfer because unique questions of fact in one action relating to each plaintiff's terms and conditions of employment at one Boeing facility predominated over allegations of company-wide discrimination); *In re Pharm. Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp.2d 1362, 1363 (J.P.M.L. 2002) (denying transfer where each plaintiff was a member of a different pharmacy benefit plan and sued a pharmacy benefit manager which serviced each plan under different contracts).

[2] This is similarly true of litigation in those states without rating bureaus. The only difference will be that plaintiffs in those cases will have to establish the concerted action involved in setting the rates and, just as with every other location, that will be established on a state by state rather than a national basis.

Movants and Defendants sidestep the state-delimited nature of these actions. Movants claim that the "vast majority of these cases" involve the New York rating organization called "Title Insurance Rate Service Association" ("TIRSA") and discuss New York investigations. Mot. at 2-3, 9-10. Movants assert that "Defendants engaged in an illegal price-fixing agreement to collectively set the rates that New York consumers pay for title insurance." *Id.* at 3. Movants reference the New York Insurance Department. *Id.* at 4. They cite N.Y. Ins. Law § 6409(d). *Id.* Movants apparently never even considered the absence of any nexus between those New York-specific averments and the averments made by the Ohio Plaintiffs in the actions filed in the Northern District of Ohio, concerning the Ohio-based rating bureau (OTIRB), the State of Ohio Department of Insurance, and a class of Ohio title insurance purchasers. Nor have Movants considered the absence of any nexus between those New York-specific averments and the corresponding actions in New Jersey, or in Pennsylvania.

The responding Defendants commit the same error. They claim that TIRSA, a "state-authorized and supervised rate service organization" in New York is central to the litigation, but fail to explain how that could possibly apply to the Ohio, Pennsylvania, or New Jersey actions. Def. Jt. Resp. at 2-3, 10, 12-13. They claim that the actions regarding other states are "intricately connected to the earlier-filed New York actions" (*id.* at 6), but, aside from some anomalous references to TIRSA in some of the non-New York actions and an unattributed prediction that some plaintiffs will make the argument that "if defendants conspired in New York, they must have conspired in other states as well" (*id.*), Defendants have no support for their "intricately connected" assertion.[3]

---

[3] Each action here involves a different class limited to the title insurance purchasers of a particular state, and virtually every case filed to date seeks certification of a class of title insurance consumers solely within such state. Where the actions subject to the transfer motion allege differing classes, transfer is not

With regard to the Ohio actions, the responding Defendants essentially concede the absence of any nexus to the New York actions. The most these Defendants can argue is that the Ohio actions each allege that a state-licensed rating bureau was the vehicle for an Ohio-specific conspiracy. Def. Jt. Resp. at 6. But what does that have to do with New York? This is no different than the situation in *Lysine*, where the movants argued that "the three price fixing conspiracies . . . are closely related and factually intertwined," but the Panel denied centralization because the conspiracies were, as here, separate. *Lysine,* 910 F. Supp. at 701.

In addition, the cases filed by Movants, *Kromer* and *Marotta*, and several other New York cases, allege violations of the Real Estate Settlement Procedures Act ("RESPA") in addition to Sherman Act violations. The Ohio Plaintiffs do not plead RESPA violations, nor do the plaintiffs in the majority of the other cases at issue. Further, some of the state cases allege violations of state antitrust and consumer protection statutes and/or state common law claims such as unjust enrichment. Such state-specific claims are simply not at issue in the claims filed in other states. There can be no commonality of facts underlying causes of action that are not even pled in most of the complaints.

Movants' invocation of *Chiquita Brands Int'l, Inc. Alien Tort Statute and Shareholders Derivative Litig.*, 2008 WL 495846 (J.P.M.L. Feb 20, 2008), in support of their motion is further unavailing because the unique facts and issues in that case were limited to causation and damages. In stark contrast, the unique facts here go to liability itself. As the Supreme Court in *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992), made clear, the regulatory scrutiny in each state-delimited jurisdiction will be determinative of the issue of the legality of the title insurers'

---

appropriate. *See In re Medicare Fee Schedule Locality Litig.*, MDL No. 1906, 2008 U.S. Dist. LEXIS 12202, *1 (J.P.M.L. Feb. 14, 2008) (denying transfer where actions with "distinctly separate classes"); *In re Lycoming Crankshaft Prods. Liab.Litig.*, 473 F. Supp.2d 1380, 1381 (J.P.M.L. 2007) (denying transfer where no overlap existed between the putative classes in the Pennsylvania and California actions).

collective price setting. Further, the fact and degree of illegal inducements and kickbacks paid by the title insurers is itself relevant only to the extent such illegal payments occurred in each individual state. For example, kickbacks and inducements paid in Ohio will not be instructive on the degree of price competition in any other state.

      2.      **Transferring and Consolidating the Actions Would Not Facilitate "the Convenience of the Parties and Witnesses."**

Plaintiffs have filed their respective lawsuits in the states and judicial districts in which they reside and in which they purchased title insurance from Defendants. Each Defendant is specifically licensed to sell title insurance within the districts in which it was sued and each has an extensive network of agents within such districts.[4] Evidence concerning state-by-state regulation of the title insurance industry and specific practices within each state will not be adduced from any centralized or national location. Rather, most witnesses will be in the same state and district where each plaintiff has filed his or her suit.

Moreover, Defendants are headquartered in various judicial districts, and the transfer of the actions to the district where one defendant is headquartered certainly would not facilitate the convenience of any other. For example, each of the five title insurers that collectively control more than 85% of all the title insurance policies in the United States are headquartered broadly across the United States: Stewart Title is based in Texas; First American is in California; Fidelity is in Florida; Old Republic is in Illinois, and LandAmerica is in Virginia. Significantly, none of them are headquartered in New York. This is not a situation where multiple lawsuits

---

[4] It is important to note that, while there is some overlap, the set of defendants in each state differs from the set of defendants in every other state. For example, the Old Republic group of companies (which, in Ohio, consists of Defendants Old Republic National Title Insurance Company and Old Republic International Corporation) are defendants in the actions filed in Ohio and a number of other states, but are not defendants in the actions filed in New York. Further, the Old Republic Defendants did not join with the other Defendants in asking that the actions be consolidated and transferred to New York.

have been filed against a single entity or related entities in a single location concerning acts occurring or being directed from a single location. The geographic diversity of Plaintiffs, Defendants, and the principal regulator-witnesses in these actions necessarily dictates that there is no convenience to be gained by stripping Plaintiffs of their right to pursue the action in the venue where they live, and where they were overcharged by the Defendants for their title insurance policies.

3. **Transferring and Consolidating the Actions Would Not "Promote the Just and Efficient Conduct of Such Actions."**

Transfer and consolidation of these actions would be inefficient and unjust. Pre-trial practice in these actions will necessarily turn on the law and regulation within each state where Plaintiffs have filed suit. The federal courts within each district will be most familiar with the state law in which they reside. Moreover, discovery will focus on factual issues which occurred within that state, and between title insurance companies authorized to conduct business within that state, as overseen by that state's own insurance regulatory agencies. And, the majority of relevant documents and witnesses will be located within each specific state. Should a single judge be tasked with handling these cases for pretrial purposes, Respondents firmly believe that resolution will be materially impeded rather than expedited. Each state's discovery program will clearly engender its own set of disputes and issues that will not carry over to the discovery programs ongoing in the litigation involving the other states. There will be no efficiencies derived from consolidation, and the amount of time necessary to deal with these disparate discovery disputes will ensure that all of the cases will be delayed rather than quickly resolved.

B.     **Should the Panel Determine that Transfer and Consolidation Is Appropriate, the Northern District of Ohio, Not the Southern District of New York, Is the Most Appropriate District.**

If the Panel is nevertheless persuaded that transfer for purposes of consolidation or coordination is appropriate, the Ohio Plaintiffs respectfully submit that these matters be transferred to Judge Kathleen McDonald O'Malley in the Northern District of Ohio, as the most appropriate judge and district for transfer and consolidation of the pending cases and any future tag-along cases.

1.     **The Northern District of Ohio is the Appropriate Transferee Forum.**

While Respondents believe that these actions should not be transferred pursuant to 28 U.S.C. § 1407, if in fact the Panel does consolidate and transfer them, then, as set forth below, the Northern District of Ohio would be the most appropriate and convenient transferee district for several reasons: it has ample and experienced judicial resources; it has a superior MDL and general docket; its central location is an accessible and convenient forum for parties, witnesses and counsel in this nationwide litigation; the district is equipped with sophisticated state-of-the-art courtroom technology; and no action has significantly progressed in any jurisdiction and no judge has gained any significant experience with any of the Related Actions.

    a.     **The Honorable Kathleen McDonald O'Malley of the Northern District of Ohio is well suited to manage this multidistrict litigation.**

A significant factor favoring transfer to the Northern District of Ohio is the fact three of the five Ohio cases – including *Katz*, the first-filed complaint -- have already been assigned to Judge O'Malley, a highly respected, able and experienced jurist, skilled in presiding over complex multidistrict litigation.[5] The experience of the judge is a significant factor in the

---

[5] Moreover, *Katz* has filed a motion – joined by the other four Ohio plaintiffs -- to consolidate all five of the Ohio cases before Judge O'Malley.

11

Panel's selection of an appropriate forum. *See, e.g., In re Transpacific Passenger Air Transp. Antitrust Litig.* (MDL No. 1913) (Transfer Order, Feb. 19, 2008)[6], and *In re Gadolinium Contrast Dyes Prods. Liab. Litig.* (MDL No. 1909) (Transfer Order, Feb. 27, 2008) (holding that transfer of nationwide litigation to Judge Dan. A. Polster of the Northern District of Ohio was warranted as Judge Polster has the "ability to streamline pretrial proceedings in all actions, while concomitantly directing the appropriate resolution of all claims" and Judge Polster "has the time and experience to steer this docket on a prudent course." *Id.* at p. 3.

Judge O'Malley unquestionably has the ability and experience to direct complex nationwide litigation. In her 14 years on the bench, Judge O'Malley has experience with such complex multidistrict litigation. In fact, Judge O'Malley has expertly presided over *In re Sulzer Orthopedics Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.* (MDL No. 1401); *In re Commercial Money Ctr. Inc., Equip. Leasing Litig.* (MDL No. 1490); and *In re Welding Fume Prods. Liab. Litig.* (MDL No. 1535).[7] Likewise, Judge O'Malley has the expertise, experience, and resources to manage this litigation in a just and efficient manner and to steer this docket on a prudent course.

### b. The Northern District of Ohio has ample judicial resources to handle this multidistrict litigation.

In addition, the Northern District of Ohio has ample judicial resources to effectively and efficiently handle this multidistrict litigation. Other judges within the District have expertly managed a number of multidistrict cases, including, *In re Travel Agent Comm. Antitrust Litig.* (MDL No. 1561); *In re Ortho Evra Prods. Liab. Litig.* (MDL No. 1742); *In re Ford Motor Co.*

---

[6] The recent Transfer Orders cited herein are all available online at the J.P.M.L. website: http://www.jpml.uscourts.gov/Recent_Orders/recent_orders.html.

[7] Judge O'Malley is further experienced in handling complex class action antitrust claims. *See, e.g., In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2006 WL 2850453 (N.D. Ohio Sep. 30, 2006).

*Panther Platform/Fuel Tank Design Prods. Liab. Litig.* (MDL No. 1488); and *In re Gadolinium Contrast Dyes Products Liab. Litig.*, (MDL No. 1909).

Further, the Northern District of Ohio's current MDL workload is significantly more flexible than that of the Southern District of New York. According to the most recent data from the *Federal Court Management Statistics,* the Northern District of Ohio has seven pending MDL cases, while the Southern District of New York has 40 pending MDL cases.[8] *See Distribution of Pending MDL Dockets [by District] (as of March 10, 2008)*[9]. Additionally, the *Federal Judicial Caseload Statistics* reports that the Northern District of Ohio's pending caseload <u>declined</u> 35.5 percent from 2006 to 2007, while the caseload of the Southern District of New York <u>increased</u> 32.4 percent in that same time period. *See Federal Judicial Caseload Statistics -- March 31, 2007, at Table C.*[10] Thus, the Northern District of Ohio clearly has the capability, experience, and judicial resources to handle these title insurance actions.[11]

      **c.    The location of the parties, documents, and witnesses supports centralization in the Northern District of Ohio.**

Another important factor in selecting the transferee forum is the location and convenience of the witnesses. *See, e.g., In re Continental Corp. Sec. Litig.*, 130 F.R.D. 475, 476 (J.P.M.L. 1990); *In re Cuisinart Food Processor Antitrust Litig.*, 506 F.Supp. 651, 654-55 (J.P.M.L. 1981). Of the districts at issue, the Northern District of Ohio is the most centralized and convenient district. If the Related Actions were transferred to and consolidated in the Southern

---

[8] Currently, there are 17 district judges in the Northern District of Ohio and 44 district judges in the Southern District of New York.

[9] http://www.jpml.uscourts.gov/Docket_Info/Pending_Dockets/pending_dockets.html.

[10] http://www.uscourts.gov/caseload2007/contents.html.

[11] Defendants acknowledge that "relative docket congestion" is a factor that should weigh in favor of transfer to the less congested district. Def. Jt. Resp. at 16.

District of New York, parties and counsel involved in the California and Washington actions would be required to travel coast-to-coast, a nearly 3,000 mile, six-hour flight, each way. Conversely, the Northern District of Ohio's central location significantly reduces travel times. The Northern District of Ohio is served by the Cleveland Hopkins International Airport, a large international airport with frequent direct flights to areas around the United States, including major cities in all of the other districts in which title insurance actions have been filed. Non-stop flights to and from Cleveland -- the location of Judge O'Malley's courthouse in the Northern District of Ohio -- are approximately 90 minutes from the East Coast, and between four to five hours, depending on the direction of travel, from the West Coast.

This Panel has repeatedly recognized the importance of a relatively centralized forum in actions involving nationwide litigation. In fact, as this Panel noted when transferring the *Guidant* litigation to Minnesota:

> Given the varied locations of parties and witnesses in this docket and the geographic dispersal of pending actions, it is clear that a wide array of suitable transferee districts presents itself. In concluding that the District of Minnesota is an appropriate forum for this docket, we observe that this district . . . is a geographically central, metropolitan district equipped with the resources that this complex . . . litigation is likely to require.

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J. P.M.L. 2005). *See, also, In re Aurora Dairy Corp. Organic Milk Marketing and Sales Prac. Litig.*, (MDL No. 1907) (Transfer Order, Feb. 20, 2008) ("[g]iven the geographic dispersal of the constituent actions and the potential tag-along actions, the Eastern District of Missouri offers a relatively convenient forum for this litigation"); and *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, (MDL No. 1905) (Transfer Order, Feb. 21, 2008) ("[t]ransfer to [the District of Minnesota] also provides a centrally located forum for actions filed in several locations nationwide.")

In the recent Transfer Order for *In Re Gadolinium,* this Panel determined that the Northern District of Ohio provided just such a centralized forum. In that action, this Panel was faced with litigation involving 24 actions filed in thirteen districts across the country, with another 44 known tag-along actions. *In re Gadolinium* (MDL No. 1909) (Transfer Order, Feb. 27, 2008). Recognizing the need for a centralized forum in that nationwide litigation, this Panel selected the Northern District of Ohio. *Id.* at 3.

In this title insurance litigation, involving actions in the East Coast states of New York, New Jersey, Pennsylvania, and Massachusetts, and the West Coast states of California and Washington, the <u>only</u> centralized forum is that of Ohio. Thus, if this litigation is consolidated and transferred, it should be transferred to the Northern District of Ohio.[12]

### d.  Sophisticated, state-of-the-art courtroom technology.

Courthouses in the Northern District of Ohio are equipped with some of the country's finest, sophisticated, state-of-the art courtroom technology. Each courtroom is equipped with an evidence presentation system through which counsel can display exhibits, realtime transcripts, video recordings, or multimedia presentations. The systems include document cameras for displaying documents, x-rays and three-dimensional objects; 15-inch flat panel video displays on counsel tables, the judges' bench and between jurors; technology-ready counsel tables from which multi-media presentations or images from a portable computer can be displayed to any monitor in the courtroom; realtime court reporter transcription; a visual image printer; a tablet and light pen; a VCR; and infrared equipment for listening assistance and language interpretation. These technologies contribute significantly to the efficiency and effectiveness of court proceedings. In a case such as this, involving complex antitrust issues, such advanced

---

[12] Local counsel also wishes to draw attention to another factor weighing in favor of transfer to the Northern District of Ohio -- Cleveland is home to the Rock and Roll Hall of Fame!

15

technology provides a significant additional tool to understanding important facts. For these reasons, the Northern District of Ohio is an appropriate district for the transfer and consolidation of the Related Actions.

    e. **Existence and relative progress of other pending litigation.**

Other factors to be considered by this Panel include the existence and progress of any related pending litigation, including whether any judge has become particularly familiar with the claims at issue. *See, e.g., In re Chiquita Brands Int'l, Inc., Alien Tort Statute and Shareholders Derivative Litig.* (MDL No. 1916) (Transfer Order, Feb. 20, 2008) and *In re Mercedes-Benz Tele Aid Contract Litig.* (MDL No. 1914) (Transfer Order Feb. 26, 2008) (in selecting a transferee forum, giving consideration to where the litigation was most advanced.) Here, the Related Actions have all been filed within weeks of each other. No substantive proceedings have taken place before any of the judges assigned to these actions. No scheduling orders have been issued, nor has discovery commenced in any of the actions. Consequently, no action has significantly progressed, and no judge has gained any significant experience with any of the Related Actions.

  2. **No Significant Factors Favor the Southern District of New York.**

Finally, it must be noted that no significant factors favor transfer of these actions to the Southern District of New York. Nevertheless, Movants and Certain Defendants claim that the Southern District of New York is allegedly "the most appropriate forum for transfer and coordinated or consolidated proceedings" for this litigation. Movants' Brief at 2. But their arguments fail.

Movants first claim that the Southern District of New York "has the most significant nexus to the litigation among the Districts where related actions are pending and will be the most significant location of key documents, witnesses and common events related to the litigation." *Id.* While this statement may be applicable <u>to the cases filed in New York</u>, it is certainly not true

as to all of the cases filed in other states, which are based on documents, witnesses and common events in each of those states – not New York. As discussed at length above, the Ohio Plaintiffs' claims will require discovery as to events that occurred in Ohio, and the key documents and witnesses will thus be located within Ohio. Moreover, as noted above, <u>none</u> of the title insurance Defendants to this action have their corporate headquarters or principal places of business in New York. The fact that they have local offices in New York is of no significance outside of the New York actions; those same companies also have local offices in every other state in which they do business, including Ohio, New Jersey, Pennsylvania, California, and Washington. Thus, even if the local offices forwarded some of their relevant documents to their parent company's headquarters, none of those documents would be located in New York.

Movants and Certain Defendants also assert that facts specific to the New York cases somehow trump the facts specific to the cases in other states. These Defendants specifically allege that the "location of TIRSA and the New York State Insurance Department strongly support transfer to the Southern District of New York." Def. Jt. Resp. at 14. But, as discussed above, the location of TIRSA and the New York State Insurance Department is meaningless to the Ohio Plaintiffs and most of the other cases filed outside of New York. And, it is certainly not a basis for transfer to the Southern District of New York.

Lastly, Movants argue that the Southern District of New York is "more geographically convenient or at least as convenient as any other District in which related actions are pending." *Id.* As noted above, New York is certainly not a central location for any claims other than those based in New York. If this nationwide action is to be transferred, the greater weight of authority supports transfer to a more centralized forum. That forum is the Northern District of Ohio.

### III. CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Panel enter an order denying Movants' Motion for Transfer of Actions to the Southern District of New York Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. Movants have failed to establish the requisite conditions to support consolidation of these state-specific actions. Thus, the cases listed on the Revised Schedule of Pending Cases submitted with the Transfer Motion should remain in the districts in which they were filed. In the alternative, and to the extent that the J.P.M.L. should conclude that centralization should be ordered, we submit that the greater weight of authority supports transfer to Judge Kathleen McDonald O'Malley, in the Northern District of Ohio.

Respectfully submitted,

Dated: April 11, 2008

**HEINS MILLS & OLSON, P.L.C.**

By: /s/

Vincent J. Esades
Barbara J. Felt
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
*Attorneys for Plaintiff Katz*

Bruce K. Cohen
Steven J. Greenfogel
Daniel B. Allanoff
**MEREDITH COHEN GREENFOGEL & SKIRNICK, P.C.**
1521 Locust Street, 8th Floor
Philadelphia, PA 19102
Telephone: (215) 564-5182
Facsimile: (215) 569-0958
*Attorneys for Plaintiffs Mintz and Watts*

Daniel Karon (Ohio # 0069304)
**GOLDMAN, SCARLATO & KARON, P.C.**
55 Public Square, Suite 1500
Cleveland, OH 44113
Telephone: (216) 622-1851
Facsimile: (216) 622-1852
*Attorneys for Plaintiffs Katz, Mintz, and Watts*

Anthony D. Shapiro
**HAGENS BERMAN SOBOL SHAPIRO, L.L.P.**
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 268-9352
Facsimile: (206) 623-0594
*Attorneys for Plaintiff Mintz*

John C. Murdock (Ohio # 0063749)
Jeffrey S. Goldenberg (Ohio # 0063771)
**MURDOCK GOLDENBERG SCHNEIDER & GROH, LPA**
35 East Seventh Street, Suite 600
Cincinnati, OH 45202
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*Attorneys for Plaintiff Nightingale*

Eugene A. Spector
Jay S. Cohen
William G. Caldes
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
*Attorneys for Plaintiff Nightingale*

Gerald J. Rodos
Jeffrey B. Gittelman
**BARRACK, RODOS & BACINE**
Two Commerce Square
2001 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
*Attorneys for Plaintiff Rhamy*

Brian P. Kopp (Ohio #0064897)
**BETRAS, MARUCA, KOPP & HARSHMAN, LLC**
6630 Seville Drive
Canfield, OH 44406
Telephone: (330) 746-8484
Facsimile: (330) 702-8280
*Attorneys for Plaintiff Rhamy*

Lee Albert
Andrew L. Mackerer
**MAGER & GOLDSTEIN, LLP**
1818 Market Street, Suite 3710
Philadelphia, PA 19103
Telephone: (215) 640-3280
Facsimile: (215) 640-3281
*Attorneys for Plaintiff Watts*

Jayne A. Goldstein
**MAGER & GOLDSTEIN, LLP**
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: (954) 515-0123
Facsimile: (954) 515-0124
*Attorneys for Plaintiff Watts*

Natalie Finkelman
**SHEPHERD FINKELMAN MILLER & SHAH, L.L.C.**
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
*Attorneys for Plaintiff Watts*

Roger L. Bernstein
**BERNSTEIN NACKMAN & FEINBERG, LLP**
233 Broadway, Suite 2701
New York, NY 10279
Telephone: (212) 748-4800
Facsimile: (646) 417-7890
*Attorneys for Plaintiff Watts*