

FILED

MAY 1 5 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

08 CV 539 DMS POR 7

| | | |
|---|---|---|
| IN RE PACKAGED ICE ANTITRUST LITIGATION | ) ) ) | MDL No. 1952 |

## INTERESTED PARTY RESPONSE OF 6TH & ISLAND INVESTMENTS, LLC IN SUPPORT OF PLAINTIFF COBBLESTONE TEQUESTA LLC'S MOTION FOR CONSOLIDATION AND TRANSFER OF ALL ACTIONS TO THE SOUTHERN DISTRICT OF CALIFORNIA

## I.    INTRODUCTION

Plaintiff 6th & Island Investments, LLC ("Plaintiff") filed on April 25, 2008 a related class action complaint in the Southern District of California entitled *6th & Island Investments, LLC v. Reddy Ice Holdings, Inc., et al.*, No. 08-cv-0752-JAH ("*6th & Island*"). A copy of the complaint is attached to the Notice of Related Actions (filed concurrently herewith) as Exhibit 1. Plaintiff's counsel has also subsequently filed three other related class actions in the Southern District of California.[1] These actions are also listed in the accompanying Notice of Related Actions, attached hereto as Exhibit A.

_____

[1] *Market Street Investments, LLC v. Reddy Ice Holdings, Inc., et al.*, No. 08-cv-0753-H ("*Market Street*"); *Universal Hillcrest, LLC v. Reddy Ice Holdings, Inc., et al.*, No. 08-cv-0775-JLS ("*Universal Hillcrest*"); and *Gaslamp Country Club, LLC v. Reddy Ice Holdings, Inc., et al.*, No. 08-cv-0776-LAB ("*Gaslamp Country Club*") attached to the Notice of Related Actions as Exhibits 2, 3 and 4 respectively.

Plaintiff submits this response to the motions to: (a) transfer substantially similar pending class actions to either the Southern District of California, Northern District of Ohio, Eastern District of Michigan, District of Minnesota, or Northern District of Texas; and (b) consolidate those actions for coordinated pretrial proceedings pursuant to 28 U.S.C. §1407(a). Plaintiff supports and joins in the motions for transfer and for consolidation and coordination of pretrial proceedings. Plaintiff further supports and joins the motion of Cobblestone Tequesta LLC ("Movant") for transfer of the consolidated actions to the Southern District of California. Plaintiff, as an interested party, therefore, opposes the transfer of the actions to the United States District Courts for the Northern District of Ohio, as requested by movant Chi-Mar Enterprises, Inc.; the Eastern District of Michigan, as moved by plaintiffs Elite Energy, LLC and S&S Lima, Inc.; the District of Minnesota, as sought by the motion of Ridge Plaza, et al.; and the Northern District of Texas, as advocated by plaintiff Rodney Blasingame.

At latest count, all 61 cases now pending nationwide allege an illegal conspiracy to fix and maintain prices in violation of federal and state antitrust laws and consumer protection statutes (the "Packaged Ice Antitrust Cases"). All of the actions before the Judicial Panel on Multidistrict Litigation (the "Panel") are brought as class actions alleging Sherman Act violations against largely the same defendants,[2] brought on behalf of intersecting nationwide classes of entities who paid artificially inflated prices for packaged ice. Plaintiff is a direct purchaser of packaged ice as an owner and operator of a restaurant and night club in San Diego, California and has been damaged as a result of the defendants' unlawful conduct. Plaintiff further joins Movant in requesting this Panel to consolidate and transfer the Packaged Ice Antitrust Cases to the Southern District of California.

---

[2] Reddy Ice Holdings, Inc., Reddy Ice Corp., Arctic Glacier Income Fund, Arctic Glacier Inc., Arctic Glacier International Inc. and Home City Ice Co.

## II.   ARGUMENT

The Panel should make the Southern District of California the home to the Packaged Ice Antitrust Litigation for the following reasons: (i) Plaintiff agrees with Movant that the Packaged Ice Antitrust Litigation is ripe for transfer, because there are questions of common fact and law that would be well-served by consolidation; and (ii) it is essential to the efficient conduct of this litigation that the Southern District of California serve as the litigation forum.

### A.   The Panel Should Transfer the Pending Packaged Ice Antitrust Litigation to One District, Where it May Be Consolidated for Pre-Trial Matters

Plaintiff agrees and joins in the pending motions for transfer and consolidation for the reasons stated in those motions. Under 28 U.S.C. section 1407, "civil actions involving one or more common questions of fact ... pending in different districts ... may be transferred to any district for coordinated or consolidated pretrial proceedings" by this Panel. 28 U.S.C. § 1407(a). Consolidating the pending actions serves the statutory goals of "just and efficient conduct of [the] actions," centralized oversight of complex actions, and minimization of waste and inefficiency in the conduct of the discovery process. *Id.*

Currently there are 61 class actions filed nationwide, six of which are filed in the Southern District of California. In their complaints, all plaintiffs cited similar factual allegations regarding the defendants' anticompetitive behavior. The disposition of each case will turn on the adjudication of substantially the same issues and alleged conduct. Therefore, the requirements for transfer and consolidation or coordination are fully met.

### B.   All of the Actions Should Be Transferred to the Southern District of California

For all of the reasons stated in the motion for transfer filed by Cobblestone Tequesta LLC, venue for all of the related actions is best found in the Southern District of California. The Southern District possesses a significant nexus to this litigation and best promotes and serves the convenience of the parties and witnesses, and the just and efficient conduct of the actions. *See* 28 U.S.C. §1407(a).

1.    **The Southern District is Where Six Actions are Pending**

There are now six similar pending class actions filed in the Southern District of California in connection with the Packaged Ice Antitrust Litigation.[3] The complaints in the other cases before the Panel make similar allegations concerning the defendants' conduct.

Furthermore, the Southern District of California serves the interest of the litigants. San Diego enjoys service from all major airlines with several flights connecting cities across the country. It is uniquely positioned to provide the plaintiffs and defendants with a comfortable and efficient venue in which to litigate. San Diego's federal courthouse is centrally located adjacent to numerous commercial and business districts, hotels, and is minutes from the airport. *See In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (The Southern District of California "provides an accessible metropolitan location that is equipped with the resources that this docket is likely to require.") The Southern District of California can and will effectively manage the challenges of nationwide antitrust class actions.

2.    **California is an Essential Market for the Packaged Ice Industry**

Defendants Arctic Glacier Income Fund, the second-largest producer, marketer and distributor of packaged ice in North America with total revenues of $249 million for 2007, Arctic Glacier Inc., and Arctic Glacier International Inc. (collectively "Arctic Glacier"), have a significant presence in the California market. In 2006, Arctic Glacier acquired six companies under the corporate banner of California Ice, the market leader in packaged ice in the urban areas of California, including San Diego. The acquisition boosted Arctic Glacier to become the largest packaged ice producer in the state. In 2007, Arctic Glacier further expanded its presence in the California market by acquiring Kar Ice Service Inc. ("Kar Ice"), with plants in Barstow and Lancaster, California. Kar

---

[3] The six actions pending in the Southern District of California are: (i) *6th & Island*; (ii) *Market Street*; (iii) *Universal Hillcrest*; (iv) *Gaslamp*; (v) *Cobblestone Tequesta LLC v. Reddy Ice Holdings, Inc.*, No. 08-cv-0656-JLS; and (vi) *Barranco-Grams v. Reddy Ice Holdings, Inc.*, No. 08-cv-00539-DMS.

Ice has a hundred-year history in the California ice industry. Further in 2007, Arctic Glacier purchased The Union Ice Company, the largest west coast producer of 300-pound blocks of ice. Given Arctic Glacier's large and burgeoning presence in the California market, the Southern District of California is the best venue for the Packaged Ice Antitrust Litigation.

Considering the warm climate and large, densely-packed population, it comes as no surprise that California is a key market for the packaged ice industry. California's large-scale consumption of packaged ice made its citizens extraordinarily exposed to the effects of the defendants' anitcompetitive pricing. California is a strong market for packaged ice: according to an analyst report,[4] California packaged ice sales account for about $100 million of the $1.8 billion in annual U.S. sales. This is equal to 5.5% of annual U.S. sales. Additionally, California is often mentioned as the most attractive market for the industry given the weather, extended selling season, and population growth. Considering the importance of California to the packaged ice industry and the large impact of the anticompetitive conspiracy on California residents, the Southern District of California is the best venue for the Packaged Ice Antitrust Litigation.

III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Panel enter an order consolidating the Packaged Ice Antitrust Litigation cases together with any other similar actions

//

//

//

//

//

//

---

[4] *Arctic Glacier Income Fund*, Wellington West Capital Markets, Inc., May 26, 2006 at 3, attached hereto as Exhibit B.

subsequently filed or removed and transferring the cases to the Southern District of California for pretrial proceedings.

DATED:  May 14, 2008                         Respectfully submitted,

                                             ROBBINS UMEDA & FINK, LLP
                                             BRIAN J. ROBBINS
                                             JEFFREY P. FINK
                                             GEORGE C. AGUILAR
                                             ASHLEY R. PALMER

                                             _____
                                             GEORGE C. AGUILAR

                                             610 West Ash Street, Suite 1800
                                             San Diego, CA  92101
                                             Telephone:  (619) 525-3990
                                             Facsimile:  (619) 525-3991

                                             LEMMON LAW FIRM, LLC
                                             ANDREW A. LEMMON
                                             15058 River Road
                                             P.O. Box 904
                                             Hahnville, LA 70057
                                             Telephone:  (985) 783-6789
                                             Facsimile:  (985) 783-1333

                                             Attorneys for Plaintiff

341282_5.DOC

# EXHIBIT A

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE PACKAGED ICE<br>ANTITRUST LITIGATION | **MDL DOCKET NO.: 1952** |

## NOTICE OF RELATED ACTIONS

Counsel for plaintiffs 6th & Island Investments, LLC ("6th & Island"), Market Street

Investments, LLC ("Market Street"), Gaslamp Country Club, LLC ("Gaslamp") and Universal

Hillcrest, LLC ("Universal"), pursuant to Rule 7.5(e) of the Rules of Procedure of the Judicial Panel

of Multidistrict Litigation, hereby notifies the Clerk of the Panel that: (i) on April 25, 2008 plaintiffs

6th & Island and Market Street; and (ii) on April 29, 2008 plaintiffs Gaslamp and Universal, filed

actions in the United States District Court for the Southern District of California that involve

questions of law and fact common to the cases captioned *In Re Packaged Ice Antitrust Litigation*,

MDL Docket No. 1952.

The official and complete titles of the four cases are:

(1) *6th & Island Investments, LLC v. Reddy Ice Holdings, Inc., et al.*, No. 08-cv-0752-JAH;

(2) *Market Street Investments, LLC v. Reddy Ice Holdings, Inc., et al.*, No. 08-cv-0753-H;

(3) *Universal Hillcrest, LLC v. Reddy Ice Holdings, Inc., et al.*, No. 08-cv-0775-JLS;

(4) *Gaslamp Country Club, LLC v. Reddy Ice Holdings, Inc., et al.*, No. 08-cv-0776-LAB.

These cases have been assigned to judges John A. Houston, Marilyn L. Huff, Janis L. Sammartino and Larry Alan Burns. The Complaints and docket sheets are attached hereto as Exhibits 1-4.

These related actions assert claims based upon alleged illegal conspiracy among defendants to fix and maintain prices in violation of federal and state antitrust laws and consumer protection statutes. All of the actions before the Judicial Panel on Multidistrict Litigation (the "Panel") are brought as class actions alleging violations of Section 1 of the Sherman Act, 15 U.S.C. §1 and therefore present the same questions of fact and law. Thus, these related actions should be consolidated with the other related cases previously identified to the Panel.

DATED: May 14, 2008

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
GEORGE C. AGUILAR
ASHLEY R. PALMER

_____
GEORGE C. AGUILAR

610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for plaintiffs 6th & Island, Market Street, Gaslamp and Universal

THE WARNER LAW FIRM
PAUL T. WARNER
6363 Woodway, Suite 910
Houston, TX 77057
Telephone: (713) 783-7077
Facsimile: (713) 583-9196

Attorneys for plaintiff Market Street

LANDSKRONER GRIECO MADDEN, LTD.
JACK LANDSKRONER
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: (216) 522-9000
Facsimile: (216) 522-9007

Attorneys for plaintiff Universal

2

LEMMON LAW FIRM, LLC
ANDREW A. LEMMON
15058 River Road
P.O. Box 904
Hahnville, LA 70057
Telephone: (985) 783-6789
Facsimile:  (985) 783-1333

Attorneys for plaintiff Gaslamp

340804_3.DOC

3

# EXHIBIT 1

## U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:08-cv-00752-JAH-JMA

6th & Island Investments v. Reddy Ice Holdings, Inc., LLC et al
Assigned to: Judge John A. Houston
Referred to: Magistrate Judge Jan M. Adler
Cause: 15:1 Antitrust Litigation

Date Filed: 04/25/2008
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

### Plaintiff

**6th & Island Investments, LLC**
*individually and on behalf of all others
similarly situated*

represented by **Brian J Robbins**
Robbins Umeda and Fink
610 West Ash Street
Suite 1800
San Diego, CA 92101
(619)525-3990
Fax: (619)525-3991
Email: notice@ruflaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Reddy Ice Holdings, Inc.**

### Defendant

**Reddy Ice Corporation**

### Defendant

**Arctic Glacier Income Fund**

### Defendant

**Arctic Glacier Inc.**

### Defendant

**Arctic Glacier International Inc.**

### Defendant

**Home City Ice Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/25/2008 | 1 | COMPLAINT with Jury Demand against all defendants ( Filing fee $ 350 receipt |

| | | number 150179), filed by 6th & Island Investments, LLC.(kmm) (av1). (Entered: 04/25/2008) |
|---|---|---|
| 04/25/2008 | 2 | NOTICE of Party With Financial Interest by 6th & Island Investments, LLC (kmm) (Entered: 04/25/2008) |
| 04/25/2008 | 3 | Summons Issued as to Reddy Ice Holdings, Inc., Reddy Ice Corporation, Arctic Glacier Income Fund, Arctic Glacier Inc., Arctic Glacier International Inc., Home City Ice Company. (kmm) (Entered: 04/25/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/14/2008 15:21:43 | | |
| PACER Login: | cg0428 | Client Code: | Packaged Ice |
| Description: | Docket Report | Search Criteria: | 3:08-cv-00752-JAH-JMA |
| Billable Pages: | 1 | Cost: | 0.08 |

**ORIGINAL**

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS (190264)
JEFFREY P. FINK (199291)
GEORGE C. AGUILAR (126535)
ASHLEY R. PALMER (246602)
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

08 APR 25  AM 10: 05

U.S. DISTRICT COURT
SOUTHERN DIST. OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**'08 CV 752  JAH JMA**

| | |
|---|---|
| 6TH & ISLAND INVESTMENTS, LLC, individually and on behalf of all others similarly situated, | Case No. |
| | CLASS ACTION COMPLAINT |
| Plaintiff, | |
| vs. | |
| REDDY ICE HOLDINGS, INC., REDDY ICE CORPORATION, ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., ARCTIC GLACIER INTERNATIONAL INC. and HOME CITY ICE COMPANY, | |
| Defendants. | DEMAND FOR JURY TRIAL |

1    Plaintiff 6th & Island Investments, LLC ("6th & Island"), on behalf of itself and all others

2  similarly situated, brings this action under the federal antitrust laws, Sections 4 and 16 of the Clayton

3  Act, 15 U.S.C. §§15 and 26, to obtain injunctive relief and recover treble damages and the costs of

4  suit, including reasonable attorney and expert fees, for the injuries to Plaintiff and members of the

5  proposed Class it represents resulting from defendants' violations of the federal antitrust laws,

6  specifically Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1. The allegations set forth below

7  are based upon information and belief pursuant to the investigation of counsel, except for

8  information based on personal knowledge.

9                                  **NATURE OF CLAIM**

10    1.    This antitrust class action arises out of an international conspiracy among defendants

11  and their co-conspirators with the purpose and effect of fixing prices, allocating markets and

12  geographic territories and committing other anticompetitive practices designed to unlawfully restrain

13  trade in the market(s) for packaged cubed, crushed, block and dry ice ("Packaged Ice") in the United

14  States and Canada. Packaged Ice is sold by defendants to supermarkets, mass merchants, convenience

15  stores, wholesale distributors and users of Packaged Ice.

16    2.    Pursuant to Rules 23(a), 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff

17  seeks treble damages, injunctive relief, attorneys' fees and costs under the antitrust laws of the United States

18  on behalf of themselves and all others similarly situated.

19                              **JURISDICTION AND VENUE**

20    3.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§15

21  and 26, and pursuant to 28 U.S.C. §§1331, 1337(a). This Court has supplemental jurisdiction over

22  the state law claims pursuant to 28 U.S.C. §1367(a), and diversity jurisdiction over Plaintiff's state

23  law claim under 28 U.S.C. §1332.

24    4.    This Court has personal jurisdiction over each of the defendants because each of the

25  defendants: (a) committed acts in furtherance of the conspiracy alleged herein in this District;

26  (b) transacted business in Packaged Ice and other products in this District; (c) maintain and have

27  maintained continuous and systemic contacts with this District over a period of years; or

28  (d) purposefully availed itself of the benefits of doing business in this District. Accordingly, each

1  defendant maintains minimum contacts with this District more than sufficient to subject it to service

2  of process and sufficient to comply with due process of law.

3       5.     Venue is proper in this judicial district pursuant to 15 U.S.C. §22 and 28 U.S.C.

4  §1391(b) and (c) because some of the defendants reside, or are licensed to do business or are doing

5  business, or are found or transact business, in this District and/or the claims arose in this District.

6  **PARTIES**

7       6.     Plaintiff 6th & Island owns and operates a restaurant and night club in San Diego,

8  California. 6th & Island purchased Packaged Ice directly from one or more of the defendants during

9  the Class Period, and was damaged as a result of defendants' unlawful conduct.

10       7.     Defendant Reddy Ice Holdings, Inc. ("Reddy Ice Holdings") is a Delaware corporation

11  with its principal place of business located in Dallas, Texas. Reddy Ice Holdings describes itself as

12  the largest manufacturer and distributor of packaged ice in the United States. It sells its products

13  primarily under the "Reddy Ice" brand to approximately 82,000 locations in 31 states and the District of

14  Columbia. Reddy Ice Holdings serves most significant consumer packaged goods channels of

15  distribution, as well as restaurants, special entertainment events, commercial users and the

16  agricultural sector.

17       8.     Indeed, Reddy Ice Holdings is the largest ice company in North America, recording

18  2007 sales of $339 million. It has the dominant market position in the U.S. sunbelt states, from

19  Florida to Arizona. Reddy Ice Holdings manufactures and distributes ice products, including cubed

20  ice, crushed ice, half-moon and cylindrical ice, block ice, and dry ice. Reddy Ice Holdings sells

21  approximately 1.9 million tons of ice per year, primarily packaged in seven and ten pound bags,

22  principally to convenience stores and supermarkets. During the Class Period, as defined below,

23  Reddy Ice Holdings began trading on the New York Stock Exchange. Prior to August 12, 2005, it had

24  been privately held under the name Packaged Ice, Inc. During the Class Period, Reddy Ice Holdings

25  directly and/or through the control of its subsidiaries and affiliates manufactured, marketed, sold

26  and/or distributed Packaged Ice in this District and/or in other districts throughout the United States.

27       9.     Defendant Reddy Ice Corporation is a Delaware Corporation with its principal of

28  business in Dallas, Texas. Reddy Ice Corporation is a wholly-owned subsidiary of defendant Reddy

- 2 -

1    Ice Holdings. During the Class Period, Reddy Ice Corporation directly and/or through the control of

2    its subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

3    District and/or other districts throughout the United States.

4        10.    Collectively, Reddy Ice Holdings, Inc. and Reddy Ice Corporation are referred to as

5    "Reddy Ice." Each of the Reddy Ice defendants joined the conspiracy alleged herein and is legally

6    responsible for its conduct because its directors, members, officers, employees and/or agents, acting

7    within the scope of their authority, reached unlawful agreement(s) with their competitors to

8    unlawfully restrain competition. Alternatively, each of the Reddy Ice defendants is legally

9    responsible because it acted through, facilitated, dominated or controlled the actions of another

10   Reddy Ice defendant in furtherance of the conspiracy alleged herein.

11       11.    Defendant Arctic Glacier Income Fund is a Canadian holding company with its

12   principal place of business in Winnipeg, Manitoba, Canada. Arctic Glacier Income Fund describes

13   itself as a leading producer, marketer and distributor of high-quality packaged ice in North America

14   under the brand name of "Arctic Glacier Premium Ice." Arctic Glacier operates 37 manufacturing

15   plants and 50 distribution facilities across Canada and the northeast, central and western United States

16   servicing more than 70,000 retail accounts.

17       12.    Arctic Glacier Income Fund is the second-largest producer, marketer, and distributor of

18   packaged ice in North America, with total revenues of $249 million for 2007. Of these revenues,

19   more than 80 percent comes from its U.S. operations, in which it has dominant market positions in

20   major eastern seaboard cities such as New York and Philadelphia, New England, California, and the

21   Midwest. The company also controls most of the Packaged Ice sales in Canada. During the Class

22   Period, Arctic Glacier Income Fund directly and/or through the control of its subsidiaries and

23   affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or in

24   other districts throughout the United States.

25       13.    Defendant Arctic Glacier, Inc. is a Canadian corporation with its principal place of

26   business in Winnipeg, Manitoba, Canada. Arctic Glacier, Inc. is a wholly-owned subsidiary of

27   defendant Arctic Glacier Income Fund. During the Class Period, Arctic Glacier, Inc. directly and/or

28   through the control of its subsidiaries and affiliates manufactured, marketed, sold and/or distributed

- 3 -

1    Packaged Ice in this District and/or other districts throughout the United States.

2        14.    Defendant Arctic Glacier International Inc. is a Delaware corporation with its

3    principal place of business in West St. Paul, Minnesota. Arctic Glacier International Inc. is a

4    wholly-owned subsidiary of defendant Arctic Glacier Income Fund. During the Class Period, Arctic

5    Glacier International Inc. directly and/or through the control of its subsidiaries and affiliates

6    manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or other districts

7    throughout the United States.

8        15.    Collectively, Arctic Glacier Income Fund, Arctic Glacier, Inc. and Arctic Glacier

9    International Inc. are referred to as "Arctic Glacier." Each of the Arctic Glacier defendants joined

10    the conspiracy alleged herein and is legally responsible for its conduct because its directors,

11    members, officers, employees and/or agents, acting within the scope of their authority, reached

12    unlawful agreement(s) with their competitors to unlawfully restrain competition. Alternatively, each

13    of the Arctic Glacier defendants is legally responsible because it acted through, facilitated,

14    dominated or controlled the actions of another Arctic Glacier defendant in furtherance of the

15    conspiracy alleged herein.

16        16.    Defendant Home City Ice Company ("Home City Ice") is a privately-held Ohio

17    Corporation with its principal place of business in Cincinnati, Ohio. Home City Ice sells and/or

18    distributes Packaged Ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as

19    parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland. Home City Ice manufactures

20    4,400 tons of ice per day in 28 manufacturing plants, with 36 distribution centers to serve the

21    Midwest. During the Class Period, Home City Ice directly and/or through the control of its

22    subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

23    District and/or other districts throughout the United States.

24                    **CO-CONSPRATORS AND AGENTS**

25        17.    Other natural persons, corporations, and entities not named as defendants herein, have

26    participated in the unlawful conspiratorial activity alleged herein in violation of the antitrust laws of

27    the United States.

28

                            - 4 -

18.    Whenever in this Complaint reference is made to an act, statement, or transaction of any corporation or entity, the allegation means that the corporation or entity acted, stated, or transacted by or through its directors, members, partners, officers, employees, or agents, while they were engaged in the management, direction, control, or conduct of the corporation's or entity's business and acting within the scope of their authority.

## CLASS ALLEGATIONS

19.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on its own behalf and on behalf of all others similarly situated.  The proposed class includes all persons, corporations, and other legal entities in the United States (excluding defendants, their subsidiaries, and any co-conspirators), who purchased Packaged Ice directly from one or more of the defendants (the "Class") in the United States or Canada at any time from at least January 1, 2002 through the present (the "Class Period").

20.    The members of the Class are so numerous and geographically dispersed across the country that joinder of all Class members would be impracticable.  Due to the nature of the claims asserted here, Plaintiff believes that members of the Class are located throughout the United States and Canada.  The exact number of Class members is unknown by Plaintiff at this time, but Plaintiff believes that the Class numbers in the thousands and their identities can only be discovered through inspection of defendants' and their co-conspirators' records, which are or should be readily available.

21.    Plaintiff's claims are typical of the members of the Class because Plaintiff and all members of the Class were damaged by the same wrongful conduct of the Defendants alleged herein. Plaintiff and the Class purchased Packaged Ice at artificially maintained, non-competitive prices established by the actions of defendants and their unnamed co-conspirators in connection with the wrongful conduct alleged herein.

22.    Plaintiff will fairly and adequately protect the interests of the Class.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

1    23.    Questions of law and fact common to the members of the Class predominate over

2    questions that may affect only individual members, if any, in that defendants have acted on grounds

3    generally applicable to the entire Class.  Among the questions of law and fact common to the Class

4    are:

5            a.    Whether defendants conspired with the purpose and effect of fixing prices,

6    allocating markets and committing other anticompetitive practice designed to unlawfully restrain the

7    trade of Packaged Ice;

8            b.    Whether defendants' conduct violated Section 1 of the Sherman Act;

9            c.    The existence, duration, and illegality of the contract, combination or

10   conspiracy alleged herein;

11           d.    The identity of the co-conspirators;

12           e.    The effect upon and the extent of injuries sustained by Plaintiff and members

13   of the Class and the appropriate type and/or measure of damages;

14           f.    Whether defendants took affirmative steps to conceal the contract, combination

15   or conspiracy alleged herein; and

16           g.    Whether Plaintiff and the Class are entitled to declaratory and/or injunctive

17   relief.

18   24.    Class action treatment is superior to any alternatives for the fair and efficient

19   adjudication of the controversy alleged herein.  Such treatment will permit a large number of

20   similarly situated persons to prosecute their common claims in a single forum simultaneously,

21   efficiently, and without the unnecessary duplication of effort and expense that numerous individual

22   actions would engender.  The prosecution of separate actions by individual members of the Class

23   would create a risk of inconsistent or varying adjudications, establishing incompatible standards of

24   conduct for defendants.  Class treatment will also permit the adjudication of relatively small claims

25   by certain class members, who could not afford to individually litigate an antitrust claim against

26   large corporate defendants.

27   25.    This action presents no difficulties of management that would preclude its

28   maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

26.    The defendants are leading manufacturers of Packaged Ice in the United States and Canada.  The Packaged Ice industry is over a billion dollar a year industry, operating throughout the United States and Canada.  During the Class Period, defendants manufactured, marketed, distributed, and/or sold Packaged Ice to customers throughout the United States and Canada, utilizing the means and instrumentalities of interstate trade and commerce.

27.    Defendants' and their co-conspirators' unlawful activity had a direct, substantial, and reasonably foreseeable effect upon interstate trade and commerce.  The unlawful restraints of trade alleged herein have directly and substantially affected interstate commerce in that the defendants have deprived Plaintiff and the Class of the benefits of free and open competition in the Packaged Ice market throughout the United States and Canada.

## ANTICOMPETITIVE CONDUCT

28.    Defendants are the largest manufacturers of Packaged Ice in the United States and North America.

29.    Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiff, and continuing thereafter to present day, defendants and their coconspirators engaged in an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of Packaged Ice in a *per se* violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

## THE PACKAGED ICE INDUSTRY

30.    Packaged Ice is sold throughout the United States principally to convenience stores, supermarkets and other retail outlets, primarily in 7 and 10 pound bags, as well as in block form.

31.    Sales of Packaged Ice are approximately $1.8 billion annually.  About half of those sales are produced by third-party manufacturers, with the other half produced in-house (ice machines).  Sales by defendants comprise approximately 70% of third-party manufacturers' sales of Packaged Ice.

32.    Canada is a major exporter of ice into the United States.

- 7 -

1    33.    The Packaged Ice industry has high barriers to entry. Many Packaged Ice customers

2    carry only one brand of ice and have long term relationships of many years with their suppliers. A

3    new entrant into the Packaged Ice market would have to incur multimillion dollar costs, including

4    manufacturing plants and equipment, energy, transportation, fuel costs, and distribution infrastructure.

5    Because of these high costs, new or small distributors are not able to meet the peak needs of large

6    multistate customers and cannot compete successfully for such customers. The industry has high

7    start-up and replacement costs, and many customers carry only one brand of ice and have long term

8    relationships of ten or more years with the manufacturer from whom they purchase Packaged Ice

9    products.

10    34.    There are no economic substitutes for Packaged Ice.

11    35.    Packaged Ice is a commodity product, which in a competitive market would be sold

12    primarily on the basis of price. Defendants' anticompetitive conduct has enabled them to fix, raise,

13    maintain and stabilize the price of Packaged Ice in the geographic areas allocated to them at

14    artificially high levels.

15    36.    The Packaged Ice Industry has undergone substantial consolidation within the last

16    few years.

17    a.    Defendant Reddy Ice has continuously purchased small ice companies in

18    various locations. During 2006, Reddy Ice purchased ten ice companies, and during 2007, it

19    purchased an additional twenty ice companies.

20    b.    Arctic Glacier has purchased numerous smaller ice companies. In 2006,

21    Arctic Glacier acquired Happy Ice LLC, the largest ice company in upstate New York. Also in

22    2006, it acquired six companies collectively known as California Ice, which enabled Arctic Glacier

23    to become the largest Packaged Ice producer in California. In 2007, Arctic Glacier purchased an

24    additional company called Union Ice in Southern California.

25    37.    Through acquisitions, defendants have increased their market power and reduced the

26    ability of any other Packaged Ice companies to compete for customers serviced by defendants.

27    38.    During the Class Period, Defendants engaged in illegal, anticompetitive conduct by,

28    *inter alia,* allocating markets so that Defendants were no longer in competition with each other.

1    39.    This resulted in the following market division: (a) Reddy Ice dominates the market in

2   the U.S. sunbelt states, from Florida to Arizona, and the Northwest (AZ, NM, TX, OK, AR, LA, MI,

3   AL, GA, FL, SC, NC, VA, CO, DE, DC, HI, ID, KA, KY, MD, MS, NV, NJ, OR, PA, TN, UT, WA,

4   WV and WY); (b) Arctic Ice dominates the market in the Central and Northeastern states and

5   California (CA, ND, SD, CA, NE, KS, MO, IA, MN, WI, MI, PA, DE, NJ, NY, CT, VT, NH and

6   ME); and (c) Home City Ice dominates the market in the Midwest (IL, OH and IN). There is virtually

7   no overlap between the geographic markets in which each Defendant operates.

8    40.    Defendants agreed not to compete head to head in any of the markets that one of them

9   dominates.  Each region of the U.S. market, as alleged herein, is controlled by one particular

10   Packaged Ice manufacturer.  The market share of non-defendant companies that manufacture and

11   distribute Packaged Ice is extremely limited.

12    41.    By engaging in conduct that allocated the market among the defendants, price

13   competition was reduced or eliminated throughout the United States and Canada.

14    42.    The Packaged Ice industry is highly seasonal, characterized by peak demand during the

15   warmer months of May through September.  Approximately 69 percent of annual revenues occur

16   during this time.

17    43.    Demand for Packaged Ice within specific geographic areas is affected by weather

18   conditions.  There is an extended peak selling season in the southern United States, where

19   temperatures remain warm beyond September.  Revenues typically increase during particularly hot

20   summers.  Cool and/or rainy seasons, however, negatively impact ice purchases.

21    44.    The Antitrust Division of the United States Department of Justice ("DOJ"), is

22   investigating possible anticompetitive practices in the Packaged Ice business.

23    45.    The DOJ investigation follows a complaint to Canada's Competition Bureau

24   ("Bureau") by Polar Ice, a smaller Packaged Ice manufacturer in western Canada, who alleged that

25   Arctic Glacier engaged in strong-arm tactics in the Edmonton geographic area, including "muscling,"

26   bribing, and offering kickbacks to the smaller company's customers.

27    46.    The court in Canada found that Arctic Glacier had engaged in conduct violative of

28   Canada's competition law to prevent the smaller ice company in from competing with Arctic Glacier

1  to deliver ice to a particular customer. Among other things, the court found that Arctic Glacier had

2  used intimidation, bribery, and other unlawful means and methods to force the customer to stop

3  seeking competitive prices from the small ice company, with the intention of driving that small

4  competitor out of business. The Canadian court awarded Polar Ice $50,000 in damages.

5       47.    Arctic Glacier defendants have acknowledged that it received a subpoena in

6  connection with the DOJ investigation on or about March 5, 2008.

7       48.    Just prior to this news, defendant Arctic Glacier Income Fund had reported a fourth-

8  quarter loss of $3.7 million on revenue of $36.3 million. In the same quarter of the previous year, the

9  fund lost $6.2 million, or 19 cents a unit, on revenue of $39.9 million. They reported that the stronger

10 Canadian dollar reduced reported sales by $4.5 million during the quarter.

11      49.    Also on or about March 6, 2008, Reddy Ice announced that federal officials executed

12 a search warrant at the Company's corporate office in Dallas on March 5, 2008.

13      50.    Reddy Ice announced that the DOJ took "various documents and information," but

14 would not say whether computers were taken. A DOJ spokesperson stated that the agency was

15 "investigating the possibility of anti-competitive practices in the packaged-ice industry."

16      51.    Between December 1, 2007 and January 3, 2008, both the Chief Operating Officer

17 and Chief Executive Officer of Reddy Ice resigned, just prior to the time the DOJ executed its search

18 warrants.

19      52.    Defendants are members of several trade associations relating to the Packaged Ice

20 industry, and their executives have served on the boards of directors and various standing

21 committees of these organizations. These trade associations hold regular meetings of their boards,

22 committees, and members, which defendants' representatives have attended, and which provide the

23 opportunity for defendants to meet and communicate with each other concerning the markets,

24 customers and prices of Packaged Ice.

25      53.    For example, defendants are members of the International Packaged Ice Association

26 ("IPIA"), which is headquartered in Tampa, Florida. Ben Key, Reddy Ice's Executive Vice President

27 – Sales and marketing, recently served as the Chairman of the IPIA Executive Committee. Nancy

28 Thorn, Director of marketing at Reddy Ice, and Keith McMahon, President and Chief Executive

1   Officer at Arctic Inc., are members of the IPIA Board of Directors. In addition, Ms. Thorn,

2   Mr. McMahon, and Tommy Sedler, Operations Manager and Treasurer of Home City, are members

3   of the IPIA Marketing Committee.

4        54.    IPIA holds meetings of its Board of Directors and Committees, as well as an annual

5   meeting of its members. Representatives of defendants attended such meetings. IPIA's 2006 annual

6   meeting was held on November 23-December 3, 2006, in Tucson, Arizona, and its 2004 annual

7   meeting was held on November 12-17, 2004, in La Quinta, California.

8        55.    There are regional trade associations that are affiliated with IPIA, and of which

9   defendants are members. Defendants' representatives have been members of the board of directors

10  or various committees of these regional trade associations. In addition, like the IPIA, these regional

11  trade associations hold regular meetings of their boards, committees and members, which have been

12  attended by defendants' representatives, and which have afforded defendants opportunities to meet

13  and communicate concerning the market, customers and prices of Packaged Ice.

14       56.    For example, Arctic Glacier and Home City are members and their representatives are

15  officers of the Northeastern Ice Association ("NIA"). Keith McMahon of Arctic Glacier, and

16  Tommy Sedler and Ted Sedler of Home City are members of NIA. Ted Sedler also currently serves

17  as First vice President and Treasurer of NIA. NIA typically holds meetings of its officers and Board

18  of Directors in the spring and holds its member conventions in the fall. Its Board of Directors

19  meetings have been held in the following locales: Washington, DC (2001); Williamsburg, VA

20  (2002); Bahamas (2003); New York, NY (2004); Ledyard, CT (2006); and Lake George, NY (2007).

21  Its annual conventions have been held in the following locales: Providence, RI (2001); Ledyard, CT

22  (2002); New Orleans, LA (2003); Atlantic City, NJ (2004); Montreal, Canada (2005); Boston, MA

23  (2006); and Lake George, NY (2007). Representatives of Arctic Glacier and Home City have

24  attended these meetings and conventions.

25       57.    In addition, Arctic Glacier and Reddy Ice are members of the Western Ice

26  Association ("WIA"), which is also affiliated with the IPIA. The WIA's members include William

27  Brick, formerly Chairman and CEO of Reddy Ice and currently its Executive Chairman, and Jim

28  Weaver, currently President, CEO and a member of the Board of Directors of Reddy Ice, as well as

1   several representatives of Arctic Glacier.  WIA also holds periodic meetings of its Board of

2   Directors and committees, as well as annual meetings of its members.  Representatives of Arctic

3   Glacier and Reddy Ice have attended these meetings.

4                             **ALLEGATIONS OF ANTITRUST INJURY**

5         58.     The unlawful contact, combination or conspiracy alleged above had and has the

6   following effects, among others:

7             a.     Prices charged by defendants and their co-conspirators to plaintiff and Class

8   members for Packaged Ice were maintained at artificially high and noncompetitive levels;

9             b.     Plaintiff and Class members were required to pay more for Packaged Ice

10   than they would have paid in a competitive marketplace unfettered by defendants' and their c-

11   conspirators' collusive and unlawful conduct; and

12             c.     Plaintiff and Class members have been deprived of the benefits of free, open

13   and unrestricted competition in the market for Packaged Ice.

14         59.     During the Class Period covered, defendants charged Plaintiff and the Class

15   anticompetitive prices for Packaged Ice.  By reason of the alleged violations of the antitrust laws,

16   Plaintiff and the Class have sustained injury to their business or property, having paid higher prices for

17   Packaged Ice than they would have paid absent the illegal contract, combination or conspiracy, and,

18   as a result, have been injured in their business and have suffered damages in an amount presently

19   undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and

20   prevent.

21         60.     The specific amounts of damages have not yet been determined because such

22   determination will require discovery.  When these amounts have been determined, Plaintiff will seek

23   leave of Court to amend this Complaint to include such amounts.

24                **EQUITABLE TOLLING FOR FRAUDULENT CONCEALMENT**

25         61.     Throughout the conspiracy alleged herein, defendants affirmatively and actively

26   concealed their unlawful activity from Plaintiff and the Class.  While Plaintiff has diligently sought

27   to protect itself from unlawful activity, Plaintiff was unable to detect this conspiracy, which by its

28

1    nature is self-concealing. Furthermore, defendants acted fraudulently and deceptively to conceal the

2    unlawful collusion by conduct including:

3            a.     Falsely representing to Plaintiff and/or other purchasers that prices and

4    markets for Packaged Ice were fair and competitive, or that price increases were caused by costs of

5    raw materials or other market forces or other false and pretextual justifications, when in fact the

6    pricing was set through the conspiracy alleged herein;

7            b.     Conducting discussions through covert telephone calls and meetings;

8            c.     Confining participation in the unlawful activity to a limited number of

9    persons so as to reduce the risk of detection;

10            d.     Avoiding either references in documents, or the creation of documents, that

11    would implicate defendants for their participation in unlawful collusion;

12            e.     Using coded words in documents and conversations to conceal the collusion

13    in the sale and distribution of Packaged Ice; and/or

14            f.     Destroying or hiding documents that would constitute evidence of

15    participation in the conspiracy alleged herein;

16        62.     Plaintiff has exercised due diligence in seeking to protect itself from the types of

17    unlawful acts that in fact occurred. Despite this diligence, Plaintiff did not learn of the conspiracy,

18    and could not have learned of the conspiracy, until the existence of ongoing criminal investigations

19    was publicly disclosed in early 2008.

20                                     **COUNT I**

21          **<u>VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT</u>**

22        63.     Plaintiff incorporates by reference the allegations above as though fully set forth

23    herein.

24        64.     Beginning at least as early as January 1, 2002 and continuing to the present, the exact

25    dates being unknown to Plaintiff, defendants and un-named conspirators entered into and engaged in

26    a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the

27    Section 1 of the Sherman Act.

28

1    65.    The formulating and furthering their conspiracy, defendants and their co-conspirators

2  engaged in unlawful anti-competitive activities, including:

3        a.    Participating in meetings and conversations to discuss the prices of Packaged

4  Ice, levels of output of Packaged Ice, and customers and markets for Packaged Ice;

5        b.    Agreeing during those meetings and conversations to fix the prices of

6  Packaged Ice sold to Plaintiff and other purchasers;

7        c.    Agreeing during those meetings and conversations not to compete in the sale

8  of Packaged Ice to Plaintiff and other purchasers and/or to allocate market share and sales volume;

9        d.    Issuing price announcements and price quotations and charging prices

10  consistent with the unlawful agreements reached;

11        e.    Agreeing to set output and/or capacity of Packaged Ice produced;

12        f.    Fixing output of Packaged Ice consistent with the agreements reached;

13        g.    Monitoring the actions of other conspirators to verify that they charged

14  prices and otherwise refrained from competition as agreed between the conspirators; and

15        h.    Fraudulently concealing the existence and activities of the Conspiracy.

16    66.    As a proximate result of defendants' unlawful conduct, Plaintiff and the Class have

17  sustained damage by paying supra-competitive prices that they would not have had to incur but for

18  the unlawful conduct of defendants as alleged herein.

19    67.    The conduct of defendants and their co-conspirators constitutes a *per se* violation of

20  Section 1 of the Sherman Act, 15 U.S.C. §1 and is at a minimum an unreasonable and unlawful

21  restraint of trade.

22                    **COUNT II**

23    **FOR RESTITUTION, DISGORGEMENT AND IMPOSITION OF A**
     **CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT BY DEFENDANTS**
24

25    68.    Plaintiff incorporates by reference the preceding and subsequent paragraphs as though

26  fully set forth herein.

27    69.    As a result of their unlawful conduct described above, defendants have been and

28  will continue to be unjustly enriched.  Defendants have been unjustly enriched, to the detriment of

- 14 -

1   Plaintiff and the Class by the receipt of, at a minimum, unlawfully inflated prices and illegal profits

2   for Packaged Ice. Defendants have benefited from their unlawful acts, and it would be inequitable

3   for Defendants to be permitted to retain any of their ill-gotten gains.

4          70.    Plaintiff and the Class are entitled to the amount of defendants' ill-gotten gains

5   resulting from defendants' unlawful, unjust and inequitable conduct. Plaintiff and the Class are

6   entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which

7   Plaintiff and the Class may make claims on a *pro rata* basis.

8                                    **JURY DEMAND**

9          Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff

10  respectfully demands a trial by jury.

11                                **PETITION FOR RELIEF**

12         WHEREFORE, Plaintiff requests that:

13         A.     The Court determines that this action may be maintained as a class action under

14  Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be appointed class

15  representative and that Plaintiff's counsel be appointed as counsel for the Class;

16         B.     The unlawful combination and conspiracy alleged herein be adjudged and decreed

17  to be in unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

18         C.     Plaintiff and the Class recover compensatory damages as provided by law,

19  determined to have been sustained by each of them; and that joint and several judgments in favor

20  of Plaintiff and the Class, respectively, be entered against the defendants, and each of them, in an

21  amount to be trebled in accordance with antitrust laws plus the costs of the action, including

22  reasonable attorneys' fees, expert fees, and accountant fees, and pre- and post-judgment interest;

23         D.     Defendants, their affiliates, successors, transferees, assignees, and the officers,

24  directors, partners, agents and employees thereof, and all other persons acting or claiming to act

25  on their behalf, be permanently enjoined from continuing the unlawful contract, combination or

26  conspiracy alleged herein and from:

27               i.     Continuing, maintaining or renewing the contract, combination or

28  conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy

1  having a similar purpose or effect, and from adopting or following any practice, plan, program or

2  device having a similar purpose or effect; and

3      ii.    Communicating or causing to be communicated to any other person engaged

4  in the manufacture, distribution or sale of any product except to the extent necessary in connection

5  with a bona fide sales transaction between the parties to such communications;

6      E.    Plaintiff and the Class be granted such other, further and different relief as the

7  nature of the case may require or as the Court may deem just and proper.

8  DATED: April 25 2008                    ROBBINS UMEDA & FINK, LLP
                                           BRIAN J. ROBBINS
9                                          JEFFREY P. FINK
                                           GEORGE C. AGUILAR
10                                         ASHLEY R. PALMER

11

12                                         _____
                                           BRIAN J. ROBBINS
13
                                           610 West Ash Street, Suite 1800
14                                         San Diego, CA 92101
                                           Telephone: (619) 525-3990
15                                         Facsimile: (619) 525-3991

16                                         Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28  336813_2.DOC

- 16 -

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 150179     — MB**

**April 25, 2008
10:14:06**

**Civ Fil Non-Pris**
USAO #.: 08CV0752 CIVIL FILING
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC8524

**Total—>   $350.00**

FROM: 6TH & ISLAND IVESTMENTS, LCC
       VS REDDY ICE HOLDINGS INC, ET

JS 44 (Rev. 12/07)

## CIVIL COVER SHEET

**ORIGINAL**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

6th & Island Investments, LLC

### DEFENDANTS

Reddy Ice Holdings, Inc. Reddy Ice Corporation, Arctic Glacier Income Fund, Arctic Glacier Inc., et al.

**(b)** County of Residence of First Listed Plaintiff **San Diego County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Brian J. Robbins, Robbins Umeda & Fink, LLP, 610 West Ash St., Suite 1800, San Diego, CA 92101, (619) 525-3990

Attorneys (If Known)

unknown

**'08 CV 752   JAH JMA**

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

*PERSONAL INJURY*
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☒ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

### V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC s. 1, 15 USC ss. 15 and 26

Brief description of cause:
class action for violation of Sherman Antitrust Act

### VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions:)

JUDGE Janis L. Sammartino

DOCKET NUMBER 3:08cv00656-JLS-BLM

DATE
04/25/2008

SIGNATURE OF ATTORNEY OF RECORD

---

FOR OFFICE USE ONLY

RECEIPT # 150179   AMOUNT 350.00   APPLYING IFP   JUDGE   MAG. JUDGE

TB 04/25/08

CR

# EXHIBIT 2

## U.S. District Court
### Southern District of California (San Diego)
### CIVIL DOCKET FOR CASE #: 3:08-cv-00753-H-WMC

Market Street Investments LLC v. Reddy Ice Holdings, Inc. et al
Assigned to: Judge Marilyn L. Huff
Referred to: Magistrate Judge William McCurine, Jr
Cause: 15:1 Antitrust Litigation

Date Filed: 04/25/2008
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

#### Plaintiff

**Market Street Investments LLC**
*individually and on behalf of others
similarly situated*

represented by **Brian J Robbins**
Robbins Umeda and Fink
610 West Ash Street
Suite 1800
San Diego, CA 92101
(619)525-3990
Fax: (619)525-3991
Email: notice@ruflaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

#### Defendant

**Reddy Ice Holdings, Inc.**

#### Defendant

**Reddy Ice Corporation**

#### Defendant

**Arctic Glacier Income Fund**

#### Defendant

**Artic Glacier, Inc.**

#### Defendant

**Arctic Glacier International Inc.**

#### Defendant

**Home City Ice Company**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/25/2008 | 1 | COMPLAINT with Jury Demand against all defendants ( Filing fee $ 350 receipt |

| | | |
|---|---|---|
| | | number 150180.), filed by Market Street Investments LLC.(cap) (kaj). (Entered: 04/25/2008) |
| 04/25/2008 | 2 | NOTICE of Party With Financial Interest by Market Street Investments LLC. (cap) (Entered: 04/25/2008) |
| 04/25/2008 | 3 | Summons Issued as to Reddy Ice Holdings, Inc., Reddy Ice Corporation, Arctic Glacier Income Fund, Artic Glacier, Inc., Arctic Glacier International Inc., and Home City Ice Company. (cap) (Entered: 04/25/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/14/2008 15:35:51 | | |
| PACER Login: | cg0428 | Client Code: | Packaged Ice |
| Description: | Docket Report | Search Criteria: | 3:08-cv-00753-H-WMC |
| Billable Pages: | 1 | Cost: | 0.08 |

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS  (190264)
JEFFREY P. FINK  (199291)
GEORGE C. AGUILAR (126535)
ASHLEY R. PALMER (246602)
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991

THE WARNER LAW FIRM
PAUL T. WARNER
6363 Woodway, Suite 910
Houston, TX 77057
Telephone: (713) 783-7077
Facsimile: (713) 583-9196

Attorneys for Plaintiff

FILED
ORIGINAL
08 APR 25  AM 10:02

CLERK US DISTRICT COURT
SOUTHERN DISTRICT CALIFORNIA

BY_____
DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 753    H  WMc

| | |
|---|---|
| MARKET STREET INVESTMENTS, LLC, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | |
| REDDY ICE HOLDINGS, INC., REDDY ICE CORPORATION, ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., ARCTIC GLACIER INTERNATIONAL INC. and HOME CITY ICE COMPANY, | |
| Defendants. | DEMAND FOR JURY TRIAL |

1    Plaintiff Market Street Investments, LLC ("Market Street"), on behalf of itself and all others

2   similarly situated, brings this action under the federal antitrust laws, Sections 4 and 16 of the Clayton

3   Act, 15 U.S.C. §§15 and 26, to obtain injunctive relief and recover treble damages and the costs of

4   suit, including reasonable attorney and expert fees, for the injuries to Plaintiff and members of the

5   proposed Class it represents resulting from defendants' violations of the federal antitrust laws,

6   specifically Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1. The allegations set forth below

7   are based upon information and belief pursuant to the investigation of counsel, except for

8   information based on personal knowledge.

9                              **NATURE OF CLAIM**

10       1.    This antitrust class action arises out of an international conspiracy among defendants

11   and their co-conspirators with the purpose and effect of fixing prices, allocating markets and

12   geographic territories and committing other anticompetitive practices designed to unlawfully restrain

13   trade in the market(s) for packaged cubed, crushed, block and dry ice ("Packaged Ice") in the United

14   States and Canada. Packaged Ice is sold by defendants to supermarkets, mass merchants, convenience

15   stores, wholesale distributors and users of Packaged Ice.

16       2.    Pursuant to Rules 23(a), 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff

17   seeks treble damages, injunctive relief, attorneys' fees and costs under the antitrust laws of the United States

18   on behalf of themselves and all others similarly situated.

19                          **JURISDICTION AND VENUE**

20       3.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§15

21   and 26, and pursuant to 28 U.S.C. §§1331, 1337(a). This Court has supplemental jurisdiction over

22   the state law claims pursuant to 28 U.S.C. §1367(a), and diversity jurisdiction over Plaintiff's state

23   law claim under 28 U.S.C. §1332.

24       4.    This Court has personal jurisdiction over each of the defendants because each of the

25   defendants: (a) committed acts in furtherance of the conspiracy alleged herein in this District;

26   (b) transacted business in Packaged Ice and other products in this District; (c) maintain and have

27   maintained continuous and systemic contacts with this District over a period of years; or

28   (d) purposefully availed itself of the benefits of doing business in this District. Accordingly, each

1   defendant maintains minimum contacts with this District more than sufficient to subject it to service

2   of process and sufficient to comply with due process of law.

3       5.      Venue is proper in this judicial district pursuant to 15 U.S.C. §22 and 28 U.S.C.

4   §1391(b) and (c) because some of the defendants reside, or are licensed to do business or are doing

5   business, or are found or transact business, in this District and/or the claims arose in this District.

6                                          **PARTIES**

7       6.      Plaintiff Market Street owns and operates a night club in San Diego, California.

8   Market Street purchased Packaged Ice directly from one or more of the defendants during the Class

9   Period, and was damaged as a result of defendants' unlawful conduct.

10      7.      Defendant Reddy Ice Holdings, Inc. ("Reddy Ice Holdings") is a Delaware corporation

11  with its principal place of business located in Dallas, Texas.  Reddy Ice Holdings describes itself as

12  the largest manufacturer and distributor of packaged ice in the United States.  It sells its products

13  primarily under the "Reddy Ice" brand to approximately 82,000 locations in 31 states and the District of

14  Columbia.  Reddy Ice Holdings serves most significant consumer packaged goods channels of

15  distribution, as well as restaurants, special entertainment events, commercial users and the

16  agricultural sector.

17      8.      Indeed, Reddy Ice Holdings is the largest ice company in North America, recording

18  2007 sales of $339 million.  It has the dominant market position in the U.S. sunbelt states, from

19  Florida to Arizona.  Reddy Ice Holdings manufactures and distributes ice products, including cubed

20  ice, crushed ice, half-moon and cylindrical ice, block ice, and dry ice.  Reddy Ice Holdings sells

21  approximately 1.9 million tons of ice per year, primarily packaged in seven and ten pound bags,

22  principally to convenience stores and supermarkets.  During the Class Period, as defined below,

23  Reddy Ice Holdings began trading on the New York Stock Exchange.  Prior to August 12, 2005, it had

24  been privately held under the name Packaged Ice, Inc.  During the Class Period, Reddy Ice Holdings

25  directly and/or through the control of its subsidiaries and affiliates manufactured, marketed, sold

26  and/or distributed Packaged Ice in this District and/or in other districts throughout the United States.

27      9.      Defendant Reddy Ice Corporation is a Delaware Corporation with its principal of

28  business in Dallas, Texas.  Reddy Ice Corporation is a wholly-owned subsidiary of defendant Reddy

- 2 -

1   Ice Holdings. During the Class Period, Reddy Ice Corporation directly and/or through the control of

2   its subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

3   District and/or other districts throughout the United States.

4            10.    Collectively, Reddy Ice Holdings, Inc. and Reddy Ice Corporation are referred to as

5   "Reddy Ice." Each of the Reddy Ice defendants joined the conspiracy alleged herein and is legally

6   responsible for its conduct because its directors, members, officers, employees and/or agents, acting

7   within the scope of their authority, reached unlawful agreement(s) with their competitors to

8   unlawfully restrain competition.  Alternatively, each of the Reddy Ice defendants is legally

9   responsible because it acted through, facilitated, dominated or controlled the actions of another

10  Reddy Ice defendant in furtherance of the conspiracy alleged herein.

11           11.    Defendant Arctic Glacier Income Fund is a Canadian holding company with its

12  principal place of business in Winnipeg, Manitoba, Canada. Arctic Glacier Income Fund describes

13  itself as a leading producer, marketer and distributor of high-quality packaged ice in North America

14  under the brand name of "Arctic Glacier Premium Ice." Arctic Glacier operates 37 manufacturing

15  plants and 50 distribution facilities across Canada and the northeast, central and western United States

16  servicing more than 70,000 retail accounts.

17           12.    Arctic Glacier Income Fund is the second-largest producer, marketer, and distributor of

18  packaged ice in North America, with total revenues of $249 million for 2007. Of these revenues,

19  more than 80 percent comes from its U.S. operations, in which it has dominant market positions in

20  major eastern seaboard cities such as New York and Philadelphia, New England, California, and the

21  Midwest. The company also controls most of the Packaged Ice sales in Canada. During the Class

22  Period, Arctic Glacier Income Fund directly and/or through the control of its subsidiaries and

23  affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or in

24  other districts throughout the United States.

25           13.    Defendant Arctic Glacier, Inc. is a Canadian corporation with its principal place of

26  business in Winnipeg, Manitoba, Canada. Arctic Glacier, Inc. is a wholly-owned subsidiary of

27  defendant Arctic Glacier Income Fund. During the Class Period, Arctic Glacier, Inc. directly and/or

28  through the control of its subsidiaries and affiliates manufactured, marketed, sold and/or distributed

- 3 -

1   Packaged Ice in this District and/or other districts throughout the United States.

2         14.     Defendant Arctic Glacier International Inc. is a Delaware corporation with its

3   principal place of business in West St. Paul, Minnesota. Arctic Glacier International Inc. is a

4   wholly-owned subsidiary of defendant Arctic Glacier Income Fund. During the Class Period, Arctic

5   Glacier International Inc. directly and/or through the control of its subsidiaries and affiliates

6   manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or other districts

7   throughout the United States.

8         15.     Collectively, Arctic Glacier Income Fund, Arctic Glacier, Inc. and Arctic Glacier

9   International Inc. are referred to as "Arctic Glacier." Each of the Arctic Glacier defendants joined

10   the conspiracy alleged herein and is legally responsible for its conduct because its directors,

11   members, officers, employees and/or agents, acting within the scope of their authority, reached

12   unlawful agreement(s) with their competitors to unlawfully restrain competition. Alternatively, each

13   of the Arctic Glacier defendants is legally responsible because it acted through, facilitated,

14   dominated or controlled the actions of another Arctic Glacier defendant in furtherance of the

15   conspiracy alleged herein.

16         16.     Defendant Home City Ice Company ("Home City Ice") is a privately-held Ohio

17   Corporation with its principal place of business in Cincinnati, Ohio. Home City Ice sells and/or

18   distributes Packaged Ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as

19   parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland. Home City Ice manufactures

20   4,400 tons of ice per day in 28 manufacturing plants, with 36 distribution centers to serve the

21   Midwest. During the Class Period, Home City Ice directly and/or through the control of its

22   subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

23   District and/or other districts throughout the United States.

24                            **CO-CONSPRATORS AND AGENTS**

25         17.     Other natural persons, corporations, and entities not named as defendants herein, have

26   participated in the unlawful conspiratorial activity alleged herein in violation of the antitrust laws of

27   the United States.

28

18.     Whenever in this Complaint reference is made to an act, statement, or transaction of any corporation or entity, the allegation means that the corporation or entity acted, stated, or transacted by or through its directors, members, partners, officers, employees, or agents, while they were engaged in the management, direction, control, or conduct of the corporation's or entity's business and acting within the scope of their authority.

## CLASS ALLEGATIONS

19.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on its own behalf and on behalf of all others similarly situated.  The proposed class includes all persons, corporations, and other legal entities in the United States (excluding defendants, their subsidiaries, and any co-conspirators), who purchased Packaged Ice directly from one or more of the defendants (the "Class") in the United States or Canada at any time from at least January 1, 2002 through the present (the "Class Period").

20.     The members of the Class are so numerous and geographically dispersed across the country that joinder of all Class members would be impracticable.  Due to the nature of the claims asserted here, Plaintiff believes that members of the Class are located throughout the United States and Canada.  The exact number of Class members is unknown by Plaintiff at this time, but Plaintiff believes that the Class numbers in the thousands and their identities can only be discovered through inspection of defendants' and their co-conspirators' records, which are or should be readily available.

21.     Plaintiff's claims are typical of the members of the Class because Plaintiff and all members of the Class were damaged by the same wrongful conduct of the Defendants alleged herein.  Plaintiff and the Class purchased Packaged Ice at artificially maintained, non-competitive prices established by the actions of defendants and their unnamed co-conspirators in connection with the wrongful conduct alleged herein.

22.     Plaintiff will fairly and adequately protect the interests of the Class.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

- 5 -

1    23.    Questions of law and fact common to the members of the Class predominate over

2    questions that may affect only individual members, if any, in that defendants have acted on grounds

3    generally applicable to the entire Class.  Among the questions of law and fact common to the Class

4    are:

5            a.    Whether defendants conspired with the purpose and effect of fixing prices,

6    allocating markets and committing other anticompetitive practice designed to unlawfully restrain the

7    trade of Packaged Ice;

8            b.    Whether defendants' conduct violated Section 1 of the Sherman Act;

9            c.    The existence, duration, and illegality of the contract, combination or

10   conspiracy alleged herein;

11           d.    The identity of the co-conspirators;

12           e.    The effect upon and the extent of injuries sustained by Plaintiff and members

13   of the Class and the appropriate type and/or measure of damages;

14           f.    Whether defendants took affirmative steps to conceal the contract, combination

15   or conspiracy alleged herein; and

16           g.    Whether Plaintiff and the Class are entitled to declaratory and/or injunctive

17   relief.

18   24.    Class action treatment is superior to any alternatives for the fair and efficient

19   adjudication of the controversy alleged herein.  Such treatment will permit a large number of

20   similarly situated persons to prosecute their common claims in a single forum simultaneously,

21   efficiently, and without the unnecessary duplication of effort and expense that numerous individual

22   actions would engender.  The prosecution of separate actions by individual members of the Class

23   would create a risk of inconsistent or varying adjudications, establishing incompatible standards of

24   conduct for defendants.  Class treatment will also permit the adjudication of relatively small claims

25   by certain class members, who could not afford to individually litigate an antitrust claim against

26   large corporate defendants.

27   25.    This action presents no difficulties of management that would preclude its

28   maintenance as a class action.

# INTERSTATE TRADE AND COMMERCE

26.    The defendants are leading manufacturers of Packaged Ice in the United States and Canada. The Packaged Ice industry is over a billion dollar a year industry, operating throughout the United States and Canada. During the Class Period, defendants manufactured, marketed, distributed, and/or sold Packaged Ice to customers throughout the United States and Canada, utilizing the means and instrumentalities of interstate trade and commerce.

27.    Defendants' and their co-conspirators' unlawful activity had a direct, substantial, and reasonably foreseeable effect upon interstate trade and commerce. The unlawful restraints of trade alleged herein have directly and substantially affected interstate commerce in that the defendants have deprived Plaintiff and the Class of the benefits of free and open competition in the Packaged Ice market throughout the United States and Canada.

# ANTICOMPETITIVE CONDUCT

28.    Defendants are the largest manufacturers of Packaged Ice in the United States and North America.

29.    Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiff, and continuing thereafter to present day, defendants and their coconspirators engaged in an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of Packaged Ice in a *per se* violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

# THE PACKAGED ICE INDUSTRY

30.    Packaged Ice is sold throughout the United States principally to convenience stores, supermarkets and other retail outlets, primarily in 7 and 10 pound bags, as well as in block form.

31.    Sales of Packaged Ice are approximately $1.8 billion annually. About half of those sales are produced by third-party manufacturers, with the other half produced in-house (ice machines). Sales by defendants comprise approximately 70% of third-party manufacturers' sales of Packaged Ice.

32.    Canada is a major exporter of ice into the United States.

1    33.    The Packaged Ice industry has high barriers to entry. Many Packaged Ice customers

2    carry only one brand of ice and have long term relationships of many years with their suppliers. A

3    new entrant into the Packaged Ice market would have to incur multimillion dollar costs, including

4    manufacturing plants and equipment, energy, transportation, fuel costs, and distribution infrastructure.

5    Because of these high costs, new or small distributors are not able to meet the peak needs of large

6    multistate customers and cannot compete successfully for such customers. The industry has high

7    start-up and replacement costs, and many customers carry only one brand of ice and have long term

8    relationships of ten or more years with the manufacturer from whom they purchase Packaged Ice

9    products.

10    34.    There are no economic substitutes for Packaged Ice.

11    35.    Packaged Ice is a commodity product, which in a competitive market would be sold

12    primarily on the basis of price. Defendants' anticompetitive conduct has enabled them to fix, raise,

13    maintain and stabilize the price of Packaged Ice in the geographic areas allocated to them at

14    artificially high levels.

15    36.    The Packaged Ice Industry has undergone substantial consolidation within the last

16    few years.

17        a.    Defendant Reddy Ice has continuously purchased small ice companies in

18    various locations. During 2006, Reddy Ice purchased ten ice companies, and during 2007, it

19    purchased an additional twenty ice companies.

20        b.    Arctic Glacier has purchased numerous smaller ice companies. In 2006,

21    Arctic Glacier acquired Happy Ice LLC, the largest ice company in upstate New York. Also in

22    2006, it acquired six companies collectively known as California Ice, which enabled Arctic Glacier

23    to become the largest Packaged Ice producer in California. In 2007, Arctic Glacier purchased an

24    additional company called Union Ice in Southern California.

25    37.    Through acquisitions, defendants have increased their market power and reduced the

26    ability of any other Packaged Ice companies to compete for customers serviced by defendants.

27    38.    During the Class Period, Defendants engaged in illegal, anticompetitive conduct by,

28    *inter alia,* allocating markets so that Defendants were no longer in competition with each other.

- 8 -

1       39.    This resulted in the following market division: (a) Reddy Ice dominates the market in

2  the U.S. sunbelt states, from Florida to Arizona, and the Northwest (AZ, NM, TX, OK, AR, LA, MI,

3  AL, GA, FL, SC, NC, VA, CO, DE, DC, HI, ID, KA, KY, MD, MS, NV, NJ, OR, PA, TN, UT, WA,

4  WV and WY); (b) Arctic Ice dominates the market in the Central and Northeastern states and

5  California (CA, ND, SD, CA, NE, KS, MO, IA, MN, WI, MI, PA, DE, NJ, NY, CT, VT, NH and

6  ME); and (c) Home City Ice dominates the market in the Midwest (IL, OH and IN). There is virtually

7  no overlap between the geographic markets in which each Defendant operates.

8       40.    Defendants agreed not to compete head to head in any of the markets that one of them

9  dominates. Each region of the U.S. market, as alleged herein, is controlled by one particular

10  Packaged Ice manufacturer. The market share of non-defendant companies that manufacture and

11  distribute Packaged Ice is extremely limited.

12       41.    By engaging in conduct that allocated the market among the defendants, price

13  competition was reduced or eliminated throughout the United States and Canada.

14       42.    The Packaged Ice industry is highly seasonal, characterized by peak demand during the

15  warmer months of May through September. Approximately 69 percent of annual revenues occur

16  during this time.

17       43.    Demand for Packaged Ice within specific geographic areas is affected by weather

18  conditions. There is an extended peak selling season in the southern United States, where

19  temperatures remain warm beyond September. Revenues typically increase during particularly hot

20  summers. Cool and/or rainy seasons, however, negatively impact ice purchases.

21       44.    The Antitrust Division of the United States Department of Justice ("DOJ"), is

22  investigating possible anticompetitive practices in the Packaged Ice business.

23       45.    The DOJ investigation follows a complaint to Canada's Competition Bureau

24  ("Bureau") by Polar Ice, a smaller Packaged Ice manufacturer in western Canada, who alleged that

25  Arctic Glacier engaged in strong-arm tactics in the Edmonton geographic area, including "muscling,"

26  bribing, and offering kickbacks to the smaller company's customers.

27       46.    The court in Canada found that Arctic Glacier had engaged in conduct violative of

28  Canada's competition law to prevent the smaller ice company in from competing with Arctic Glacier

1   to deliver ice to a particular customer. Among other things, the court found that Arctic Glacier had

2   used intimidation, bribery, and other unlawful means and methods to force the customer to stop

3   seeking competitive prices from the small ice company, with the intention of driving that small

4   competitor out of business. The Canadian court awarded Polar Ice $50,000 in damages.

5       47.    Arctic Glacier defendants have acknowledged that it received a subpoena in

6   connection with the DOJ investigation on or about March 5, 2008.

7       48.    Just prior to this news, defendant Arctic Glacier Income Fund had reported a fourth-

8   quarter loss of $3.7 million on revenue of $36.3 million. In the same quarter of the previous year, the

9   fund lost $6.2 million, or 19 cents a unit, on revenue of $39.9 million. They reported that the stronger

10  Canadian dollar reduced reported sales by $4.5 million during the quarter.

11      49.    Also on or about March 6, 2008, Reddy Ice announced that federal officials executed

12  a search warrant at the Company's corporate office in Dallas on March 5, 2008.

13      50.    Reddy Ice announced that the DOJ took "various documents and information," but

14  would not say whether computers were taken. A DOJ spokesperson stated that the agency was

15  "investigating the possibility of anti-competitive practices in the packaged-ice industry."

16      51.    Between December 1, 2007 and January 3, 2008, both the Chief Operating Officer

17  and Chief Executive Officer of Reddy Ice resigned, just prior to the time the DOJ executed its search

18  warrants.

19      52.    Defendants are members of several trade associations relating to the Packaged Ice

20  industry, and their executives have served on the boards of directors and various standing

21  committees of these organizations. These trade associations hold regular meetings of their boards,

22  committees, and members, which defendants' representatives have attended, and which provide the

23  opportunity for defendants to meet and communicate with each other concerning the markets,

24  customers and prices of Packaged Ice.

25      53.    For example, defendants are members of the International Packaged Ice Association

26  ("IPIA"), which is headquartered in Tampa, Florida. Ben Key, Reddy Ice's Executive Vice President

27  – Sales and marketing, recently served as the Chairman of the IPIA Executive Committee. Nancy

28  Thorn, Director of marketing at Reddy Ice, and Keith McMahon, President and Chief Executive

1   Officer at Arctic Inc., are members of the IPIA Board of Directors. In addition, Ms. Thorn,

2   Mr. McMahon, and Tommy Sedler, Operations Manager and Treasurer of Home City, are members

3   of the IPIA Marketing Committee.

4       54.    IPIA holds meetings of its Board of Directors and Committees, as well as an annual

5   meeting of its members. Representatives of defendants attended such meetings. IPIA's 2006 annual

6   meeting was held on November 23-December 3, 2006, in Tucson, Arizona, and its 2004 annual

7   meeting was held on November 12-17, 2004, in La Quinta, California.

8       55.    There are regional trade associations that are affiliated with IPIA, and of which

9   defendants are members. Defendants' representatives have been members of the board of directors

10  or various committees of these regional trade associations. In addition, like the IPIA, these regional

11  trade associations hold regular meetings of their boards, committees and members, which have been

12  attended by defendants' representatives, and which have afforded defendants opportunities to meet

13  and communicate concerning the market, customers and prices of Packaged Ice.

14      56.    For example, Arctic Glacier and Home City are members and their representatives are

15  officers of the Northeastern Ice Association ("NIA"). Keith McMahon of Arctic Glacier, and

16  Tommy Sedler and Ted Sedler of Home City are members of NIA. Ted Sedler also currently serves

17  as First Vice President and Treasurer of NIA. NIA typically holds meetings of its officers and Board

18  of Directors in the spring and holds its member conventions in the fall. Its Board of Directors

19  meetings have been held in the following locales: Washington, DC (2001); Williamsburg, VA

20  (2002); Bahamas (2003); New York, NY (2004); Ledyard, CT (2006); and Lake George, NY (2007).

21  Its annual conventions have been held in the following locales: Providence, RI (2001); Ledyard, CT

22  (2002); New Orleans, LA (2003); Atlantic City, NJ (2004); Montreal, Canada (2005); Boston, MA

23  (2006); and Lake George, NY (2007). Representatives of Arctic Glacier and Home City have

24  attended these meetings and conventions.

25      57.    In addition, Arctic Glacier and Reddy Ice are members of the Western Ice

26  Association ("WIA"), which is also affiliated with the IPIA. The WIA's members include William

27  Brick, formerly Chairman and CEO of Reddy Ice and currently its Executive Chairman, and Jim

28  Weaver, currently President, CEO and a member of the Board of Directors of Reddy Ice, as well as

1  several representatives of Arctic Glacier.  WIA also holds periodic meetings of its Board of

2  Directors and committees, as well as annual meetings of its members.  Representatives of Arctic

3  Glacier and Reddy Ice have attended these meetings.

**ALLEGATIONS OF ANTITRUST INJURY**

5      58.    The unlawful contact, combination or conspiracy alleged above had and has the

6  following effects, among others:

7              a.    Prices charged by defendants and their co-conspirators to plaintiff and Class

8  members for Packaged Ice were maintained at artificially high and noncompetitive levels;

9              b.    Plaintiff and Class members were required to pay more for Packaged Ice

10 than they would have paid in a competitive marketplace unfettered by defendants' and their c-

11 conspirators' collusive and unlawful conduct; and

12             c.    Plaintiff and Class members have been deprived of the benefits of free, open

13 and unrestricted competition in the market for Packaged Ice.

14     59.    During the Class Period covered, defendants charged Plaintiff and the Class

15 anticompetitive prices for Packaged Ice.  By reason of the alleged violations of the antitrust laws,

16 Plaintiff and the Class have sustained injury to their business or property, having paid higher prices for

17 Packaged Ice than they would have paid absent the illegal contract, combination or conspiracy, and,

18 as a result, have been injured in their business and have suffered damages in an amount presently

19 undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and

20 prevent.

21     60.    The specific amounts of damages have not yet been determined because such

22 determination will require discovery.  When these amounts have been determined, Plaintiff will seek

23 leave of Court to amend this Complaint to include such amounts.

**EQUITABLE TOLLING FOR FRAUDULENT CONCEALMENT**

25     61.    Throughout the conspiracy alleged herein, defendants affirmatively and actively

26 concealed their unlawful activity from Plaintiff and the Class.  While Plaintiff has diligently sought

27 to protect itself from unlawful activity, Plaintiff was unable to detect this conspiracy, which by its

28

- 12 -

1  nature is self-concealing. Furthermore, defendants acted fraudulently and deceptively to conceal the

2  unlawful collusion by conduct including:

3           a.      Falsely representing to Plaintiff and/or other purchasers that prices and

4  markets for Packaged Ice were fair and competitive, or that price increases were caused by costs of

5  raw materials or other market forces or other false and pretextual justifications, when in fact the

6  pricing was set through the conspiracy alleged herein;

7           b.      Conducting discussions through covert telephone calls and meetings;

8           c.      Confining participation in the unlawful activity to a limited number of

9  persons so as to reduce the risk of detection;

10          d.      Avoiding either references in documents, or the creation of documents, that

11 would implicate defendants for their participation in unlawful collusion;

12          e.      Using coded words in documents and conversations to conceal the collusion

13 in the sale and distribution of Packaged Ice; and/or

14          f.      Destroying or hiding documents that would constitute evidence of

15 participation in the conspiracy alleged herein;

16      62.      Plaintiff has exercised due diligence in seeking to protect itself from the types of

17 unlawful acts that in fact occurred. Despite this diligence, Plaintiff did not learn of the conspiracy,

18 and could not have learned of the conspiracy, until the existence of ongoing criminal investigations

19 was publicly disclosed in early 2008.

20                               **COUNT I**

21            **VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT**

22      63.      Plaintiff incorporates by reference the allegations above as though fully set forth

23 herein.

24      64.      Beginning at least as early as January 1, 2002 and continuing to the present, the exact

25 dates being unknown to Plaintiff, defendants and un-named conspirators entered into and engaged in

26 a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the

27 Section 1 of the Sherman Act.

28

1    65.    The formulating and furthering their conspiracy, defendants and their co-conspirators

2  engaged in unlawful anti-competitive activities, including:

3        a.    Participating in meetings and conversations to discuss the prices of Packaged

4  Ice, levels of output of Packaged Ice, and customers and markets for Packaged Ice;

5        b.    Agreeing during those meetings and conversations to fix the prices of

6  Packaged Ice sold to Plaintiff and other purchasers;

7        c.    Agreeing during those meetings and conversations not to compete in the sale

8  of Packaged Ice to Plaintiff and other purchasers and/or to allocate market share and sales volume;

9        d.    Issuing price announcements and price quotations and charging prices

10  consistent with the unlawful agreements reached;

11        e.    Agreeing to set output and/or capacity of Packaged Ice produced;

12        f.    Fixing output of Packaged Ice consistent with the agreements reached;

13        g.    Monitoring the actions of other conspirators to verify that they charged

14  prices and otherwise refrained from competition as agreed between the conspirators; and

15        h.    Fraudulently concealing the existence and activities of the Conspiracy.

16    66.    As a proximate result of defendants' unlawful conduct, Plaintiff and the Class have

17  sustained damage by paying supra-competitive prices that they would not have had to incur but for

18  the unlawful conduct of defendants as alleged herein.

19    67.    The conduct of defendants and their co-conspirators constitutes a *per se* violation of

20  Section 1 of the Sherman Act, 15 U.S.C. §1 and is at a minimum an unreasonable and unlawful

21  restraint of trade.

22                                **COUNT II**

23              **FOR RESTITUTION, DISGORGEMENT AND IMPOSITION OF A**
                **CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT BY DEFENDANTS**
24

25    68.    Plaintiff incorporates by reference the preceding and subsequent paragraphs as though

26  fully set forth herein.

27    69.    As a result of their unlawful conduct described above, defendants have been and

28  will continue to be unjustly enriched.  Defendants have been unjustly enriched, to the detriment of

1  Plaintiff and the Class by the receipt of, at a minimum, unlawfully inflated prices and illegal profits

2  for Packaged Ice. Defendants have benefited from their unlawful acts, and it would be inequitable

3  for Defendants to be permitted to retain any of their ill-gotten gains.

4        70.    Plaintiff and the Class are entitled to the amount of defendants' ill-gotten gains

5  resulting from defendants' unlawful, unjust and inequitable conduct. Plaintiff and the Class are

6  entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which

7  Plaintiff and the Class may make claims on a *pro rata* basis.

8                                    **JURY DEMAND**

9        Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff

10  respectfully demands a trial by jury.

11                                **PETITION FOR RELIEF**

12        WHEREFORE, Plaintiff requests that:

13        A.    The Court determines that this action may be maintained as a class action under

14  Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be appointed class

15  representative and that Plaintiff's counsel be appointed as counsel for the Class;

16        B.    The unlawful combination and conspiracy alleged herein be adjudged and decreed

17  to be in unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

18        C.    Plaintiff and the Class recover compensatory damages as provided by law,

19  determined to have been sustained by each of them; and that joint and several judgments in favor

20  of Plaintiff and the Class, respectively, be entered against the defendants, and each of them, in an

21  amount to be trebled in accordance with antitrust laws plus the costs of the action, including

22  reasonable attorneys' fees, expert fees, and accountant fees, and pre- and post-judgment interest;

23        D.    Defendants, their affiliates, successors, transferees, assignees, and the officers,

24  directors, partners, agents and employees thereof, and all other persons acting or claiming to act

25  on their behalf, be permanently enjoined from continuing the unlawful contract, combination or

26  conspiracy alleged herein and from:

27              i.    Continuing, maintaining or renewing the contract, combination or

28  conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy

1  having a similar purpose or effect, and from adopting or following any practice, plan, program or

2  device having a similar purpose or effect; and

3              ii.      Communicating or causing to be communicated to any other person engaged

4  in the manufacture, distribution or sale of any product except to the extent necessary in connection

5  with a bona fide sales transaction between the parties to such communications;

6          E.      Plaintiff and the Class be granted such other, further and different relief as the

7  nature of the case may require or as the Court may deem just and proper.

8  DATED:  April 25 2008                    ROBBINS UMEDA & FINK, LLP
                                            BRIAN J. ROBBINS
9                                           JEFFREY P. FINK
                                            GEORGE C. AGUILAR
10                                          ASHLEY R. PALMER

11

12                                          _____
                                                    BRIAN J. ROBBINS
13
                                            610 West Ash Street, Suite 1800
14                                          San Diego, CA 92101
                                            Telephone: (619) 525-3990
15                                          Facsimile: (619) 525-3991

16                                          THE WARNER LAW FIRM
                                            PAUL T. WARNER
17                                          6363 Woodway, Suite 910
                                            Houston, TX 77057
18                                          Telephone: (713) 783-7077
                                            Facsimile: (713) 583-9196

19
                                            Attorneys for Plaintiff
20

21

22

23

24

25

26

27

28  336813_2.DOC

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 150180   — MB
* * C O P Y * *
April 25, 2008**
**10:20:38**

**Civ Fil Non-Pris**
USAO #.: 08CV0753 CIVIL FILING
Judge..: MARILYN L HUFF
Amount.:                    $350.00 CK
Check#.: BC8530

**Total—>   $350.00**

FROM: MARKET STREET INVESTMENTS, LLC
         VS REDDY ICE HOLDINGS, ET AL

ORIGINAL

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Market Street Investments, LLC

**DEFENDANTS**

Reddy Ice Holdings Inc., Reddy Ice Corporation, Arctic Glacier Income Fund, Arctic Glacier Inc., et al.

**(b)** County of Residence of First Listed Plaintiff    San Diego County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Brian J. Robbins, Robbins Umeda & Fink, LLP, 610 West Ash St., Suite 1800, San Diego, CA 92101, (619) 525-3990

Attorneys (If Known)    unknown

'08 CV 753    H WMc

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| **PERSONAL INJURY** | ☐ 362 Personal Injury - Med. Malpractice | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 365 Personal Injury - Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 368 Asbestos Personal Injury Product Liability | | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | **PERSONAL PROPERTY** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 355 Motor Vehicle Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | ☐ 360 Other Personal Injury | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 370 Other Fraud | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 371 Truth in Lending | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 380 Other Personal Property Damage | **CIVIL RIGHTS** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 385 Property Damage Product Liability | ☐ 441 Voting | **IMMIGRATION** | |
| ☐ 245 Tort Product Liability | | ☐ 442 Employment | ☐ 462 Naturalization Application | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | **PRISONER PETITIONS** | ☐ 443 Housing/ Accommodations | ☐ 463 Habeas Corpus - Alien Detainee | |
| | ☐ 510 Motions to Vacate Sentence | ☐ 444 Welfare | ☐ 465 Other Immigration Actions | |
| | **Habeas Corpus:** | ☐ 445 Amer. w/Disabilities - Employment | | |
| | ☐ 530 General | ☐ 446 Amer. w/Disabilities - Other | | |
| | ☐ 535 Death Penalty | ☐ 440 Other Civil Rights | | |
| | ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC s. 1, 15 USC ss. 15 and 26

Brief description of cause:
class action for violation of Sherman Antitrust Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE  Janis L. Sammartino    DOCKET NUMBER  3:08cv00656-JLS-BLM

DATE  04/25/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 50180    AMOUNT $50.00    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

04/25/08

# EXHIBIT 3

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:08-cv-00775-JLS-BLM

Universal Hillcrest LLC v. Reddy Ice Holdings, Inc. et al
Assigned to: Judge Janis L. Sammartino
Referred to: Magistrate Judge Barbara Lynn Major
Cause: 15:1 Antitrust Litigation

Date Filed: 04/29/2008
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

**Plaintiff**

**Universal Hillcrest LLC**
*individually and on behalf of all others*
*similarly situated*

represented by **Jeffrey Paul Fink**
Robbins Umeda and Fink
610 West Ash Street
Suite 1800
San Diego, CA 92101
(619)525-3990
Fax: (619)525-3991
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Reddy Ice Holdings, Inc.**

**Defendant**

**Reddy Ice Corporation**

**Defendant**

**Arctic Glacier Income Fund**

**Defendant**

**Arctic Glacier Inc**

**Defendant**

**Arctic Glacier International Inc**

**Defendant**

**Home City Ice Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/29/2008 | 1 | COMPLAINT with Jury Demand against all defendants ( Filing fee $ 350 receipt number 150276.), filed by Universal Hillcrest LLC.(ecl) (kaj). (Entered: 04/29/2008) |

| 04/29/2008 | 2 | Summons Issued as to Reddy Ice Holdings, Inc., Reddy Ice Corporation, Arctic Glacier Income Fund, Arctic Glacier Inc, Arctic Glacier International Inc, Home City Ice Company. (ecl) (Entered: 04/29/2008) |
| 04/29/2008 | 3 | NOTICE of Party With Financial Interest by Universal Hillcrest LLC (ecl) (Entered: 04/29/2008) |
| 05/07/2008 | 4 | ORDER OF TRANSFER PURSUANT TO LOW NUMBER RULE. Case reassigned to Judge Janis L. Sammartino for all further proceedings. Judge William Q. Hayes no longer assigned to case. Signed by Judge William Q. Hayes on 5/5/08. (mdc) (Entered: 05/07/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/14/2008 15:36:56 | | |
| **PACER Login:** | cg0428 | **Client Code:** Packaged Ice |
| **Description:** | Docket Report | **Search Criteria:** 3:08-cv-00775-JLS-BLM |
| **Billable Pages:** | 1 | **Cost:** 0.08 |



1  ROBBINS UMEDA & FINK, LLP
   BRIAN J. ROBBINS  (190264)
2  JEFFREY P. FINK  (199291)
   GEORGE C. AGUILAR (126535)
3  ASHLEY R. PALMER (246602)
   610 West Ash Street, Suite 1800
4  San Diego, CA 92101
   Telephone: (619) 525-3990
5  Facsimile: (619) 525-3991

6  LANDSKRONER GRIECO MADDEN, LTD.
   JACK LANDSKRONER
7  1360 West 9th Street, Suite 200
   Cleveland, OH 44113
8  Telephone: (216) 522-9000
   Facsimile: (216) 522-9007

9
   Attorneys for Plaintiff
10

11

12                UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14                                      '08 CV 775   WQH BLM

   UNIVERSAL HILLCREST, LLC, individually )  Case No.
15 and on behalf of all others similarly situated, )
                                              )  CLASS ACTION COMPLAINT
16                  Plaintiff,                 )
                                              )
17        vs.                                  )
                                              )
18 REDDY ICE HOLDINGS, INC., REDDY ICE        )
   CORPORATION, ARCTIC GLACIER               )
19 INCOME FUND, ARCTIC GLACIER INC.,          )
   ARCTIC GLACIER INTERNATIONAL INC.          )
20 and HOME CITY ICE COMPANY,                 )
                                              )
21                  Defendants.                )
                                              )  DEMAND FOR JURY TRIAL
22

23

24

25

26

27

28

1    Plaintiff Universal Hillcrest, LLC ("Universal"), on behalf of itself and all others similarly

2  situated, brings this action under the federal antitrust laws, Sections 4 and 16 of the Clayton Act, 15

3  U.S.C. §§15 and 26, to obtain injunctive relief and recover treble damages and the costs of suit,

4  including reasonable attorney and expert fees, for the injuries to Plaintiff and members of the

5  proposed Class it represents resulting from defendants' violations of the federal antitrust laws,

6  specifically Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1. The allegations set forth below

7  are based upon information and belief pursuant to the investigation of counsel, except for

8  information based on personal knowledge.

9                                         **NATURE OF CLAIM**

10    1.    This antitrust class action arises out of an international conspiracy among defendants

11  and their co-conspirators with the purpose and effect of fixing prices, allocating markets and

12  geographic territories and committing other anticompetitive practices designed to unlawfully restrain

13  trade in the market(s) for packaged cubed, crushed, block and dry ice ("Packaged Ice") in the United

14  States and Canada. Packaged Ice is sold by defendants to supermarkets, mass merchants, convenience

15  stores, wholesale distributors and users of Packaged Ice.

16    2.    Pursuant to Rules 23(a), 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff

17  seeks treble damages, injunctive relief, attorneys' fees and costs under the antitrust laws of the United States

18  on behalf of themselves and all others similarly situated.

19                                    **JURISDICTION AND VENUE**

20    3.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§15

21  and 26, and pursuant to 28 U.S.C. §§1331, 1337(a). This Court has supplemental jurisdiction over

22  the state law claims pursuant to 28 U.S.C. §1367(a), and diversity jurisdiction over Plaintiff's state

23  law claim under 28 U.S.C. §1332.

24    4.    This Court has personal jurisdiction over each of the defendants because each of the

25  defendants: (a) committed acts in furtherance of the conspiracy alleged herein in this District;

26  (b) transacted business in Packaged Ice and other products in this District; (c) maintain and have

27  maintained continuous and systemic contacts with this District over a period of years; or

28  (d) purposefully availed itself of the benefits of doing business in this District. Accordingly, each

- 1 -

1   defendant maintains minimum contacts with this District more than sufficient to subject it to service

2   of process and sufficient to comply with due process of law.

3       5.      Venue is proper in this judicial district pursuant to 15 U.S.C. §22 and 28 U.S.C.

4   §1391(b) and (c) because some of the defendants reside, or are licensed to do business or are doing

5   business, or are found or transact business, in this District and/or the claims arose in this District.

6                              **PARTIES**

7       6.      Plaintiff Universal owns and operates a restaurant and nightclub in San Diego,

8   California. Univeral purchased Packaged Ice directly from one or more of the defendants during the

9   Class Period, and was damaged as a result of defendants' unlawful conduct.

10      7.      Defendant Reddy Ice Holdings, Inc. ("Reddy Ice Holdings") is a Delaware corporation

11  with its principal place of business located in Dallas, Texas. Reddy Ice Holdings describes itself as

12  the largest manufacturer and distributor of packaged ice in the United States. It sells its products

13  primarily under the "Reddy Ice" brand to approximately 82,000 locations in 31 states and the District of

14  Columbia. Reddy Ice Holdings serves most significant consumer packaged goods channels of

15  distribution, as well as restaurants, special entertainment events, commercial users and the

16  agricultural sector.

17      8.      Indeed, Reddy Ice Holdings is the largest ice company in North America, recording

18  2007 sales of $339 million. It has the dominant market position in the U.S. sunbelt states, from

19  Florida to Arizona. Reddy Ice Holdings manufactures and distributes ice products, including cubed

20  ice, crushed ice, half-moon and cylindrical ice, block ice, and dry ice. Reddy Ice Holdings sells

21  approximately 1.9 million tons of ice per year, primarily packaged in seven and ten pound bags,

22  principally to convenience stores and supermarkets. During the Class Period, as defined below,

23  Reddy Ice Holdings began trading on the New York Stock Exchange. Prior to August 12, 2005, it had

24  been privately held under the name Packaged Ice, Inc. During the Class Period, Reddy Ice Holdings

25  directly and/or through the control of its subsidiaries and affiliates manufactured, marketed, sold

26  and/or distributed Packaged Ice in this District and/or in other districts throughout the United States.

27      9.      Defendant Reddy Ice Corporation is a Delaware Corporation with its principal of

28  business in Dallas, Texas. Reddy Ice Corporation is a wholly-owned subsidiary of defendant Reddy

                                    - 2 -

1 | Ice Holdings. During the Class Period, Reddy Ice Corporation directly and/or through the control of

2 | its subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

3 | District and/or other districts throughout the United States.

4 |       10.    Collectively, Reddy Ice Holdings, Inc. and Reddy Ice Corporation are referred to as

5 | "Reddy Ice." Each of the Reddy Ice defendants joined the conspiracy alleged herein and is legally

6 | responsible for its conduct because its directors, members, officers, employees and/or agents, acting

7 | within the scope of their authority, reached unlawful agreement(s) with their competitors to

8 | unlawfully restrain competition. Alternatively, each of the Reddy Ice defendants is legally

9 | responsible because it acted through, facilitated, dominated or controlled the actions of another

10 | Reddy Ice defendant in furtherance of the conspiracy alleged herein.

11 |       11.    Defendant Arctic Glacier Income Fund is a Canadian holding company with its

12 | principal place of business in Winnipeg, Manitoba, Canada. Arctic Glacier Income Fund describes

13 | itself as a leading producer, marketer and distributor of high-quality packaged ice in North America

14 | under the brand name of "Arctic Glacier Premium Ice." Arctic Glacier operates 37 manufacturing

15 | plants and 50 distribution facilities across Canada and the northeast, central and western United States

16 | servicing more than 70,000 retail accounts.

17 |       12.    Arctic Glacier Income Fund is the second-largest producer, marketer, and distributor of

18 | packaged ice in North America, with total revenues of $249 million for 2007. Of these revenues,

19 | more than 80 percent comes from its U.S. operations, in which it has dominant market positions in

20 | major eastern seaboard cities such as New York and Philadelphia, New England, California, and the

21 | Midwest. The company also controls most of the Packaged Ice sales in Canada. During the Class

22 | Period, Arctic Glacier Income Fund directly and/or through the control of its subsidiaries and

23 | affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or in

24 | other districts throughout the United States.

25 |       13.    Defendant Arctic Glacier, Inc. is a Canadian corporation with its principal place of

26 | business in Winnipeg, Manitoba, Canada. Arctic Glacier, Inc. is a wholly-owned subsidiary of

27 | defendant Arctic Glacier Income Fund. During the Class Period, Arctic Glacier, Inc. directly and/or

28 | through the control of its subsidiaries and affiliates manufactured, marketed, sold and/or distributed

- 3 -

1   Packaged Ice in this District and/or other districts throughout the United States.

2       14.    Defendant Arctic Glacier International Inc. is a Delaware corporation with its

3   principal place of business in West St. Paul, Minnesota.  Arctic Glacier International Inc. is a

4   wholly-owned subsidiary of defendant Arctic Glacier Income Fund. During the Class Period, Arctic

5   Glacier International Inc. directly and/or through the control of its subsidiaries and affiliates

6   manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or other districts

7   throughout the United States.

8       15.    Collectively, Arctic Glacier Income Fund, Arctic Glacier, Inc. and Arctic Glacier

9   International Inc. are referred to as "Arctic Glacier." Each of the Arctic Glacier defendants joined

10  the conspiracy alleged herein and is legally responsible for its conduct because its directors,

11  members, officers, employees and/or agents, acting within the scope of their authority, reached

12  unlawful agreement(s) with their competitors to unlawfully restrain competition. Alternatively, each

13  of the Arctic Glacier defendants is legally responsible because it acted through, facilitated,

14  dominated or controlled the actions of another Arctic Glacier defendant in furtherance of the

15  conspiracy alleged herein.

16      16.    Defendant Home City Ice Company ("Home City Ice") is a privately-held Ohio

17  Corporation with its principal place of business in Cincinnati, Ohio.  Home City Ice sells and/or

18  distributes Packaged Ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as

19  parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland. Home City Ice manufactures

20  4,400 tons of ice per day in 28 manufacturing plants, with 36 distribution centers to serve the

21  Midwest.  During the Class Period, Home City Ice directly and/or through the control of its

22  subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

23  District and/or other districts throughout the United States.

24                      **CO-CONSPRATORS AND AGENTS**

25      17.    Other natural persons, corporations, and entities not named as defendants herein, have

26  participated in the unlawful conspiratorial activity alleged herein in violation of the antitrust laws of

27  the United States.

28

- 4 -

18.    Whenever in this Complaint reference is made to an act, statement, or transaction of any corporation or entity, the allegation means that the corporation or entity acted, stated, or transacted by or through its directors, members, partners, officers, employees, or agents, while they were engaged in the management, direction, control, or conduct of the corporation's or entity's business and acting within the scope of their authority.

## CLASS ALLEGATIONS

19.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on its own behalf and on behalf of all others similarly situated.  The proposed class includes all persons, corporations, and other legal entities in the United States (excluding defendants, their subsidiaries, and any co-conspirators), who purchased Packaged Ice directly from one or more of the defendants (the "Class") in the United States or Canada at any time from at least January 1, 2002 through the present (the "Class Period").

20.    The members of the Class are so numerous and geographically dispersed across the country that joinder of all Class members would be impracticable.  Due to the nature of the claims asserted here, Plaintiff believes that members of the Class are located throughout the United States and Canada.  The exact number of Class members is unknown by Plaintiff at this time, but Plaintiff believes that the Class numbers in the thousands and their identities can only be discovered through inspection of defendants' and their co-conspirators' records, which are or should be readily available.

21.    Plaintiff's claims are typical of the members of the Class because Plaintiff and all members of the Class were damaged by the same wrongful conduct of the Defendants alleged herein. Plaintiff and the Class purchased Packaged Ice at artificially maintained, non-competitive prices established by the actions of defendants and their unnamed co-conspirators in connection with the wrongful conduct alleged herein.

22.    Plaintiff will fairly and adequately protect the interests of the Class.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

- 5 -

23.   Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members, if any, in that defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

a.   Whether defendants conspired with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practice designed to unlawfully restrain the trade of Packaged Ice;

b.   Whether defendants' conduct violated Section 1 of the Sherman Act;

c.   The existence, duration, and illegality of the contract, combination or conspiracy alleged herein;

d.   The identity of the co-conspirators;

e.   The effect upon and the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages;

f.   Whether defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein; and

g.   Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

24.   Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants. Class treatment will also permit the adjudication of relatively small claims by certain class members, who could not afford to individually litigate an antitrust claim against large corporate defendants.

25.   This action presents no difficulties of management that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

26.    The defendants are leading manufacturers of Packaged Ice in the United States and Canada. The Packaged Ice industry is over a billion dollar a year industry, operating throughout the United States and Canada. During the Class Period, defendants manufactured, marketed, distributed, and/or sold Packaged Ice to customers throughout the United States and Canada, utilizing the means and instrumentalities of interstate trade and commerce.

27.    Defendants' and their co-conspirators' unlawful activity had a direct, substantial, and reasonably foreseeable effect upon interstate trade and commerce. The unlawful restraints of trade alleged herein have directly and substantially affected interstate commerce in that the defendants have deprived Plaintiff and the Class of the benefits of free and open competition in the Packaged Ice market throughout the United States and Canada.

## ANTICOMPETITIVE CONDUCT

28.    Defendants are the largest manufacturers of Packaged Ice in the United States and North America.

29.    Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiff, and continuing thereafter to present day, defendants and their coconspirators engaged in an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of Packaged Ice in a *per se* violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

## THE PACKAGED ICE INDUSTRY

30.    Packaged Ice is sold throughout the United States principally to convenience stores, supermarkets and other retail outlets, primarily in 7 and 10 pound bags, as well as in block form.

31.    Sales of Packaged Ice are approximately $1.8 billion annually. About half of those sales are produced by third-party manufacturers, with the other half produced in-house (ice machines). Sales by defendants comprise approximately 70% of third-party manufacturers' sales of Packaged Ice.

32.    Canada is a major exporter of ice into the United States.

- 7 -

33.    The Packaged Ice industry has high barriers to entry. Many Packaged Ice customers carry only one brand of ice and have long term relationships of many years with their suppliers. A new entrant into the Packaged Ice market would have to incur multimillion dollar costs, including manufacturing plants and equipment, energy, transportation, fuel costs, and distribution infrastructure. Because of these high costs, new or small distributors are not able to meet the peak needs of large multistate customers and cannot compete successfully for such customers. The industry has high start-up and replacement costs, and many customers carry only one brand of ice and have long term relationships of ten or more years with the manufacturer from whom they purchase Packaged Ice products.

34.    There are no economic substitutes for Packaged Ice.

35.    Packaged Ice is a commodity product, which in a competitive market would be sold primarily on the basis of price. Defendants' anticompetitive conduct has enabled them to fix, raise, maintain and stabilize the price of Packaged Ice in the geographic areas allocated to them at artificially high levels.

36.    The Packaged Ice Industry has undergone substantial consolidation within the last few years.

a.    Defendant Reddy Ice has continuously purchased small ice companies in various locations. During 2006, Reddy Ice purchased ten ice companies, and during 2007, it purchased an additional twenty ice companies.

b.    Arctic Glacier has purchased numerous smaller ice companies. In 2006, Arctic Glacier acquired Happy Ice LLC, the largest ice company in upstate New York. Also in 2006, it acquired six companies collectively known as California Ice, which enabled Arctic Glacier to become the largest Packaged Ice producer in California. In 2007, Arctic Glacier purchased an additional company called Union Ice in Southern California.

37.    Through acquisitions, defendants have increased their market power and reduced the ability of any other Packaged Ice companies to compete for customers serviced by defendants.

38.    During the Class Period, Defendants engaged in illegal, anticompetitive conduct by, *inter alia*, allocating markets so that Defendants were no longer in competition with each other.

- 8 -

1        39.     This resulted in the following market division: (a) Reddy Ice dominates the market in

2    the U.S. sunbelt states, from Florida to Arizona, and the Northwest (AZ, NM, TX, OK, AR, LA, MI,

3    AL, GA, FL, SC, NC, VA, CO, DE, DC, HI, ID, KA, KY, MD, MS, NV, NJ, OR, PA, TN, UT, WA,

4    WV and WY); (b) Arctic Ice dominates the market in the Central and Northeastern states and

5    California (CA, ND, SD, CA, NE, KS, MO, IA, MN, WI, MI, PA, DE, NJ, NY, CT, VT, NH and

6    ME); and (c) Home City Ice dominates the market in the Midwest (IL, OH and IN). There is virtually

7    no overlap between the geographic markets in which each Defendant operates.

8        40.     Defendants agreed not to compete head to head in any of the markets that one of them

9    dominates. Each region of the U.S. market, as alleged herein, is controlled by one particular

10    Packaged Ice manufacturer. The market share of non-defendant companies that manufacture and

11    distribute Packaged Ice is extremely limited.

12        41.     By engaging in conduct that allocated the market among the defendants, price

13    competition was reduced or eliminated throughout the United States and Canada.

14        42.     The Packaged Ice industry is highly seasonal, characterized by peak demand during the

15    warmer months of May through September. Approximately 69 percent of annual revenues occur

16    during this time.

17        43.     Demand for Packaged Ice within specific geographic areas is affected by weather

18    conditions. There is an extended peak selling season in the southern United States, where

19    temperatures remain warm beyond September. Revenues typically increase during particularly hot

20    summers. Cool and/or rainy seasons, however, negatively impact ice purchases.

21        44.     The Antitrust Division of the United States Department of Justice ("DOJ"), is

22    investigating possible anticompetitive practices in the Packaged Ice business.

23        45.     The DOJ investigation follows a complaint to Canada's Competition Bureau

24    ("Bureau") by Polar Ice, a smaller Packaged Ice manufacturer in western Canada, who alleged that

25    Arctic Glacier engaged in strong-arm tactics in the Edmonton geographic area, including "muscling,"

26    bribing, and offering kickbacks to the smaller company's customers.

27        46.     The court in Canada found that Arctic Glacier had engaged in conduct violative of

28    Canada's competition law to prevent the smaller ice company in from competing with Arctic Glacier

1   to deliver ice to a particular customer. Among other things, the court found that Arctic Glacier had

2   used intimidation, bribery, and other unlawful means and methods to force the customer to stop

3   seeking competitive prices from the small ice company, with the intention of driving that small

4   competitor out of business. The Canadian court awarded Polar Ice $50,000 in damages.

5       47.    Arctic Glacier defendants have acknowledged that it received a subpoena in

6   connection with the DOJ investigation on or about March 5, 2008.

7       48.    Just prior to this news, defendant Arctic Glacier Income Fund had reported a fourth-

8   quarter loss of $3.7 million on revenue of $36.3 million. In the same quarter of the previous year, the

9   fund lost $6.2 million, or 19 cents a unit, on revenue of $39.9 million. They reported that the stronger

10  Canadian dollar reduced reported sales by $4.5 million during the quarter.

11      49.    Also on or about March 6, 2008, Reddy Ice announced that federal officials executed

12  a search warrant at the Company's corporate office in Dallas on March 5, 2008.

13      50.    Reddy Ice announced that the DOJ took "various documents and information," but

14  would not say whether computers were taken. A DOJ spokesperson stated that the agency was

15  "investigating the possibility of anti-competitive practices in the packaged-ice industry."

16      51.    Between December 1, 2007 and January 3, 2008, both the Chief Operating Officer

17  and Chief Executive Officer of Reddy Ice resigned, just prior to the time the DOJ executed its search

18  warrants.

19      52.    Defendants are members of several trade associations relating to the Packaged Ice

20  industry, and their executives have served on the boards of directors and various standing

21  committees of these organizations. These trade associations hold regular meetings of their boards,

22  committees, and members, which defendants' representatives have attended, and which provide the

23  opportunity for defendants to meet and communicate with each other concerning the markets,

24  customers and prices of Packaged Ice.

25      53.    For example, defendants are members of the International Packaged Ice Association

26  ("IPIA"), which is headquartered in Tampa, Florida. Ben Key, Reddy Ice's Executive Vice President

27  – Sales and marketing, recently served as the Chairman of the IPIA Executive Committee. Nancy

28  Thorn, Director of marketing at Reddy Ice, and Keith McMahon, President and Chief Executive

1  Officer at Arctic Inc., are members of the IPIA Board of Directors. In addition, Ms. Thorn,

2  Mr. McMahon, and Tommy Sedler, Operations Manager and Treasurer of Home City, are members

3  of the IPIA Marketing Committee.

4      54.    IPIA holds meetings of its Board of Directors and Committees, as well as an annual

5  meeting of its members. Representatives of defendants attended such meetings. IPIA's 2006 annual

6  meeting was held on November 23-December 3, 2006, in Tucson, Arizona, and its 2004 annual

7  meeting was held on November 12-17, 2004, in La Quinta, California.

8      55.    There are regional trade associations that are affiliated with IPIA, and of which

9  defendants are members. Defendants' representatives have been members of the board of directors

10 or various committees of these regional trade associations. In addition, like the IPIA, these regional

11 trade associations hold regular meetings of their boards, committees and members, which have been

12 attended by defendants' representatives, and which have afforded defendants opportunities to meet

13 and communicate concerning the market, customers and prices of Packaged Ice.

14     56.    For example, Arctic Glacier and Home City are members and their representatives are

15 officers of the Northeastern Ice Association ("NIA"). Keith McMahon of Arctic Glacier, and

16 Tommy Sedler and Ted Sedler of Home City are members of NIA. Ted Sedler also currently serves

17 as First vice President and Treasurer of NIA. NIA typically holds meetings of its officers and Board

18 of Directors in the spring and holds its member conventions in the fall. Its Board of Directors

19 meetings have been held in the following locales: Washington, DC (2001); Williamsburg, VA

20 (2002); Bahamas (2003); New York, NY (2004); Ledyard, CT (2006); and Lake George, NY (2007).

21 Its annual conventions have been held in the following locales: Providence, RI (2001); Ledyard, CT

22 (2002); New Orleans, LA (2003); Atlantic City, NJ (2004); Montreal, Canada (2005); Boston, MA

23 (2006); and Lake George, NY (2007). Representatives of Arctic Glacier and Home City have

24 attended these meetings and conventions.

25     57.    In addition, Arctic Glacier and Reddy Ice are members of the Western Ice

26 Association ("WIA"), which is also affiliated with the IPIA. The WIA's members include William

27 Brick, formerly Chairman and CEO of Reddy Ice and currently its Executive Chairman, and Jim

28 Weaver, currently President, CEO and a member of the Board of Directors of Reddy Ice, as well as

- 11 -

1   several representatives of Arctic Glacier.  WIA also holds periodic meetings of its Board of

2   Directors and committees, as well as annual meetings of its members.  Representatives of Arctic

3   Glacier and Reddy Ice have attended these meetings.

4                          ALLEGATIONS OF ANTITRUST INJURY

5          58.    The unlawful contact, combination or conspiracy alleged above had and has the

6   following effects, among others:

7                  a.      Prices charged by defendants and their co-conspirators to plaintiff and Class

8   members for Packaged Ice were maintained at artificially high and noncompetitive levels;

9                  b.      Plaintiff and Class members were required to pay more for Packaged Ice

10  than they would have paid in a competitive marketplace unfettered by defendants' and their c-

11  conspirators' collusive and unlawful conduct; and

12                 c.      Plaintiff and Class members have been deprived of the benefits of free, open

13  and unrestricted competition in the market for Packaged Ice.

14         59.    During the Class Period covered, defendants charged Plaintiff and the Class

15  anticompetitive prices for Packaged Ice.  By reason of the alleged violations of the antitrust laws,

16  Plaintiff and the Class have sustained injury to their business or property, having paid higher prices for

17  Packaged Ice than they would have paid absent the illegal contract, combination or conspiracy, and,

18  as a result, have been injured in their business and have suffered damages in an amount presently

19  undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and

20  prevent.

21         60.    The specific amounts of damages have not yet been determined because such

22  determination will require discovery.  When these amounts have been determined, Plaintiff will seek

23  leave of Court to amend this Complaint to include such amounts.

24                  EQUITABLE TOLLING FOR FRAUDULENT CONCEALMENT

25         61.    Throughout the conspiracy alleged herein, defendants affirmatively and actively

26  concealed their unlawful activity from Plaintiff and the Class.  While Plaintiff has diligently sought

27  to protect itself from unlawful activity, Plaintiff was unable to detect this conspiracy, which by its

28

1    nature is self-concealing. Furthermore, defendants acted fraudulently and deceptively to conceal the

2    unlawful collusion by conduct including:

3              a.    Falsely representing to Plaintiff and/or other purchasers that prices and

4    markets for Packaged Ice were fair and competitive, or that price increases were caused by costs of

5    raw materials or other market forces or other false and pretextual justifications, when in fact the

6    pricing was set through the conspiracy alleged herein;

7              b.    Conducting discussions through covert telephone calls and meetings;

8              c.    Confining participation in the unlawful activity to a limited number of

9    persons so as to reduce the risk of detection;

10             d.    Avoiding either references in documents, or the creation of documents, that

11   would implicate defendants for their participation in unlawful collusion;

12             e.    Using coded words in documents and conversations to conceal the collusion

13   in the sale and distribution of Packaged Ice; and/or

14             f.    Destroying or hiding documents that would constitute evidence of

15   participation in the conspiracy alleged herein;

16        62.   Plaintiff has exercised due diligence in seeking to protect itself from the types of

17   unlawful acts that in fact occurred. Despite this diligence, Plaintiff did not learn of the conspiracy,

18   and could not have learned of the conspiracy, until the existence of ongoing criminal investigations

19   was publicly disclosed in early 2008.

20                            **COUNT I**

21            **VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT**

22        63.   Plaintiff incorporates by reference the allegations above as though fully set forth

23   herein.

24        64.   Beginning at least as early as January 1, 2002 and continuing to the present, the exact

25   dates being unknown to Plaintiff, defendants and un-named conspirators entered into and engaged in

26   a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the

27   Section 1 of the Sherman Act.

28

65.     The formulating and furthering their conspiracy, defendants and their co-conspirators engaged in unlawful anti-competitive activities, including:

a.      Participating in meetings and conversations to discuss the prices of Packaged Ice, levels of output of Packaged Ice, and customers and markets for Packaged Ice;

b.      Agreeing during those meetings and conversations to fix the prices of Packaged Ice sold to Plaintiff and other purchasers;

c.      Agreeing during those meetings and conversations not to compete in the sale of Packaged Ice to Plaintiff and other purchasers and/or to allocate market share and sales volume;

d.      Issuing price announcements and price quotations and charging prices consistent with the unlawful agreements reached;

e.      Agreeing to set output and/or capacity of Packaged Ice produced;

f.      Fixing output of Packaged Ice consistent with the agreements reached;

g.      Monitoring the actions of other conspirators to verify that they charged prices and otherwise refrained from competition as agreed between the conspirators; and

h.      Fraudulently concealing the existence and activities of the Conspiracy.

66.     As a proximate result of defendants' unlawful conduct, Plaintiff and the Class have sustained damage by paying supra-competitive prices that they would not have had to incur but for the unlawful conduct of defendants as alleged herein.

67.     The conduct of defendants and their co-conspirators constitutes a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. §1 and is at a minimum an unreasonable and unlawful restraint of trade.

## COUNT II

### FOR RESTITUTION, DISGORGEMENT AND IMPOSITION OF A CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT BY DEFENDANTS

68.     Plaintiff incorporates by reference the preceding and subsequent paragraphs as though fully set forth herein.

69.     As a result of their unlawful conduct described above, defendants have been and will continue to be unjustly enriched. Defendants have been unjustly enriched, to the detriment of

- 14 -

1    Plaintiff and the Class by the receipt of, at a minimum, unlawfully inflated prices and illegal profits

2    for Packaged Ice. Defendants have benefited from their unlawful acts, and it would be inequitable

3    for Defendants to be permitted to retain any of their ill-gotten gains.

4         70.    Plaintiff and the Class are entitled to the amount of defendants' ill-gotten gains

5    resulting from defendants' unlawful, unjust and inequitable conduct. Plaintiff and the Class are

6    entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which

7    Plaintiff and the Class may make claims on a *pro rata* basis.

## JURY DEMAND

9         Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff

10   respectfully demands a trial by jury.

## PETITION FOR RELIEF

12        WHEREFORE, Plaintiff requests that:

13        A.    The Court determines that this action may be maintained as a class action under

14   Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be appointed class

15   representative and that Plaintiff's counsel be appointed as counsel for the Class;

16        B.    The unlawful combination and conspiracy alleged herein be adjudged and decreed

17   to be in unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

18        C.    Plaintiff and the Class recover compensatory damages as provided by law,

19   determined to have been sustained by each of them; and that joint and several judgments in favor

20   of Plaintiff and the Class, respectively, be entered against the defendants, and each of them, in an

21   amount to be trebled in accordance with antitrust laws plus the costs of the action, including

22   reasonable attorneys' fees, expert fees, and accountant fees, and pre- and post-judgment interest;

23        D.    Defendants, their affiliates, successors, transferees, assignees, and the officers,

24   directors, partners, agents and employees thereof, and all other persons acting or claiming to act

25   on their behalf, be permanently enjoined from continuing the unlawful contract, combination or

26   conspiracy alleged herein and from:

27             i.    Continuing, maintaining or renewing the contract, combination or

28   conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy

1   having a similar purpose or effect, and from adopting or following any practice, plan, program or

2   device having a similar purpose or effect; and

3            ii.     Communicating or causing to be communicated to any other person engaged

4   in the manufacture, distribution or sale of any product except to the extent necessary in connection

5   with a bona fide sales transaction between the parties to such communications;

6      E.     Plaintiff and the Class be granted such other, further and different relief as the

7   nature of the case may require or as the Court may deem just and proper.

8   DATED: April 29, 2008

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
GEORGE C. AGUILAR
ASHLEY R. PALMER

_____
JEFFREY P. FINK

610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

LANDSKRONER GRIECO MADDEN, LTD.
JACK LANDSKRONER
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: (216) 522-9000
Facsimile: (216) 522-9007

Attorneys for Plaintiff

336813_2.DOC

# EXHIBIT 4

## U.S. District Court
### Southern District of California (San Diego)
### CIVIL DOCKET FOR CASE #: 3:08-cv-00776-LAB-BLM

Gaslamp Country Club LLC v. Reddy Ice Holdings, Inc. et al

Assigned to: Judge Larry Alan Burns
Referred to: Magistrate Judge Barbara Lynn Major
Cause: 15:1 Antitrust Litigation

Date Filed: 04/29/2008
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

### Plaintiff

**Gaslamp Country Club LLC**
*individually and on behalf of all others
similarly situated*

represented by **Jeffrey Paul Fink**
Robbins Umeda and Fink
610 West Ash Street
Suite 1800
San Diego, CA 92101
(619)525-3990
Fax: (619)525-3991
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

V.

### Defendant

**Reddy Ice Holdings, Inc.**

### Defendant

**Reddy Ice Corporation**

### Defendant

**Arctic Glacier Income Fund**

### Defendant

**Arctic Glacier Inc**

### Defendant

**Arctic Glacier International Inc**

### Defendant

**Home City Ice Company**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 04/29/2008 | 1 | COMPLAINT with Jury Demand against all defendants ( Filing fee $ 350 receipt number 150279.), filed by Gaslamp Country Club LLC.(ecl) (kaj). (Entered: |

| | | 04/29/2008) |
|---|---|---|
| 04/29/2008 | <u>2</u> | Summons Issued as to Reddy Ice Holdings, Inc., Reddy Ice Corporation, Arctic Glacier Income Fund, Arctic Glacier Inc, Arctic Glacier International Inc, Home City Ice Company. (ecl) (Entered: 04/29/2008) |
| 04/29/2008 | <u>3</u> | NOTICE of Party With Financial Interest by Gaslamp Country Club LLC (ecl) (Entered: 04/29/2008) |
| 05/02/2008 | 4 | Minute Order Judge Napoleon A. Jones, Jr recuses from this case and requests another district judge be assigned. Judge Larry Alan Burns randomly assigned. New case number 08cv776 LAB (BLM). (jcj) (Entered: 05/02/2008) |

<table>
<tr><th colspan="4">PACER Service Center</th></tr>
<tr><th colspan="4">Transaction Receipt</th></tr>
<tr><td colspan="4">05/14/2008 15:37:25</td></tr>
<tr><td>PACER Login:</td><td>cg0428</td><td>Client Code:</td><td>Packaged Ice</td></tr>
<tr><td>Description:</td><td>Docket Report</td><td>Search Criteria:</td><td>3:08-cv-00776-LAB-BLM</td></tr>
<tr><td>Billable Pages:</td><td>1</td><td>Cost:</td><td>0.08</td></tr>
</table>

COPY

FILED

08 APR 29 PM 12: 00

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

1  ROBBINS UMEDA & FINK, LLP
   BRIAN J. ROBBINS  (190264)
2  JEFFREY P. FINK  (199291)
   GEORGE C. AGUILAR (126535)
3  ASHLEY R. PALMER (246602)
   610 West Ash Street, Suite 1800
4  San Diego, CA 92101
   Telephone: (619) 525-3990
5  Facsimile: (619) 525-3991

6  LEMMON LAW FIRM, LLC
   ANDREW A. LEMMON
7  15058 River Road
   P.O. Box 904
8  Hahnville, LA 70057
   Telephone: (985) 783-6789
9  Facsimile: (985) 783-1333

10 Attorneys for Plaintiff

11

12                    UNITED STATES DISTRICT COURT

13                  SOUTHERN DISTRICT OF CALIFORNIA

14                                            '08 CV 776    J  BLM

15 GASLAMP COUNTRY CLUB, LLC,        )  Case No.
   individually and on behalf of all others )
16 similarly situated,                )  CLASS ACTION COMPLAINT
                                      )
17                    Plaintiff,      )
                                      )
18         vs.                        )
                                      )
19 REDDY ICE HOLDINGS, INC., REDDY ICE )
   CORPORATION, ARCTIC GLACIER        )
20 INCOME FUND, ARCTIC GLACIER INC.,  )
   ARCTIC GLACIER INTERNATIONAL INC.  )
21 and HOME CITY ICE COMPANY,         )
                                      )
22                    Defendants.     )  DEMAND FOR JURY TRIAL
   _____)

23

24

25

26

27

28

1     Plaintiff Gaslamp Country Club, LLC ("Gaslamp"), on behalf of itself and all others similarly

2  situated, brings this action under the federal antitrust laws, Sections 4 and 16 of the Clayton Act, 15

3  U.S.C. §§15 and 26, to obtain injunctive relief and  recover treble damages and the costs of suit,

4  including reasonable attorney and expert fees, for the injuries to Plaintiff and members of the

5  proposed Class it represents resulting from defendants' violations of the federal antitrust laws,

6  specifically Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1.  The allegations set forth below

7  are based upon information and belief pursuant to the investigation of counsel, except for

8  information based on personal knowledge.

9                              **NATURE OF CLAIM**

10    1.    This antitrust class action arises out of an international conspiracy among defendants

11  and their co-conspirators with the purpose and effect of fixing prices, allocating markets and

12  geographic territories and committing other anticompetitive practices designed to unlawfully restrain

13  trade in the market(s) for packaged cubed, crushed, block and dry ice ("Packaged Ice") in the United

14  States and Canada.  Packaged Ice is sold by defendants to supermarkets, mass merchants, convenience

15  stores, wholesale distributors and users of Packaged Ice.

16    2.    Pursuant to Rules 23(a), 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff

17  seeks treble damages, injunctive relief, attorneys' fees and costs under the antitrust laws of the United States

18  on behalf of themselves and all others similarly situated.

19                         **JURISDICTION AND VENUE**

20    3.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§15

21  and 26, and pursuant to 28 U.S.C. §§1331, 1337(a).  This Court has supplemental jurisdiction over

22  the state law claims pursuant to 28 U.S.C. §1367(a), and diversity jurisdiction over Plaintiff's state

23  law claim under 28 U.S.C. §1332.

24    4.    This Court has personal jurisdiction over each of the defendants because each of the

25  defendants: (a) committed acts in furtherance of the conspiracy alleged herein in this District;

26  (b) transacted business in Packaged Ice and other products in this District; (c) maintain and have

27  maintained continuous and systemic contacts with this District over a period of years; or

28  (d) purposefully availed itself of the benefits of doing business in this District.  Accordingly, each

- 1 -

1  defendant maintains minimum contacts with this District more than sufficient to subject it to service

2  of process and sufficient to comply with due process of law.

3        5.      Venue is proper in this judicial district pursuant to 15 U.S.C. §22 and 28 U.S.C.

4  §1391(b) and (c) because some of the defendants reside, or are licensed to do business or are doing

5  business, or are found or transact business, in this District and/or the claims arose in this District.

6                                    **PARTIES**

7        6.      Plaintiff Gaslamp owns and operates a banquet hall in San Diego, California.

8  Gaslamp purchased Packaged Ice directly from one or more of the defendants during the Class Period,

9  and was damaged as a result of defendants' unlawful conduct.

10        7.      Defendant Reddy Ice Holdings, Inc. ("Reddy Ice Holdings") is a Delaware corporation

11  with its principal place of business located in Dallas, Texas. Reddy Ice Holdings describes itself as

12  the largest manufacturer and distributor of packaged ice in the United States. It sells its products

13  primarily under the "Reddy Ice" brand to approximately 82,000 locations in 31 states and the District of

14  Columbia. Reddy Ice Holdings serves most significant consumer packaged goods channels of

15  distribution, as well as restaurants, special entertainment events, commercial users and the

16  agricultural sector.

17        8.      Indeed, Reddy Ice Holdings is the largest ice company in North America, recording

18  2007 sales of $339 million. It has the dominant market position in the U.S. sunbelt states, from

19  Florida to Arizona. Reddy Ice Holdings manufactures and distributes ice products, including cubed

20  ice, crushed ice, half-moon and cylindrical ice, block ice, and dry ice. Reddy Ice Holdings sells

21  approximately 1.9 million tons of ice per year, primarily packaged in seven and ten pound bags,

22  principally to convenience stores and supermarkets. During the Class Period, as defined below,

23  Reddy Ice Holdings began trading on the New York Stock Exchange. Prior to August 12, 2005, it had

24  been privately held under the name Packaged Ice, Inc. During the Class Period, Reddy Ice Holdings

25  directly and/or through the control of its subsidiaries and affiliates manufactured, marketed, sold

26  and/or distributed Packaged Ice in this District and/or in other districts throughout the United States.

27        9.      Defendant Reddy Ice Corporation is a Delaware Corporation with its principal of

28  business in Dallas, Texas. Reddy Ice Corporation is a wholly-owned subsidiary of defendant Reddy

                                        - 2 -

1  Ice Holdings. During the Class Period, Reddy Ice Corporation directly and/or through the control of

2  its subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

3  District and/or other districts throughout the United States.

4          10.     Collectively, Reddy Ice Holdings, Inc. and Reddy Ice Corporation are referred to as

5  "Reddy Ice." Each of the Reddy Ice defendants joined the conspiracy alleged herein and is legally

6  responsible for its conduct because its directors, members, officers, employees and/or agents, acting

7  within the scope of their authority, reached unlawful agreement(s) with their competitors to

8  unlawfully restrain competition.  Alternatively, each of the Reddy Ice defendants is legally

9  responsible because it acted through, facilitated, dominated or controlled the actions of another

10  Reddy Ice defendant in furtherance of the conspiracy alleged herein.

11          11.     Defendant Arctic Glacier Income Fund is a Canadian holding company with its

12  principal place of business in Winnipeg, Manitoba, Canada. Arctic Glacier Income Fund describes

13  itself as a leading producer, marketer and distributor of high-quality packaged ice in North America

14  under the brand name of "Arctic Glacier Premium Ice."  Arctic Glacier operates 37 manufacturing

15  plants and 50 distribution facilities across Canada and the northeast, central and western United States

16  servicing more than 70,000 retail accounts.

17          12.     Arctic Glacier Income Fund is the second-largest producer, marketer, and distributor of

18  packaged ice in North America, with total revenues of $249 million for 2007.  Of these revenues,

19  more than 80 percent comes from its U.S. operations, in which it has dominant market positions in

20  major eastern seaboard cities such as New York and Philadelphia, New England, California, and the

21  Midwest.  The company also controls most of the Packaged Ice sales in Canada.  During the Class

22  Period, Arctic Glacier Income Fund directly and/or through the control of its subsidiaries and

23  affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or in

24  other districts throughout the United States.

25          13.     Defendant Arctic Glacier, Inc. is a Canadian corporation with its principal place of

26  business in Winnipeg, Manitoba, Canada.  Arctic Glacier, Inc. is a wholly-owned subsidiary of

27  defendant Arctic Glacier Income Fund. During the Class Period, Arctic Glacier, Inc. directly and/or

28  through the control of its subsidiaries and affiliates manufactured, marketed, sold and/or distributed

- 3 -

1    Packaged Ice in this District and/or other districts throughout the United States.

2        14.    Defendant Arctic Glacier International Inc. is a Delaware corporation with its

3    principal place of business in West St. Paul, Minnesota.  Arctic Glacier International Inc. is a

4    wholly-owned subsidiary of defendant Arctic Glacier Income Fund.  During the Class Period, Arctic

5    Glacier International Inc. directly and/or through the control of its subsidiaries and affiliates

6    manufactured, marketed, sold and/or distributed Packaged Ice in this District and/or other districts

7    throughout the United States.

8        15.    Collectively, Arctic Glacier Income Fund, Arctic Glacier, Inc. and Arctic Glacier

9    International Inc. are referred to as "Arctic Glacier."  Each of the Arctic Glacier defendants joined

10    the conspiracy alleged herein and is legally responsible for its conduct because its directors,

11    members, officers, employees and/or agents, acting within the scope of their authority, reached

12    unlawful agreement(s) with their competitors to unlawfully restrain competition. Alternatively, each

13    of the Arctic Glacier defendants is legally responsible because it acted through, facilitated,

14    dominated or controlled the actions of another Arctic Glacier defendant in furtherance of the

15    conspiracy alleged herein.

16        16.    Defendant Home City Ice Company ("Home City Ice") is a privately-held Ohio

17    Corporation with its principal place of business in Cincinnati, Ohio.  Home City Ice sells and/or

18    distributes Packaged Ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as

19    parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland.  Home City Ice manufactures

20    4,400 tons of ice per day in 28 manufacturing plants, with 36 distribution centers to serve the

21    Midwest.  During the Class Period, Home City Ice directly and/or through the control of its

22    subsidiaries and affiliates manufactured, marketed, sold and/or distributed Packaged Ice in this

23    District and/or other districts throughout the United States.

24                        CO-CONSPRATORS AND AGENTS

25        17.    Other natural persons, corporations, and entities not named as defendants herein, have

26    participated in the unlawful conspiratorial activity alleged herein in violation of the antitrust laws of

27    the United States.

28

- 4 -

18.    Whenever in this Complaint reference is made to an act, statement, or transaction of any corporation or entity, the allegation means that the corporation or entity acted, stated, or transacted by or through its directors, members, partners, officers, employees, or agents, while they were engaged in the management, direction, control, or conduct of the corporation's or entity's business and acting within the scope of their authority.

## CLASS ALLEGATIONS

19.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on its own behalf and on behalf of all others similarly situated.  The proposed class includes all persons, corporations, and other legal entities in the United States (excluding defendants, their subsidiaries, and any co-conspirators), who purchased Packaged Ice directly from one or more of the defendants (the "Class") in the United States or Canada at any time from at least January 1, 2002 through the present (the "Class Period").

20.    The members of the Class are so numerous and geographically dispersed across the country that joinder of all Class members would be impracticable.  Due to the nature of the claims asserted here, Plaintiff believes that members of the Class are located throughout the United States and Canada.  The exact number of Class members is unknown by Plaintiff at this time, but Plaintiff believes that the Class numbers in the thousands and their identities can only be discovered through inspection of defendants' and their co-conspirators' records, which are or should be readily available.

21.    Plaintiff's claims are typical of the members of the Class because Plaintiff and all members of the Class were damaged by the same wrongful conduct of the Defendants alleged herein. Plaintiff and the Class purchased Packaged Ice at artificially maintained, non-competitive prices established by the actions of defendants and their unnamed co-conspirators in connection with the wrongful conduct alleged herein.

22.    Plaintiff will fairly and adequately protect the interests of the Class.  The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

- 5 -

23.    Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members, if any, in that defendants have acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

a.    Whether defendants conspired with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practice designed to unlawfully restrain the trade of Packaged Ice;

b.    Whether defendants' conduct violated Section 1 of the Sherman Act;

c.    The existence, duration, and illegality of the contract, combination or conspiracy alleged herein;

d.    The identity of the co-conspirators;

e.    The effect upon and the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure of damages;

f.    Whether defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein; and

g.    Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

24.    Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.  Class treatment will also permit the adjudication of relatively small claims by certain class members, who could not afford to individually litigate an antitrust claim against large corporate defendants.

25.    This action presents no difficulties of management that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

26.    The defendants are leading manufacturers of Packaged Ice in the United States and Canada. The Packaged Ice industry is over a billion dollar a year industry, operating throughout the United States and Canada. During the Class Period, defendants manufactured, marketed, distributed, and/or sold Packaged Ice to customers throughout the United States and Canada, utilizing the means and instrumentalities of interstate trade and commerce.

27.    Defendants' and their co-conspirators' unlawful activity had a direct, substantial, and reasonably foreseeable effect upon interstate trade and commerce. The unlawful restraints of trade alleged herein have directly and substantially affected interstate commerce in that the defendants have deprived Plaintiff and the Class of the benefits of free and open competition in the Packaged Ice market throughout the United States and Canada.

## ANTICOMPETITIVE CONDUCT

28.    Defendants are the largest manufacturers of Packaged Ice in the United States and North America.

29.    Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiff, and continuing thereafter to present day, defendants and their coconspirators engaged in an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of Packaged Ice in a *per se* violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

## THE PACKAGED ICE INDUSTRY

30.    Packaged Ice is sold throughout the United States principally to convenience stores, supermarkets and other retail outlets, primarily in 7 and 10 pound bags, as well as in block form.

31.    Sales of Packaged Ice are approximately $1.8 billion annually. About half of those sales are produced by third-party manufacturers, with the other half produced in-house (ice machines). Sales by defendants comprise approximately 70% of third-party manufacturers' sales of Packaged Ice.

32.    Canada is a major exporter of ice into the United States.

- 7 -

33.    The Packaged Ice industry has high barriers to entry. Many Packaged Ice customers carry only one brand of ice and have long term relationships of many years with their suppliers. A new entrant into the Packaged Ice market would have to incur multimillion dollar costs, including manufacturing plants and equipment, energy, transportation, fuel costs, and distribution infrastructure. Because of these high costs, new or small distributors are not able to meet the peak needs of large multistate customers and cannot compete successfully for such customers. The industry has high start-up and replacement costs, and many customers carry only one brand of ice and have long term relationships of ten or more years with the manufacturer from whom they purchase Packaged Ice products.

34.    There are no economic substitutes for Packaged Ice.

35.    Packaged Ice is a commodity product, which in a competitive market would be sold primarily on the basis of price. Defendants' anticompetitive conduct has enabled them to fix, raise, maintain and stabilize the price of Packaged Ice in the geographic areas allocated to them at artificially high levels.

36.    The Packaged Ice Industry has undergone substantial consolidation within the last few years.

a.    Defendant Reddy Ice has continuously purchased small ice companies in various locations. During 2006, Reddy Ice purchased ten ice companies, and during 2007, it purchased an additional twenty ice companies.

b.    Arctic Glacier has purchased numerous smaller ice companies. In 2006, Arctic Glacier acquired Happy Ice LLC, the largest ice company in upstate New York. Also in 2006, it acquired six companies collectively known as California Ice, which enabled Arctic Glacier to become the largest Packaged Ice producer in California. In 2007, Arctic Glacier purchased an additional company called Union Ice in Southern California.

37.    Through acquisitions, defendants have increased their market power and reduced the ability of any other Packaged Ice companies to compete for customers serviced by defendants.

38.    During the Class Period, Defendants engaged in illegal, anticompetitive conduct by, *inter alia*, allocating markets so that Defendants were no longer in competition with each other.

- 8 -

39.    This resulted in the following market division: (a) Reddy Ice dominates the market in the U.S. sunbelt states, from Florida to Arizona, and the Northwest (AZ, NM, TX, OK, AR, LA, MI, AL, GA, FL, SC, NC, VA, CO, DE, DC, HI, ID, KA, KY, MD, MS, NV, NJ, OR, PA, TN, UT, WA, WV and WY); (b) Arctic Ice dominates the market in the Central and Northeastern states and California (CA, ND, SD, CA, NE, KS, MO, IA, MN, WI, MI, PA, DE, NJ, NY, CT, VT, NH and ME); and (c) Home City Ice dominates the market in the Midwest (IL, OH and IN). There is virtually no overlap between the geographic markets in which each Defendant operates.

40.    Defendants agreed not to compete head to head in any of the markets that one of them dominates. Each region of the U.S. market, as alleged herein, is controlled by one particular Packaged Ice manufacturer. The market share of non-defendant companies that manufacture and distribute Packaged Ice is extremely limited.

41.    By engaging in conduct that allocated the market among the defendants, price competition was reduced or eliminated throughout the United States and Canada.

42.    The Packaged Ice industry is highly seasonal, characterized by peak demand during the warmer months of May through September. Approximately 69 percent of annual revenues occur during this time.

43.    Demand for Packaged Ice within specific geographic areas is affected by weather conditions. There is an extended peak selling season in the southern United States, where temperatures remain warm beyond September. Revenues typically increase during particularly hot summers. Cool and/or rainy seasons, however, negatively impact ice purchases.

44.    The Antitrust Division of the United States Department of Justice ("DOJ"), is investigating possible anticompetitive practices in the Packaged Ice business.

45.    The DOJ investigation follows a complaint to Canada's Competition Bureau ("Bureau") by Polar Ice, a smaller Packaged Ice manufacturer in western Canada, who alleged that Arctic Glacier engaged in strong-arm tactics in the Edmonton geographic area, including "muscling," bribing, and offering kickbacks to the smaller company's customers.

46.    The court in Canada found that Arctic Glacier had engaged in conduct violative of Canada's competition law to prevent the smaller ice company in from competing with Arctic Glacier

- 9 -

1    to deliver ice to a particular customer. Among other things, the court found that Arctic Glacier had

2    used intimidation, bribery, and other unlawful means and methods to force the customer to stop

3    seeking competitive prices from the small ice company, with the intention of driving that small

4    competitor out of business. The Canadian court awarded Polar Ice $50,000 in damages.

5          47.     Arctic Glacier defendants have acknowledged that it received a subpoena in

6    connection with the DOJ investigation on or about March 5, 2008.

7          48.     Just prior to this news, defendant Arctic Glacier Income Fund had reported a fourth-

8    quarter loss of $3.7 million on revenue of $36.3 million. In the same quarter of the previous year, the

9    fund lost $6.2 million, or 19 cents a unit, on revenue of $39.9 million. They reported that the stronger

10    Canadian dollar reduced reported sales by $4.5 million during the quarter.

11          49.     Also on or about March 6, 2008, Reddy Ice announced that federal officials executed

12    a search warrant at the Company's corporate office in Dallas on March 5, 2008.

13          50.     Reddy Ice announced that the DOJ took "various documents and information," but

14    would not say whether computers were taken. A DOJ spokesperson stated that the agency was

15    "investigating the possibility of anti-competitive practices in the packaged-ice industry."

16          51.     Between December 1, 2007 and January 3, 2008, both the Chief Operating Officer

17    and Chief Executive Officer of Reddy Ice resigned, just prior to the time the DOJ executed its search

18    warrants.

19          52.     Defendants are members of several trade associations relating to the Packaged Ice

20    industry, and their executives have served on the boards of directors and various standing

21    committees of these organizations. These trade associations hold regular meetings of their boards,

22    committees, and members, which defendants' representatives have attended, and which provide the

23    opportunity for defendants to meet and communicate with each other concerning the markets,

24    customers and prices of Packaged Ice.

25          53.     For example, defendants are members of the International Packaged Ice Association

26    ("IPIA"), which is headquartered in Tampa, Florida. Ben Key, Reddy Ice's Executive Vice President

27    – Sales and marketing, recently served as the Chairman of the IPIA Executive Committee. Nancy

28    Thorn, Director of marketing at Reddy Ice, and Keith McMahon, President and Chief Executive

1  Officer at Arctic Inc., are members of the IPIA Board of Directors. In addition, Ms. Thorn,
2  Mr. McMahon, and Tommy Sedler, Operations Manager and Treasurer of Home City, are members
3  of the IPIA Marketing Committee.

4      54.     IPIA holds meetings of its Board of Directors and Committees, as well as an annual
5  meeting of its members. Representatives of defendants attended such meetings. IPIA's 2006 annual
6  meeting was held on November 23-December 3, 2006, in Tucson, Arizona, and its 2004 annual
7  meeting was held on November 12-17, 2004, in La Quinta, California.

8      55.     There are regional trade associations that are affiliated with IPIA, and of which
9  defendants are members. Defendants' representatives have been members of the board of directors
10  or various committees of these regional trade associations. In addition, like the IPIA, these regional
11  trade associations hold regular meetings of their boards, committees and members, which have been
12  attended by defendants' representatives, and which have afforded defendants opportunities to meet
13  and communicate concerning the market, customers and prices of Packaged Ice.

14      56.     For example, Arctic Glacier and Home City are members and their representatives are
15  officers of the Northeastern Ice Association ("NIA"). Keith McMahon of Arctic Glacier, and
16  Tommy Sedler and Ted Sedler of Home City are members of NIA. Ted Sedler also currently serves
17  as First vice President and Treasurer of NIA. NIA typically holds meetings of its officers and Board
18  of Directors in the spring and holds its member conventions in the fall. Its Board of Directors
19  meetings have been held in the following locales: Washington, DC (2001); Williamsburg, VA
20  (2002); Bahamas (2003); New York, NY (2004); Ledyard, CT (2006); and Lake George, NY (2007).
21  Its annual conventions have been held in the following locales: Providence, RI (2001); Ledyard, CT
22  (2002); New Orleans, LA (2003); Atlantic City, NJ (2004); Montreal, Canada (2005); Boston, MA
23  (2006); and Lake George, NY (2007). Representatives of Arctic Glacier and Home City have
24  attended these meetings and conventions.

25      57.     In addition, Arctic Glacier and Reddy Ice are members of the Western Ice
26  Association ("WIA"), which is also affiliated with the IPIA. The WIA's members include William
27  Brick, formerly Chairman and CEO of Reddy Ice and currently its Executive Chairman, and Jim
28  Weaver, currently President, CEO and a member of the Board of Directors of Reddy Ice, as well as

- 11 -

1  several representatives of Arctic Glacier.  WIA also holds periodic meetings of its Board of
2  Directors and committees, as well as annual meetings of its members.  Representatives of Arctic
3  Glacier and Reddy Ice have attended these meetings.

4                     **ALLEGATIONS OF ANTITRUST INJURY**

5      58.    The unlawful contact, combination or conspiracy alleged above had and has the
6  following effects, among others:

7              a.    Prices charged by defendants and their co-conspirators to plaintiff and Class
8  members for Packaged Ice were maintained at artificially high and noncompetitive levels;

9              b.    Plaintiff and Class members were required to pay more for Packaged Ice
10 than they would have paid in a competitive marketplace unfettered by defendants' and their c-
11 conspirators' collusive and unlawful conduct; and

12             c.    Plaintiff and Class members have been deprived of the benefits of free, open
13 and unrestricted competition in the market for Packaged Ice.

14     59.    During the Class Period covered, defendants charged Plaintiff and the Class
15 anticompetitive prices for Packaged Ice.  By reason of the alleged violations of the antitrust laws,
16 Plaintiff and the Class have sustained injury to their business or property, having paid higher prices for
17 Packaged Ice than they would have paid absent the illegal contract, combination or conspiracy, and,
18 as a result, have been injured in their business and have suffered damages in an amount presently
19 undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and
20 prevent.

21     60.    The specific amounts of damages have not yet been determined because such
22 determination will require discovery.  When these amounts have been determined, Plaintiff will seek
23 leave of Court to amend this Complaint to include such amounts.

24             **EQUITABLE TOLLING FOR FRAUDULENT CONCEALMENT**

25     61.    Throughout the conspiracy alleged herein, defendants affirmatively and actively
26 concealed their unlawful activity from Plaintiff and the Class.  While Plaintiff has diligently sought
27 to protect itself from unlawful activity, Plaintiff was unable to detect this conspiracy, which by its
28

1  nature is self-concealing. Furthermore, defendants acted fraudulently and deceptively to conceal the

2  unlawful collusion by conduct including:

3         a.   Falsely representing to Plaintiff and/or other purchasers that prices and

4  markets for Packaged Ice were fair and competitive, or that price increases were caused by costs of

5  raw materials or other market forces or other false and pretextual justifications, when in fact the

6  pricing was set through the conspiracy alleged herein;

7         b.   Conducting discussions through covert telephone calls and meetings;

8         c.   Confining participation in the unlawful activity to a limited number of

9  persons so as to reduce the risk of detection;

10        d.   Avoiding either references in documents, or the creation of documents, that

11  would implicate defendants for their participation in unlawful collusion;

12        e.   Using coded words in documents and conversations to conceal the collusion

13  in the sale and distribution of Packaged Ice; and/or

14        f.   Destroying or hiding documents that would constitute evidence of

15  participation in the conspiracy alleged herein;

16       62.   Plaintiff has exercised due diligence in seeking to protect itself from the types of

17  unlawful acts that in fact occurred. Despite this diligence, Plaintiff did not learn of the conspiracy,

18  and could not have learned of the conspiracy, until the existence of ongoing criminal investigations

19  was publicly disclosed in early 2008.

20                          COUNT I

21  <u>VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT</u>

22       63.   Plaintiff incorporates by reference the allegations above as though fully set forth

23  herein.

24       64.   Beginning at least as early as January 1, 2002 and continuing to the present, the exact

25  dates being unknown to Plaintiff, defendants and un-named conspirators entered into and engaged in

26  a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the

27  Section 1 of the Sherman Act.

28

- 13 -

1    65.    The formulating and furthering their conspiracy, defendants and their co-conspirators

2  engaged in unlawful anti-competitive activities, including:

3        a.    Participating in meetings and conversations to discuss the prices of Packaged

4  Ice, levels of output of Packaged Ice, and customers and markets for Packaged Ice;

5        b.    Agreeing during those meetings and conversations to fix the prices of

6  Packaged Ice sold to Plaintiff and other purchasers;

7        c.    Agreeing during those meetings and conversations not to compete in the sale

8  of Packaged Ice to Plaintiff and other purchasers and/or to allocate market share and sales volume;

9        d.    Issuing price announcements and price quotations and charging prices

10  consistent with the unlawful agreements reached;

11        e.    Agreeing to set output and/or capacity of Packaged Ice produced;

12        f.    Fixing output of Packaged Ice consistent with the agreements reached;

13        g.    Monitoring the actions of other conspirators to verify that they charged

14  prices and otherwise refrained from competition as agreed between the conspirators; and

15        h.    Fraudulently concealing the existence and activities of the Conspiracy.

16    66.    As a proximate result of defendants' unlawful conduct, Plaintiff and the Class have

17  sustained damage by paying supra-competitive prices that they would not have had to incur but for

18  the unlawful conduct of defendants as alleged herein.

19    67.    The conduct of defendants and their co-conspirators constitutes a *per se* violation of

20  Section 1 of the Sherman Act, 15 U.S.C. §1 and is at a minimum an unreasonable and unlawful

21  restraint of trade.

22              **COUNT II**

23      **FOR RESTITUTION, DISGORGEMENT AND IMPOSITION OF A
24      CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT BY DEFENDANTS**

25    68.    Plaintiff incorporates by reference the preceding and subsequent paragraphs as though

26  fully set forth herein.

27    69.    As a result of their unlawful conduct described above, defendants have been and

28  will continue to be unjustly enriched. Defendants have been unjustly enriched, to the detriment of

- 14 -

1  Plaintiff and the Class by the receipt of, at a minimum, unlawfully inflated prices and illegal profits

2  for Packaged Ice. Defendants have benefited from their unlawful acts, and it would be inequitable

3  for Defendants to be permitted to retain any of their ill-gotten gains.

4       70.    Plaintiff and the Class are entitled to the amount of defendants' ill-gotten gains

5  resulting from defendants' unlawful, unjust and inequitable conduct. Plaintiff and the Class are

6  entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which

7  Plaintiff and the Class may make claims on a *pro rata* basis.

8  **JURY DEMAND**

9       Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff

10  respectfully demands a trial by jury.

11  **PETITION FOR RELIEF**

12       WHEREFORE, Plaintiff requests that:

13       A.    The Court determines that this action may be maintained as a class action under

14  Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be appointed class

15  representative and that Plaintiff's counsel be appointed as counsel for the Class;

16       B.    The unlawful combination and conspiracy alleged herein be adjudged and decreed

17  to be in unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

18       C.    Plaintiff and the Class recover compensatory damages as provided by law,

19  determined to have been sustained by each of them; and that joint and several judgments in favor

20  of Plaintiff and the Class, respectively, be entered against the defendants, and each of them, in an

21  amount to be trebled in accordance with antitrust laws plus the costs of the action, including

22  reasonable attorneys' fees, expert fees, and accountant fees, and pre- and post-judgment interest;

23       D.    Defendants, their affiliates, successors, transferees, assignees, and the officers,

24  directors, partners, agents and employees thereof, and all other persons acting or claiming to act

25  on their behalf, be permanently enjoined from continuing the unlawful contract, combination or

26  conspiracy alleged herein and from:

27            i.    Continuing, maintaining or renewing the contract, combination or

28  conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy

1  having a similar purpose or effect, and from adopting or following any practice, plan, program or

2  device having a similar purpose or effect; and

3          ii.          Communicating or causing to be communicated to any other person engaged

4  in the manufacture, distribution or sale of any product except to the extent necessary in connection

5  with a bona fide sales transaction between the parties to such communications;

6          E.          Plaintiff and the Class be granted such other, further and different relief as the

7  nature of the case may require or as the Court may deem just and proper.

8  DATED:  April 29 2008                    ROBBINS UMEDA & FINK, LLP
                                            BRIAN J. ROBBINS
9                                           JEFFREY P. FINK
                                            GEORGE C. AGUILAR -
10                                          ASHLEY R. PALMER

11

12                                          _____
                                            JEFFREY P. FINK
13
                                            610 West Ash Street, Suite 1800
14                                          San Diego, CA 92101
                                            Telephone: (619) 525-3990
15                                          Facsimile: (619) 525-3991

16                                          LEMMON LAW FIRM, LLC
                                            ANDREW A. LEMMON
17                                          15058 River Road
                                            P.O. Box 904
18                                          Hahnville, LA 70057
                                            Telephone: (985) 783-6789
19                                          Facsimile: (985) 783-1333

20                                          Attorneys for Plaintiff

21

22

23

24

25

26

27

28  336813_2.DOC

# EXHIBIT B

Business Trusts

# Arctic Glacier Income Fund   (AG.UN-T; $10.64)

**Recommendation: BUY**

*Wui-Seng Kon (416) 847-3402; wkon@wwcm.com*
*Mike Ceccarelli (416) 642-3809; mceccarelli@wwcm.com*



WELLINGTON WEST
*Capital Markets Inc.*

*May 26, 2006*

**All values in C$ unless otherwise noted.**

| | |
|---|---|
| Current Price | $10.64 |
| Current Dist.p.u./yield | $1.10/10.3% |
| Target Price (12-Month) | $14.60 |
| Target Return (including yield) | 48% |

**Changes**

| | Old | New |
|---|---|---|
| DCPU 2006E | $1.20 | $1.38 |
| DCPU 2007E | n/a | $1.34 |
| Recom. | BUY | Unchanged |
| Target | $13.00 | $14.60 |

**Company Profile**

Arctic Glacier is a leading manufacturer and distributor of premium quality packaged ice products. It is the largest producer of packaged ice in Canada and is the 2nd largest in the United States. 85% of Arctic's sales are in the US; the remainder in Canada.

## *California Dreaming: Great Deal For a Dominant Share of Large, Growing Market*

- **AG buys California Ice for 7.9x, very attractive given fundamentals.**
  Warm weather, extended selling season and thus reduced seasonality, population growth of ~1.5% p.a. and buying when C$ is at 28 year high.

- **California Ice is dominant, ~75% share in its markets.**
  Scale and weather gives 36% EBITDA margin, implying very high utilization rate and thus ROIC.

- **We believe a 5-10¢ distribution increase is on the cards post Q306.**
  With f.d. payout ratio of 82% today, room for distribution increase unless C$ rises again. AG intends to hedge net US$ cash flows once deal closes.

- **Target revised up to $14.60, currently at 7.8x EV/EBITDA: BUY.**
  California now ~40% of group EBITDA, enhanced growth and stability from this justifies re-rating. Our target is based on 10x EV/'07 EBITDA.

### Price Chart



Source: Thomson ONE

### Financial Summary

| | | | |
|---|---|---|---|
| Shares Out (mln)* | 40.5 | 52-Week Range | $9.05-$12.14 |
| Market Cap | 431.0 | Avg Weekly Volume | 84,656 |
| Market Float | 387.9 | Fiscal Year End | 31-Dec |
| Net Debt (03/06)(m) | (86.2) | Tangible BV/Share (03/06) | $1.44 |

| Year to June 30 | 2004 A | 2005 A | 2006 E | 2007 E |
|---|---|---|---|---|
| Revenue | 114.4 | 156.4 | 206.1 | 240.4 |
| EBITDA | 28.1 | 41.0 | 63.2 | 72.1 |
| Dist. Cash p.u. | 0.91 | 1.20 | 1.38 | 1.34 |
| Distributions p.u. | 1.07 | 1.10 | 1.12 | 1.18 |
| Payout ratio | 117.8% | 91.6% | 81.1% | 88.0% |
| Yield | 10.1% | 10.3% | 10.5% | 11.1% |
| EV/EBITDA | 12.3 | 8.6 | 8.7 | 7.8 |

| Dist. Cash p.u. (C$) | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|
| 2004 | (0.23) A | 0.35 A | 0.81 A | (0.02) A |
| 2005 | (0.34) A | 0.50 A | 1.19 A | (0.10) A |
| 2006 | (0.24) A | 0.42 E | 1.03 E | 0.01 E |

*Fully Diluted Shares Outstanding

**Please see disclaimers at the end of this report.**


## Investment Summary and Outlook

We view AG's purchase of six ice packaging companies in California very favourably, and by all accounts should lead to an upward re-rating of AG units. Given the attractive fundamentals of the California market: weather, extended selling season, population growth; and that it now accounts for ~40% of AG's EBITDA, AG is undervalued here at 7.8x EV/EBITDA. With California in the fold, AG's stability is improved as it reduces AG's vulnerability to weather in any one region. The lack of an uptick in the unit price despite such an attractive accretive acquisition is an anomaly, perhaps due to a temporary excess supply of offerings. **With an enhanced profile of growth and stability, on a fundamental earnings basis, AG is cheap.** We are raising our target to $14.60 based on 10x EV/EBITDA and maintaining our BUY recommendation.

### *AG buys California Ice for 7.9x; very attractive given fundamentals.*

AG entered into purchase agreements to acquire six packaged ice companies in California for US$190.2m. Collectively, these companies generated sales of US$66.7m and EBITDA of US$24.0m in 2005, implying a purchase multiple of 7.9x EBITDA. While this is a higher multiple than previous acquisitions which have been in the 5-7x range, it is easily justifiable given:

a)    The size of the companies acquired give AG a strong platform for further tuck-in acquisitions;

b)    It is the only group with state wide presence, giving it a competitive advantage in servicing large multi-location customers;

c)    That nearly all facilities have recently been constructed or upgraded (management described the quality of assets as "exceptional");

d)    The attractiveness of the California market given the weather and population growth. The markets that California Ice serves include 11 of the 25 fastest growing urban centres in the United States. Published population figures for the state of California show population growth of 1.3% p.a., and that may be understated as the census may not have fully accounted for all the immigrants in California. Management believes organic growth for packaged ice is 3% to 5% p.a. on average in California.

The question we ask ourselves is how do we get more comfort on the sustainability of this US$24m EBITDA:

### California Ice 2004 EBITDA is similar, giving comfort on stability

As we lack data showing the long financial history of these Californian companies, we recognize the hesitancy in according this acquisition a "great buy". For what its worth, the offering prospectus provides 2004 results for the 6 companies; collectively, 2004 revenue is US$68.2m with EBITDA of US$24.8m. This should at least provide some measure of comfort as to the stability of these earnings.

Arctic Glacier Income Fund

**WELLINGTON WEST**
*Capital Markets Inc.*

**'05 weather within normal historical range, more comfort to '05 EBITDA**
Also, from our checks of the weather patterns, 2005 was a very normal year for California as a whole although spring was wet. Again, this gives a little more comfort to the sustainability of 2005's EBITDA.

**Exhibit 1: California Weather vs. Historical Range**



Source: The Weather Underground, Inc.

**Potential for cost savings post acquisition.**
The 6 companies that are being acquired operated independently. Post its consolidation into the AG group, management believes there are integration savings of about $3m annually that can be realized. On a fully diluted basis, this is worth another 7¢ per unit. We have only assumed a small portion of this will be realized in 2006 and 2007.

*California Ice is dominant, ~75% share in its markets.*

According to management's estimates, annual packaged ice sales in California are approximately US$100m at the wholesale level. With US$67m of sales, this implies California Ice has a 67% market share state-wide. During the conference call to discuss the acquisition, AG management believes its local market share is even more dominant at around 75% in the 6 urban centres of Los Angeles, San Diego, San Francisco, Oakland, San Jose and Sacramento.

California Ice has 8 production facilities and 5 distribution centres located throughout the state near major population centres (Exhibit 2). They have a combined capacity of 3,350 tons per day, about 60% of AG's existing capacity.

Arctic Glacier Income Fund

**WELLINGTON WEST**
*Capital Markets Inc.*

### Exhibit 2: California Ice Facilities Location and Capacity

| Location | Type | Production Capacity | Storage | Size |
|---|---|---|---|---|
| *Production* | | *(tons/day)* | *(pallets)* | *(sq. ft.)* |
| Bakersfield | Plate/Ammonia | 200 | 700 | 16,000 |
| Carson | Plate/Ammonia | 700 | 3,000 | 52,000 |
| Elk Grove | Plate/Ammonia | 600 | 6,000 | 68,000 |
| Fremont | Plate/Ammonia | 600 | 1,000 | 47,600 |
| Fresno | Plate/Ammonia | 200 | 3,000 | 45,000 |
| Modesto | Plate/Ammonia | 470 | 300 | 20,000 |
| Oceanside | Plate/Freon | 300 | 1,000 | 35,000 |
| Santa Ana | Plate/Ammonia | 280 | 500 | 10,000 |
| Sub-total | | 3,350 | 15,500 | |
| *Distribution* | | | | |
| Capitola | Dist. | - | 60 | |
| Concord | Dist. | - | 100 | |
| Marysville | Dist. | - | 300 | |
| Rohnert Park | Dist. | - | 80 | |
| Stockton | Dist. | - | 200 | |
| Sub-total | | - | 740 | |
| **Total** | | **3,350** | **16,240** | |

Source: Company reports

As can be expected, California Ice services a wide range of customers and distributes to 12,000 locations. Some of the major chains that are its customers are Albertsons, Safeway, Smart & Final, Stater Bros and Vons.

Given this dominance and scale of operation with high demand due to the favourable weather, it is not surprising that California Ice has EBITDA margins of almost 36% with an EBITDA of US$24m. This EBITDA is generated off property, plant and equipment with a NBV of US$32m. Additionally, with maintenance capex around US$3-4m, the deal is priced at a FCF multiple of around 9 to 9.5x.

In terms of competition, the International Packaged Ice Association lists 6 other members with facilities in California (see Exhibit 3). We do not have data as to their respective size, but believe they are relatively small. AG's main competitor Reddy Ice has one small facility in Brawley, and is thus unlikely to be a threat.

Wui-Seng Kon (416-847-3402; wkon@wwcm.com)
Mike Ceccarelli (416-642-3809; mceccarelli@wwcm.com)

Arctic Glacier Income Fund

**WELLINGTON WEST**
*Capital Markets Inc.*

---

### Exhibit 3: California Ice Main Markets vs Competition's Facilities



Source: Company reports, Packaged Ice Association, Company websites

*We believe a 5-10¢ distribution increase is on the cards post Q306.*

With this acquisition, we forecast '07 f.d. DCPU of $1.34 giving a payout ratio of 82% based on the current DPU of $1.10. Our forecast assumes an exchange rate of C$1.12 per US$1 (or US$0.89 per C$1). As such we believe there is room for about a 5 to 10¢ p.a. increase in distribution over the next 12 months as long as the C$ does not appreciate significantly from here. There is some room for cost savings to offset a modest increase in the C$, so a 5-10¢ increase should still be possible in this scenario. A DPU increase to $1.20 would push the payout ratio close to 90%.

Note that our forecast differs from the pro forma consolidated figures in the prospectus in several respects (see Exhibit 4). The pro forma figures are derived from consolidating 2005 results of AG and California Ice.

---

Arctic Glacier Income Fund

**WELLINGTON WEST**
*Capital Markets, Inc.*

### Exhibit 4: Our 2007 Forecast vs. Pro Forma Consolidated Figures

| (C$ Millions except per share figures) | 2005 Consolidated Proforma | 2007 Estimate WWCM |
|---|---|---|
| EBITDA | 69.43 | 72.13 |
| Distributable Cash (basic) | 45.65 | 47.79 |
| Distributable Cash (diluted) | 52.15 | 54.29 |
| Weighted Avg Number of Units (basic) | 29.32 | 32.55 |
| Weighted Avg Number of Units (diluted) | 37.26 | 40.49 |
| Distributable Cash per Unit (basic) | 1.56 | 1.47 |
| Distributable Cash per Unit (diluted) | 1.40 | 1.34 |
| Payout Ratio (basic) | 71% | 75% |
| Payout Ratio (diluted) | 79% | 82% |

Source: Company Reports, Wellington West Capital Markets

Notable differences are:

i)   The proforma figures use an exchange rate of C$1.215 per US$1 for California Ice's financial results as this is the 2005 period average while we have used a much higher C$1.124. Our EBITDA should be lower in C$ terms but we have assumed a modest 2.5% growth and a little cost savings, hence our EBITDA figure is slightly higher.

ii)  Proforma maintenance capex is only $4.4m as California Ice spent little on maintenance in 2005. We have assumed a group maintenance capex figure of $9.1m, which approximates to 3.8% of sales, which is within the 3.5% to 4% long term range that management has guided. Given management's comments that California Ice's facilities are "exceptional", there is a possibility that the short term amounts may be far less than the long term guidance range. (Partially offsetting this is much higher interest expense charges in the Proforma vs WWCM.)

iii) A much lower weighted average number of shares has been used for the Proforma figures. This is because AG made a unit issue in 2005 thus giving a weighted average unit outstanding figure of 24.6m as opposed to the 2005 year end figure of 27.9m. It is this 3.2m unit difference that causes our '07 DCPU to fall below that of the Proforma figures.

## Valuation – Maintain BUY recommendation with an increased target of $14.60.

For reasons stated in this report, there are many justifications for a re-rating from AG's current 7.8x EV/EBITDA. We believe 10x should be a fair price for what is a pretty stable business, that has gotten more stable, and which has some measure of pricing power. On that basis, we are increasing our target price to $14.60 from $13.00 and maintaining our BUY recommendation.

**WELLINGTON WEST**
*Capital Markets Inc.*

In comparison with Reddy Ice at 9.7x, AG's lower multiple is unwarranted. Previously, it could be argued that Reddy's premium was justifiably given its intrinsic higher growth as Reddy was concentrated in the southern states with higher population growth. However, with California now in AG's fold, AG too has its own growth angle. From a debt perspective, AG is much lower at 1.8x debt/EBITDA vs Reddy. From an overhang perspective, we still have the private equity owners of Reddy looking to cash out. Yielding more, AG is clearly incredibly good relative value.

**Exhibit 5: Comparison with Reddy Ice**

|  | Arctic Glacier 2007 | Reddy Ice 2006 consensus |
|---|---|---|
| Price | C$ 10.64 | US$ $21.55 |
| Revenue | C$ 240.4 | US$ 317.4 |
| EBITDA | C$ 72.1 | US$ 81.3 |
| EBITDA margin | 30.0% | 25.6% |
|  |  |  |
| Net Debt / EBITDA | 1.8 | 3.9 |
| EV / EBITDA | 7.8 | 9.7 |
|  |  |  |
| Distribution /Dividend annualized | 1.10 | 1.53 |
| Yield | 10.3% | 7.1% |

Source: Company Reports, Wellington West Capital Markets

Arctic Glacier Income Fund

**WELLINGTON WEST**
*Capital Markets Inc.*

## Exhibit 6: Income & Distributable Cash Forecast

*Stated in millions of C$*
**Income Statement**

| Year to Dec 31 | 2004A | 2005A | Q1-06A | Q2-06E | Q3-06E | Q4-06E | 2006E | 2007E |
|---|---|---|---|---|---|---|---|---|
| **Assumptions** | | | | | | | | |
| Revenue growth year over year | 17.8% | 36.7% | 6.2% | 14.3% | 38.4% | 63.5% | 31.7% | 16.7% |
| COGS growth year over year | 18.8% | 33.6% | 0.7% | 12.6% | 33.1% | 42.1% | 23.8% | 17.8% |
| Exchange rate | 1.2805 | 1.2019 | 1.1545 | 1.1236 | 1.1236 | 1.1236 | 1.1264 | 1.1200 |
| EBITDA margin | 24.5% | 26.2% | -29.8% | 32.9% | 45.1% | 10.9% | 30.7% | 30.0% |
| Gross Margin | 75.5% | 73.8% | 129.8% | 67.1% | 54.9% | 89.1% | 69.3% | 70.0% |
| Tax rate - current | -11.0% | -4.0% | -0.8% | 2.4% | 0.9% | -2.0% | 3.0% | 4.4% |
| Tax rate - future | 12.7% | 15.3% | -58.0% | -15.0% | -30.0% | -120.0% | 15.9% | 0.0% |
| | | | | | | | | |
| **Sales** | **114.4** | **156.4** | **14.7** | **54.0** | **101.8** | **35.6** | **206.1** | **240.4** |
| Cost of sales, selling, general and administrative expenses | (86.4) | (115.4) | (19.0) | (36.2) | (55.9) | (31.7) | (142.9) | (168.3) |
| **EBITDA** | **28.1** | **41.0** | **(4.4)** | **17.8** | **45.9** | **3.9** | **63.2** | **72.1** |
| Amortization | (12.0) | (18.1) | (4.6) | (7.2) | (8.1) | (8.2) | (28.1) | (35.4) |
| Interest | (1.8) | (6.9) | (1.2) | (2.3) | (3.4) | (3.5) | (10.4) | (14.2) |
| Acquisition integration charges | (0.5) | (1.5) | (0.1) | 0.0 | 0.0 | 0.0 | (0.1) | 0.0 |
| Loss (gain) on disposal of property, plant and equipment | 0.3 | (0.1) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Gain on foreign exchange options | 1.2 | (0.1) | (0.2) | 0.1 | 0.1 | 0.0 | (0.0) | 0.0 |
| Non-recurring and other expenses | (1.2) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Earnings (loss) before income taxes | 14.1 | 14.3 | (10.5) | 8.4 | 34.5 | (7.8) | 24.5 | 22.5 |
| Income taxes | | | | | | | | |
| current | (1.5) | (0.6) | (0.1) | (0.2) | (0.3) | (0.2) | (0.7) | (1.0) |
| future | 1.8 | 2.2 | 6.1 | (1.3) | (10.3) | 9.4 | 3.9 | 0.0 |
| **Earnings for the period** | **14.3** | **16.0** | **(4.5)** | **6.9** | **23.8** | **1.4** | **27.6** | **21.5** |
| Earnings per unit - basic and diluted | $0.61 | $0.65 | -$0.16 | $0.23 | $0.73 | $0.04 | $0.78 | $0.66 |
| | | | | | | | | |
| **Distributable cash calculations** | | | | | | | | |
| **EBITDA** | **28.1** | **41.0** | **(4.4)** | **17.8** | **45.9** | **3.9** | **63.2** | **72.1** |
| less/add back: | | | | | | | | |
| Interest | (1.8) | (6.9) | (1.2) | (2.3) | (3.4) | (3.5) | (10.4) | (14.2) |
| Acquisition integration charges | (0.5) | (1.5) | (0.1) | 0.0 | 0.0 | 0.0 | (0.1) | 0.0 |
| Realized gain on foreign exchange options | 1.2 | (0.1) | (0.2) | 0.1 | 0.1 | 0.0 | (0.0) | 0.0 |
| Unrealized loss on foreign exchange options | (0.2) | 0.2 | 0.2 | (0.1) | (0.1) | (0.0) | 0.0 | 0.0 |
| Unit-based compensation expense | 0.3 | 0.4 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Non-recurring and other expenses | (1.2) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Cash taxes | (1.5) | (0.6) | (0.1) | (0.2) | (0.3) | (0.2) | (0.7) | (1.0) |
| Capital expenditure | (3.2) | (3.0) | (1.0) | (1.9) | (2.2) | (1.6) | (6.7) | (9.1) |
| **Distributable Cash (basic)** | **21.2** | **29.5** | **(6.8)** | **13.4** | **40.0** | **(1.4)** | **45.2** | **47.8** |
| DCPU (basic) | $ 0.91 | $ 1.20 | $ (0.24) | $ 0.45 | $ 1.23 | $ (0.04) | $ 1.47 | $ 1.47 |
| **DCPU (f.d.)** | **$ 0.91** | **$ 1.20** | **$ (0.24)** | **$ 0.42** | **$ 1.03** | **$ 0.01** | **$ 1.38** | **$ 1.34** |
| Distributions declared per unit | $ 1.07 | $ 1.10 | $ 0.28 | $ 0.28 | $ 0.28 | $ 0.29 | $ 1.12 | $ 1.18 |
| Payout ratio (basic) | 118% | 92% | -113% | 62% | 23% | -691% | 76% | 80% |
| Payout ratio (diluted) | | | | 66% | 27% | 4298% | 81% | 88% |
| | | | | | | | | |
| Weighted average number of units (f.d.) | 23.3 | 24.6 | 27.9 | 33.7 | 40.5 | 40.5 | 35.6 | 40.5 |

Source: Company reports, Wellington West Capital Markets

Wui-Seng Kon (416-847-3402; wkon@wwcm.com)
Mike Ceccarelli (416-642-3809; mceccarelli@wwcm.com)

**WELLINGTON WEST**
*Capital Markets Inc.*

*Note that our '07 f.d. DCPU of $1.34 shows a decline from '06's $1.38. This is largely because the group is accounting for the best months of California Ice in '06 while in '07, it takes the lower Q1 into account.*

*The Q206 and Q306 f.d.DCPU strangely shows a decline from the prior year. This is because the dilution starts from May 25th, 2006.*

*The sum of the 2006 quarterly DCPUs do not add up to the year's DCPU because of different quarterly weighted average number of units are being applied (given the timing of the issue) to seasonally changing distributable cash.*

## Appendix I – Mechanics of the Transaction

Arctic Glacier will be acquiring 6 companies that comprise the California Ice group for a total consideration of US$190.2m subject to adjustments for working capital. The companies being acquired are:

i)      Mountain Water Ice Company (MWI);

ii)     Diamond Newport Corporation (DNC);

iii)    Jack Frost Ice Service Inc (JFI);

iv)     Glacier Valley Ice Company (GVI);

v)      Glacier Ice Company (GIC);

vi)     South Bay Ice (SBI).

The closings of the acquisitions of the first four companies: MWI, DNC, JFI and GVI were completed on May 25, 2006. Upon this, AG paid US$148.3m cash and is scheduled to pay another US$8.4m on October 1, 2007.

The acquisitions of the two remaining companies, GIC and SBI, are scheduled to close on August 7, 2006. AG will pay US$31.7m then plus another US$1.8m on October 1, 2007. These two companies make up 19% of the 2005 EBITDA of the California Ice group.

Arctic Glacier Income Fund



# Disclaimers

The particulars contained herein were obtained from sources that we believe to be reliable, but are not guaranteed by us and may be incomplete or inaccurate. The opinions expressed are based upon our analysis and interpretation of these particulars and are not to be construed as a solicitation of offer to buy or sell the securities mentioned herein. Wellington West Capital Markets Inc. ("WWCM") may act as financial advisor, fiscal agent or underwriter for certain of the companies mentioned herein, and may receive remuneration for its services. WWCM and/or its principals, officers, directors, representatives, and associates may have a position in the securities mentioned herein and may make purchases and/or sales of these securities from time to time in the open market or otherwise. This report may not be reproduced in whole or in part, or further distributed or published or referred to in any manner whatsoever nor may the information, opinions or conclusions contained herein be referred to without in each case the prior written consent of WWCM.

US Institutions may conduct business through our affiliate Wellington West Capital Markets (USA) Inc. Wellington West Capital Markets (USA) Inc. accepts the contents of this research report, however, the company that prepared this report may not be subject to U.S. rules regarding the preparation of research reports and the independence of research analysts.

This report will be forwarded to our affiliate Wellington West Capital Inc. ("WWCI"). Subject to WWCI management review and approval, this report may be distributed to clients of WWCI. WWCI and WWCM are members of the Canadian Investor Protection Fund ("CIPF").

## *Wellington West Capital Markets Stock Rating System*

The rating system is based on the stock's expected absolute total return over the next 12 months. Strong Buy is expected to produce a total return of 25% or more, Buy a total return of 10% to 25%, Market Perform a total return of 0% to 10%, and Underperform a negative total return. The distribution of the recommendations for the last three-month period and their relationship with investment banking business is available by request from compliance@wwcm.com.

## *Analyst Compensation*

Research analysts receive compensation based on a number of factors as determined by WWCM's management. Compensation is affected by all of the firm's business activities, including revenue generated from capital markets and investment banking. No part of the compensation of the analyst who authored this report is based on the specific recommendation or views expressed in this report.

## *Analyst Trading*

WWCM permits analysts to own and trade in the securities and/or derivatives of those companies under their coverage, subject to the following restrictions: no trades can be executed in anticipation of the initiation of coverage; no trades can

Arctic Glacier Income Fund

 **WELLINGTON WEST**
*Capital Markets Inc.*

be executed for five days after dissemination of launching coverage or a material change in recommendation; and no trades can be executed against an analyst's recommendation. Exceptions require prior approval of the Head of Research and can only be executed for a reason unrelated to the outlook of the stock.

### Dissemination of Research

WWCM endeavors to make all reasonable efforts to provide research, simultaneously and electronically to all eligible clients and potential clients.

| Company Name | Ticker Symbol | Applicable Disclosure |
|---|---|---|
| Arctic Glacier | AG-U.T | 1, 2, 11* |

### Applicable Disclosure Details

1) In the last 12 months, WWCM, or its affiliates, have managed or co-managed an offering of securities by the subject issuer.
2) In the last 12 months, WWCM, or its affiliates, have received compensation for investment banking and related services from the subject issuer.
3) The research analyst or a member of the research analyst's household, or any associate or individual preparing the report, has a long position in the shares and/or the options of the subject issuer.
4) The research analyst or a member of the research's household, or any associate or individual preparing the report, has a short position in the shares and/or the options of the subject issuer.
5) WWCM or its affiliates is a market maker, or is associated with the specialist that makes a market in the securities of the subject issuer.
6) WWCM or its affiliates own more than 1% of any class of common equity of the subject issuer.
7) WWCM has a conflict of interest with the subject issuer.
8) The research analyst(s) has a conflict of interest with the subject issuer.
9) Over the last 12 months, the research analyst has received compensation based on a specific investment banking transaction relative to the subject issuer.
10) The research analyst or a member of the research analyst's household serves as a Director or Officer or Advisory Board Member of the subject issuer.
11) The research analyst(s) has viewed the material operations of the issuer.
12) A portion of the travel expenses of the analyst were paid or reimbursed by the issuer.

### Analyst Certification

Each analyst of WWCM whose name appears in this research report hereby certifies that (i) the recommendations and opinions expressed in the research report accurately reflect the research analyst's personal views about any and all of the securities or issuers discussed herein that are within the analyst's coverage universe and (ii) no part of the research analyst's compensation was, is, or will be, directly or indirectly related to the provision of specific recommendations or views expressed by the research analyst in the research report.

\* We have viewed AG's facilities in Mississauga.

**Wui-Seng Kon (416-847-3402; wkon@wwcm.com)**
Mike Ceccarelli (416-642-3809; mceccarelli@wwcm.com)

## DECLARATION OF SERVICE

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 610 West Ash Street, Suite 1800, San Diego, California 92101.

2.    That on May 14, 2008, I served the following document(s):

INTERESTED PARTY RESPONSE OF 6TH & ISLAND INVESTMENTS, LLC IN SUPPORT OF PLAINTIFF COBBLESTONE TEQUESTA LLC'S MOTION FOR CONSOLIDATION AND TRANSFER OF ALL ACTIONS TO THE SOUTHERN DISTRICT OF CALIFORNIA

_____    By transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Service List from fax number (619) 525-3991 on this date before 5:00 p.m. The facsimile transmission was reported as complete and without error.

__x__    By placing the document(s) listed above in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Packaged Ice Panel Service List Addendum.

_____    By causing the document(s) listed above to be served by a courier service on the following parties:

_____    By depositing in a box or other facility regularly maintained by UPS, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, in an envelope designated by the said express service carrier, with delivery fees paid or provided for, addressed to the parties on the attached Service List.

__x__    Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I sent the documents described herein to the persons at the e-mail addresses listed on the attached Panel Attorney Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful:

3.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 14th day of May, 2008, at San Diego, California.

_____
SEAN PUTTICK

# Judicial Panel on Multidistrict Litigation - Panel Attorney Service List

## for

## MDL 1952 - IN RE: Packaged Ice Antitrust Litigation

*** Report Key and Title Page ***

Please Note: This report is in alphabetical order by the last name of the attorney. A party may not be represented by more then one attorney. See Panel rule 5.2(c).

**Party Representation Key**

   * Signifies that an appearance was made on behalf of the party by the representing attorney.
   # Specified party was dismissed in some, but not all, of the actions in which it was named as a party.
   All counsel and parties no longer active in this litigation have been suppressed.

**This Report is Based on the Following Data Filters**

   Docket: 1952 - Packaged Ice AT

   For Open Cases

## Judicial Panel on Multidistrict Litigation - Panel Attorney Service List

Docket: 1952 - IN RE: Packaged Ice Antitrust Litigation
Status: Pending on / /
Transferee District:          Judge:

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| **Aranoff, Ronald J.**<br>BERNSTEIN LIEBHARD & LIFSHITZ LLP<br>10 East 40th Street<br>22nd Floor<br>New York, NY 10016 | =>Phone: (212) 779-1414  Fax: (212) 779-3218  Email: aranoff@bernlieb.com<br>Mazel LLC* |
| **Artic Glacier California,**<br>c/o CT Corporation System<br>818 West Seventh Street<br>Los Angeles, CA 90017 | =><br>Arctic Glacier California, Inc. |
| **Asher, Steven A.**<br>WEINSTEIN KITCHENOFF & ASHER LLC<br>1845 Walnut Street<br>Suite 1100<br>Philadelphia, PA 19103 | =>Phone: (215) 545-7200  Fax: (215) 545-6535  Email: asher@wka-law.com<br>Elite Energy, LLC* |
| **Barnett, Barry**<br>SUSMAN GODFREY LLP<br>901 Main Street<br>Suite 5100<br>Dallas, TX 75202 | =>Phone: (214) 754-1903  Fax: (214) 665-0832  Email: bbarnett@susmangodfrey.com<br>Wilson Farms, Inc.* |
| **Barnow, Ben**<br>BARNOW & ASSOCIATES PC<br>One North LaSalle Street<br>Suite 4600<br>Chicago, IL 60602-4606 | =>Phone: (312) 621-2000  Fax: (312) 641-5504  Email: b.barnow@barnowlaw.com<br>Valencia, Jenifer* |
| **Blanchfield, Jr, Garrett D.**<br>REINHARDT WENDORF & BLANCHFIELD<br>332 Minnesota Street<br>Suite E-1250<br>St. Paul, MN 55101 | =>Phone: (651) 287-2100  Fax: (651) 287-2103  Email: g.blanchfield@rwblawfirm.com<br>G.M. Food & Fuel, LLC dba G.M. Food & Gas* |
| **Bruckner, W. Joseph**<br>LOCKRIDGE GRINDAL NAUEN PLLP<br>100 Washington Avenue South<br>Suite 2200<br>Minneapolis, MN 55401-2179 | =>Phone: (612) 339-6900  Fax: (612) 339-0981  Email: wjbruckner@locklaw.com<br>Kozak Enterprises, Inc.*; Thomas Beverage Co., Inc. dba Thomas Liquors* |
| **Clobes, Bryan L.**<br>CAFFERTY FAUCHER LLP<br>1717 Arch Street<br>Suite 3610<br>Philadelphia, PA 19103 | =>Phone: (215) 864-2800  Fax: (215) 864-2810  Email: bclobes@caffertyfaucher.com<br>S&S Lima, Inc. dba Dry Run Beverage* |

---

Note: Please refer to the report title page for complete report scope and key.

*(Panel Attorney Service List for MDL 1,952 Continued)*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Cohen, Jay S. <br> SPECTOR ROSEMAN & KODROFF PC <br> 1818 Market Street <br> Suite 2500 <br> Philadelphia, PA 19103 | ⇒Phone: (215) 496-0300  Fax: (215) 496-6611  Email: JCohen@srk-law.com <br> Emmanuel (dba 7-11 25452), Ethamma* |
| Esades, Vincent J. <br> HEINS MILLS & OLSON PLC <br> 310 Clifton Avenue <br> Minneapolis, MN 55403 | ⇒Phone: (612) 338-4605  Fax: (612) 338-4692  Email: vesades@heinsmills.com <br> Drontle (dba Ponytail Catering), Rick* |
| Evans, John C. <br> SPECTER SPECTER EVANS & MANOGUE PC <br> Koppers Building <br> 436 Seventh Avenue <br> 26th Floor <br> Pittsburgh, PA 15219 | ⇒Phone: (412) 642-2300  Fax: (412) 642-2309  Email: jce@ssem.com <br> Linco Distributing Co., Inc. dba Beer Minimum* |
| Finkelman-Bennett, Natalie <br> SHEPHERD FINKELMAN MILLER & SHAH LLC <br> 35 East State Street <br> Media, PA 19063 | ⇒Phone: (610) 891-9880  Fax: (610) 891-9883  Email: nfinkelman@sfmslaw.com <br> Khorchid (dba 7-Eleven), Chukrid* |
| Gittleman, Jeffrey B. <br> BARRACK RODOS & BACINE <br> 3300 Two Commerce Square <br> 2001 Market Street <br> Philadelphia, PA 19103 | ⇒Phone: (215) 963-0600  Fax: (215) 963-0838  Email: jgittleman@barrack.com <br> Melrick, Inc. dba North Main Short Stop* |
| Gordon, Ruthanne <br> BERGER & MONTAGUE PC <br> 1622 Locust Street <br> Philadelphia, PA 19103-6365 | ⇒Phone: (215) 875-3000  Fax: (215) 875-4604  Email: rgordon@bm.net <br> Fu-Wah Mini Market*; Marchbanks Travel Service, Inc. dba Bear Mountain Travel Stop* |
| Grabar, Joshua H. <br> BOLOGNESE & ASSOCIATES LLC <br> Two Penn Center Plaza <br> 1500 JFK Boulevard <br> Suite 320 <br> Philadelphia, PA 19102 | ⇒Phone: (215) 814-6750  Fax: (215) 814-6764  Email: jgrabar@bolognese-law.com <br> 823 Sproul Inc. dba Sproul Beverage*; Krainc (dba Joe's Beer Distributor), Joseph* |
| Greenberg, Roger B. <br> SCHWARTZ JUNELL GREENBERG & OATHOUT LLP <br> Two Houston Center <br> 909 Fannin, Suite 2700 <br> Houston, TX 77010 | ⇒Phone: (713) 752-0017  Fax: (713) 752-0327  Email: rgreenberg@schwartz-junell.com <br> Solid Waste, Ltd. dba Bayland Marina* |
| Kaplan, Robert N. <br> KAPLAN FOX & KILSHEIMER LLP <br> 850 Third Avenue | ⇒Phone: (212) 687-1980  Fax: (212) 687-7714  Email: rkaplan@kaplanfox.com <br> Chi-Mar Enterprises, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| 14th Floor<br>New York, NY 10022 | |
| Kilene, Jason S.<br>GUSTAFSON GLUEK PLLC<br>650 Northstar East<br>608 Second Avenue South<br>Minneapolis, MN 55402 | =>Phone: (612) 333-8844 Fax: (612) 339-6622 Email: jkilene@gustafsongluck.com<br>Mall Mart, Inc. dba Midway BP* |
| Liebenberg, Roberta D.<br>FINE KAPLAN & BLACK RPC<br>1835 Market Street<br>28th Floor<br>Philadelphia, PA 19103 | =>Phone: (215) 567-6565 Fax: (215) 568-5872 Email: rliebenberg@finekaplan.com<br>Joseph Difabritiis 7-11 Food Store #24428* |
| Litvack, Sanford M.<br>HOGAN & HARTSON LLP<br>875 Third Avenue<br>New York, NY 10022 | =>Phone: (212) 918-8271 Fax: (212) 918-3100 Email: slitvack@hhlaw.com<br>Home City Ice Co.* |
| Lockridge, Richard A.<br>LOCKRIDGE GRINDAL NAUEN PLLP<br>100 Washington Avenue South<br>Suite 2200<br>Minneapolis, MN 55401-2179 | =>Phone: (612) 339-6900 Fax: (612) 339-0981 Email: lockrra@locklaw.com<br>Americana Food Store, Inc.; Public Foods, Inc.; Twin Valvue, LLC dba Seaway Marketplace |
| Maasch, Mark A.<br>TURNER & MAASCH<br>550 West C. Street<br>Suite 1150<br>San Diego, CA 92101 | =>Phone: (619) 237-1212 Fax: (619) 237-0325 Email: mam@tmsdlaw.com<br>Barranco-Grams, Jan* |
| Majoras, John M.<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, DC 20001-2113 | =>Phone: (202) 879-3939 Fax: (202) 626-1700 Email: jmajoras@jonesday.com<br>Arctic Glacier Income Fund*; Arctic Glacier International, Inc.*; Arctic Glacier, Inc.* |
| Nelson, James R.<br>DLA PIPER US LLP<br>1717 Main Street<br>Suite 4600<br>Dallas, TX 75201-4605 | =>Phone: (214) 743-4500 Fax: (214) 743-4545 Email: jr.nelson@dlapiper.com<br>Reddy Ice Corp.*; Reddy Ice Holdings, Inc.* |
| Olijnyk, Martha J.<br>MILLER LAW FIRM<br>300 Miller Building<br>950 West University Drive<br>Rochester, MI 48307 | =>Phone: (248) 841-2200 Fax: (248) 652-2852 Email: mjo@millerlawpc.com<br>Circle Beer & Beverage, Inc. tdba Duffy's Pop & Beer Warehouse* |
| Patane, Joseph M.<br>LAW OFFICES OF JOSEPH M PATANE | =>Phone: (415) 447-1651 Fax: (415) 346-0679 Email: jpatane@tatp.com<br>Marin Scotty's Market, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| 2280 Union Street<br>San Francisco, CA 94123 | |
| Salzman, Hollis L.<br>LABATON SUCHAROW LLP<br>140 Broadway, 33rd Floor<br>New York, NY 10005 | ⇒Phone: (212) 907-0700  Fax: (212) 818-0477  Email: hsalzman@labaton.com<br>Baron Group, Inc. (The) dba Baron's Ice House*; Ridge Plaza, Inc.*; Silver Springs Liquor, Inc.*;<br>Thrifty Liquor, Inc.* |
| Scott, Daniel B.<br>CHIMICLES & TIKELLIS LLP<br>One Haverford Centre<br>361 West Lancaster Avenue<br>Haverford, PA 19041 | ⇒Phone: (610) 642-8500  Fax: (610) 649-3633  Email: danielscott@chimicles.com<br>Y&R's, Inc.* |
| Sedran, Howard J.<br>LEVIN FISHBEIN SEDRAN & BERMAN<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106 | ⇒Phone: (215) 592-1500  Fax: (215) 592-4663  Email: hsedran@lfsblaw.com<br>Five Angels Management dba Frank A. Smith Beverages* |
| Shub, Jonathan<br>SEEGER WEISS LLP<br>1515 Market Street<br>Suite 1380<br>Philadelphia, PA 19102 | ⇒Phone: (215) 564-2300  Fax: (215) 851-8029  Email: jshub@seegerweiss.com<br>RSB Wellman Co., Inc. aka Twig's Carry Out* |
| Veselka, Larry R.<br>SMYSER KAPLAN & VESELKA<br>Bank of America Center<br>700 Louisiana, Suite 2300<br>Houston, TX 77002 | ⇒Phone: (713) 221-2325  Fax: (713) 221-2320  Email: lveselk@skv.com<br>Blasingame, Rodney* |
| Wayne, Richard S.<br>STRAUSS & TROY<br>The Federal Reserve Building<br>150 East Fourth Street<br>4th Floor<br>Cincinnati, OH 45202-4018 | ⇒Phone: (513) 621-2120  Fax: (513) 629-9426  Email: rswayne@strausstroy.com<br>Champs Liquors, Inc. |
| White, Ann D.<br>ANN D WHITE LAW OFFICE PC<br>101 Greenwood Avenue<br>Fifth Floor<br>Jenkintown, PA 19046 | ⇒Phone: (215) 481-0274  Fax: (215) 481-0271  Email: awhite@awhitelaw.com<br>Massino, Joseph* |
| Zylstra, Kendall S.<br>FARUQI & FARUQI<br>2600 Philmont Avenue<br>Suite 324<br>Huntingdon Valley, PA 19006 | ⇒Phone: (215) 914-2460  Fax: (215) 914-2462  Email: kzylstra@faruqilaw.com<br>F&V Oil Co., Inc.*; Lansdale Oil Co., Inc.*; VB & PS Oil Co.*; Warrington Fuels, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

Packaged Ice Panel Service List Addendum

| **District Courts** | |
|---|---|
| United States District Court<br>District of Minnesota<br>Office of the Clerk<br>202 U.S. Courthouse<br>300 S. 4th Street<br>Minneapolis, MN 55415 | United States District Court<br>Northern District of Ohio<br>Office of the Clerk<br>801 West Superior Avenue<br>Cleveland, OH 44113 |
| United States District Court<br>Southern District of Ohio (Western<br>Division)<br>Office of the Clerk<br>Potter Stewart U.S. Courthouse Room 103<br>100 East Fifth Street<br>Cincinnati, OH 45202 | United States District Court<br>Northern District of California<br>Office of the Clerk<br>450 Golden Gate Avenue, 16th Floor<br>San Francisco, CA 94102 |
| United States District Court<br>Southern District of California<br>Office of the Clerk<br>880 Front Street, Suite 4290<br>San Diego, CA 92101-8900 | United States District Court<br>Eastern District of Michigan<br>Theodore Levin U.S. Courthouse<br>Office of the Clerk<br>231 W. Lafayette Blvd., Room 564<br>Detroit, MI 48226 |
| United States District Court<br>Northern District of Texas<br>Office of the Clerk<br>1100 Commerce, Room 1452<br>Dallas, TX 75242 | United States District Court<br>District of Kansas<br>Office of the Clerk<br>500 State Avenue<br>259 U.S. Courthouse<br>Kansas City, KS 66101 |
| United States District Court<br>Southern District of Florida<br>Office of the Clerk<br>301 North Miami Avenue, Room 150<br>Miami, FL 33128 | United States District Court<br>District of Arizona<br>Office of the Clerk<br>401 West Washington Street<br>Phoenix, AZ 85003 |

342186_2.DOC